SUMMONS ISSUED

CV 13 3568

IRWIN POPKIN, ESQ.
Attorney for Plaintiffs
445 Broadhollow Road, Suite 25
Melville, New York 11747
(631) 281-0030

Civil Action No. CV -

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 24 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

201 JERUSALEM AVE MASSAPEQUA LLC, and JOHN DE JOHN

Plaintiffs,

-against-

BIANCO, J.

BROWN, M. J.

CIENA CAPITAL LLC, BUSINESS LOAN EXPRESS, LLC., BLX
CAPITAL, LLC, CIENA CAPITAL FUNDING (NEW YORK) LLC,
CIENA CAPITAL FUNDING, LLC, ALLEGIANT PARTNERS LLC,
PAUL BIBBO, NADINE LUGO, JAY L. YACKOW, ESQ., JAX
VENTURES, LLC, STEVEN COHN, ESQ. ROY J. LESTER, ESQ.,
ARENT FOX, FORCHELLI CURTO DEEGAN, SCHWARTZ, MINEO
& TERRANA, LLP,   PROCTOR WONG, STEVEN PRINCE, LU DIDA
PR INC, HOWARD GETZ, DR. ALAN GREENFIELD, SAMUEL MELNICK,
ROSEMARY CRUZ, CARLOS RIVERA GONZALES, ROSEANN
CAPANEGRO,BENJAMIN KWOK, STEVEN DAVIS, LOUIS MOYET,
YVONNE FRANCES, QUEENS COUNTY DISTRICT ATTORNEY,
OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY,
KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY,
CHARLES ROBUNDO, RICHARD SMYTHE, OLGA NOVOSAD,
MICHAEL RYAN,  MICHAEL J. SPOSATO, THE NASSAU
COUNTY SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF,
EDWARD MANGANO, THE NASSAU COUNTY EXECUTIVE, THE
COUNTY OF NASSAU, ELIZABETH LOCONSOLO, ESQ.,  INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AS COUNSELTO THE NASSAU
COUNTY SHERIFF ANDTHE NASSAU COUNTY EXECUTIVE,
"X" LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE
COUNTY OF NASSAU, "X" LINN, INDIVIDUALLY AND AS
DEPUTY SHERIFF OF THE COUNTY OF NASSAU, "X"
MASTROFIERI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF
THE COUNTY OF NASSAU, "X" SCHULZ, INDIVIDUALLY
AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, THE
NASSAU COUNTY POLICE DEPARTMENT, MARVIN LEVINE,
THE NEW YORK STATE LIQUOR AUTHORITY,THE NEW YORK STATE
DEPARTMENT OF TAXATION  AND FINANCE, STEPHEN BUCARIA, JSC., IRA
WARSHAWSKY, ANTONIO BRANDVEEN, JSC., LEONARD  B. AUSTIN, JOSEPH
SALADINO, LONG ISLAND CATERERS ASSOCIATION, BUTCH  YAMALLI,

COMPLAINT

JURY TRIAL
DEMANDED

CSH VENTURES, LLC, 201 JR CORP, "X","Y","Z" Corporations, whose names and addresses are presently unknown and"JANE DOE"and "JOHN DOE" as co-conspirators, whose names and addresses are presently unknown,
Defendants.

_____x

Plaintiffs, 201 JERUSALEM AVE MASSAPEQUA LLC, and JOHN DE JOHN, by their

attorney, IRWIN POPKIN, ESQ, complaining of the defendants, alleges as follows:

## INTRODUCTION

1.      Plaintiffs, 201 JERUSALEM AVE MASSAPEQUA LLC, and JOHN DE JOHN,

bring this action against the defendants, CIENA CAPITAL LLC, BUSINESS LOAN EXPRESS,

LLC., BLX CAPITAL, LLC,  CIENA CAPITAL FUNDING (NEW YORK) LLC, CIENA

CAPITAL FUNDING, LLC,  ALLEGIANT PARTNERS LLC, PAUL BIBBO, NADINE LUGO,

JAY L. YACKOW, ESQ., JAX VENTURES, LLC,  STEVEN COHN, ESQ., ROY LESTER,

ESQ., ARENT FOX, FORCHELLI CURTO DEEGAN, SCHWARTZ, MINEO & TERRANA,

LLP,  PROCTOR WONG, STEVEN PRINCE, LU DIDA PR INC, HOWARD GETZ, DR.

ALANGREENFIELD, SAMUEL MELNICK, ROSEMARY CRUZ, CARLOS RIVERA

GONZALES, ROSEANN CAPANEGRO, BENJAMIN KWOK, STEVEN DAVIS, LOUIS

MOYET, YVONNE FRANCES, QUEENS COUNTY DISTRICT ATTORNEY, OFFICE OF

THE QUEENS COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, NASSAU COUNTY

DISTRICT ATTORNEY, OFFICE OF THE NASSAU COUNTY DISTRICT ATTORNEY,

CHARLES ROBUNDO, RICHARD SMYTHE, OLGA NOVOSAD, MICHAEL RYAN,

MICHAEL J. SPOSATO, THE NASSAU COUNTY SHERIFF, THE OFFICE OF THE

NASSAU COUNTY SHERIFF, EDWARD MANGANO, THE NASSAU COUNTY

EXECUTIVE,  THE COUNTY OF NASSAU, ELIZABETH LOCONSOLO, ESQ.,

2

INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS COUNSEL TO THE NASSAU

COUNTY SHERIFF AND THE NASSAU COUNTY EXECUTIVE, "X" LINN,

INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, "X" LINN,

INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, "X"

MASTROFIERI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF

NASSAU, "X" SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY

OF NASSAU, THE NASSAU COUNTY POLICE DEPARTMENT, MARVIN LEVINE, THE

NEW YORK STATE LIQUOR AUTHORITY, THE NEW YORK STATE DEPARTMENT OF

TAXATION AND FINANCE, STEPHEN BUCARIA, JSC., IRA WARSHAWSKY, ANTONIO

BRANDVEEN, JSC., LEONARD B. AUSTIN, JOSEPH SALADINO, LONG ISLAND

CATERERS ASSOCIATION, BUTCH YAMALLI, CSH VENTURES, LLC, for money

damages and affirmative relief, pursuant to 42 USC Section 1983. Jurisdiction of this Court is

involved to secure the protection under, and to redress the deprivation of, the ordinances, customs,

and usages of all rights, privileges, and immunities secured to the Plaintiff by the Fourteenth

Amendment to the Constitution of the United States, and all the laws and statutes thereunder, and

other related State claims, causes of action, and common law claims arising out of the actions of

the defendants and each of them.

      2.     Plaintiffs seek compensatory and punitive damages, attorneys fees and other costs

and expenses associated and incurred in the prosecution of the instant action, as well as any

further relief that this Court deems just and proper.

## JURISDICTION AND VENUE

      3.     This is a civil action seeking money damages and affirmative relief based upon,

among other things, the defendants violation of 42 U.S.C. Section 1983 . Jurisdiction is conferred

on this court to secure protection under, and to redress the deprivation of, the ordinances,

customs, and usages of all rights, privileges and immunities secured to the plaintiff by the

Fourteenth Amendment to the Constitution of the United States , and all the laws and statutes

thereunder.

4.      Jurisdiction is conferred on this court pursuant to 28 USC Section 1367 to hear

the pendent claims arising from the same transaction or occurrence or same common nucleus of

operative facts under the laws of the State of New York and supplemental jurisdiction is invoked

by 28 U.S.C. Section 1367.

5.      Venue is proper in the Eastern District of New York pursuant to 28 USC Sections

1391(b)(1), 1391(b)(2) and 1391( c ) as all defendants reside and/or work in this judicial district

and since the claims herein arose within the Eastern District of New York and concern or

otherwise relate to real property located in the Eastern District of New York.

6.      This court has authority to grant compensatory and punitive damages, and costs

and disbursements pursuant to 42 USC Section 1983.

## THE PARTIES

The Plaintiffs

7.      At all times hereinafter mentioned, and at all relevant times, the plaintiff, 201

JERUSALEM AVE MASSAPEQUA LLC, (hereinafter respectfully referred to herein as "201"),

is a domestic corporation maintaining and operating a catering hall and principal place of

business at the County of Nassau, 201 Jerusalem Avenue Massapequa, New York 11758, prior to

being illegally dispossessed from the premises located at 210 Jerusalem Avenue Massapequa,

4

New York 11758 (hereinafter respectfully referred to herein as the "SUBJECT PREMISES"), on or about June 13, 2013.

8.     The plaintiff, JOHN DE JOHN, is an owner of the shares and managing member of 201, which had been operating as catering hall at the SUBJECT PREMISES for the past 50 years or so, until the illegal eviction by the defendants. It has been operated as a family business, for the purposes of a family catering hall, as the Manor East. At the present time, there are approximately $700,000.00 in events booked that have been cancelled due to the actions of the defendants, especially YACKOW, and the Sheriff. The plaintiff employs 75 people who have lost their means of employment.

The Defendants

9.     Upon information and belief, and at all relevant times, the defendant, CIENA CAPITAL, LLC.,was and still is a limited liability company, having its principal offices at 1633 Broadway, 39th Floor, New York, New York 10019 (hereinafter respectfully referred to herein as "CIENA"). CIENA never possessed standing to commence the foreclosure matter at issue against the plaintiffs, as recognized by Justice Warshawsky, particularly since the *lis pendens* expired and was never renewed and more importantly, since it lacked the capacity to commence the underlying action at issue.

10.    Upon information and belief, and at all times hereinafter mentioned, the defendant, BUSINESS LOAN EXPRESS, LLC, (hereinafter respectfully referred to as "EXPRESS"), was and still is a limited liability company, and allegedly operates and conducts business within the State of New York.

11.    Upon information and belief, and at all times hereinafter mentioned,  BLX

5

CAPITAL, LLC, (hereinafter respectfully referred to as "BLX"), was and still is a limited liability company, and allegedly operates and conducts business within the State of New York.

12.     Upon information and belief, and at all times hereinafter mentioned, the defendant, CIENA CAPITAL, LLC. ( hereinafter respectfully referred to as "NEW YORK"), upon formation and belief,  was and still is a limited liability company, having its principal offices at 1633 Broadway, 39th Floor, New York, New York 10019.

13.     Upon information and belief, and at all times hereinafter mentioned, the defendant, ALLEGIANT PARTNERS LLC, (hereinafter respectfully referred to herein as "ALLEGIANT"), is a corporation having an address of 999 Fifth Avenue , Suite 300, San Rafael, California 94901. ALLEGIANT held a interest in the  Mortgaged premises by virtue of that certain judgment in the amount of $276,046.91 filed in the Nassau County Clerk's Office on October 9, 2007, and to extinguish any and all right, title and interest it held in and to the mortgaged premises by virtue of that certain mortgage conveyed by 201 Jerusalem Ave, Massapequa LLC to Allegiant dated December 18, 2006 in the original principal amount of $200,000. This action appeared before the Honorable Ira Warshawsky in Nassau County Supreme Court under Index Number 11148-2007.

14.     Upon information and belief, and at all relevant times, the defendant, PAUL BIBBO, (hereinafter respectfully referred to as "BIBBO"), was and still is a resident of the State of New York, with an address in Queens, New York, and the plaintiff in a companion action commenced against certain attorneys involved in the instant matter.

15.     Upon information and belief, and at all relevant times, the defendant, NADINE LUGO, (hereinafter respectfully referred to as "LUGO"), was and still is a resident of the State of New York, with an address in Queens, New York, and the plaintiff in a companion action

6

commenced against certain attorneys involved in the instant matter.

16.     Upon information and belief, and at all relevant times, the defendant, JAY

YACKOW, ESQ., (hereinafter respectfully referred to as "YACKOW"), was and still is an

attorney at law, and a resident of the State of New York, with an address at 1400 Old Country

Road, Westbury, New York, and the attorney of record for all the members of the underlying

action ( Nassau County Supreme Court, Index number 12738-08, as removed to Judge Wexler,

CV 13-3160-hereinafter respectfully referred to as the "NASSAU ACTION" and/or "12738").

17.     Upon information and belief, and at all times relevant herein, the defendant,

JAX ADVENTURES, LLC., (hereinafter respectfully referred to herein as "JAX"), was a dummy

corporation created by YACKOW, deliberately to defraud the creditors, and is a domestic

corporation, organized pursuant to and in accordance with the laws of the State of New York.

18.     Upon information and belief, and at all relevant times, the defendant, STEVEN

COHN, ESQ., (hereinafter respectfully referred to as "COHN"), was and still is an attorney at law,

and a resident of the State of New York, with an address at One Old Country Road, Carle place,

New York, 11514, and was appointed by Justice BUCARIA to sell the SUBJECT PREMISES,

removed by the Federal Court Judge, as Referee from selling the SUBJECT PREMISES, in

12738, and, as such, was therefore prohibited from selling the SUBJECT PREMISES on the date

and time at issue in 12738.

19.     Upon information and belief, and at all relevant times, the defendant, ROY J.

LESTER, ESQ., (hereinafter respectfully referred to as "LESTER"), was and still is an attorney at

law, and a resident of the State of New York, with an address at 600 Old Country Road, Suite

229 Garden City, New York 11530, and formerly represented JOHN DE JOHN, in a Chapter 13

7

case before the federal bankruptcy court.

20. Upon information and belief, and at all relevant times, the defendant, ARENT FOX, (hereinafter respectfully referred to as "FOX"), was and still is an attorney at law, and a resident of the State of New York, and was involved in an action pending previously before the former Justice Warshawsky bearing Index number 11148-2007, where IRA WARSHAWSKY permitted a private party to illegally and unlawfully confiscate the plaintiffs automobile and misappropriate thousands of dollars of the plaintiffs that were never returned.

21. Upon information and belief, and at all relevant times, the defendants, FORCHELLI CURTO DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP, (hereinafter respectfully referred to as "FORCHELLI"), was and still are attorneys at law, maintaining a practice of law within the County of Nassau, and were the former attorneys of the plaintiffs, representing them with regard to the SUBJECT PREMISES.

22. Upon information and belief, and at all times relevant herein, the defendant, PROCTOR WONG, (hereinafter respectfully referred to herein as "WONG") was appointed to act on behalf of the estate of JOHN MAZZUKA, a plaintiff in the underlying action, and one of the investors involved in the NASSAU ACTION, and a resident of the State of New York.

23. Upon information and belief, and at all times relevant herein, the defendant, STEVEN PRINCE, (hereinafter respectfully referred to herein as "PRINCE") was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

24. Upon information and belief, and at all times relevant herein, the defendant, LU DIDA PR INC., (hereinafter respectfully referred to herein as "LU DIDA PR INC") was and

still is a domestic corporation, organized in accordance with the laws of the State of New York.

25.     Upon information and belief, and at all times relevant herein, the defendant, HOWARD GETZ, (hereinafter respectfully referred to herein as "GETZ"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

26.     Upon information and belief, and at all times relevant herein, the defendant, DR. ALAN GREENFIELD, (hereinafter respectfully referred to herein as "GREENFIELD"),was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

27.     Upon information and belief, and at all times relevant herein, the defendant, SAMUEL MELNICK, (hereinafter respectfully referred to herein as "MELNICK"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

28.     Upon information and belief, and at all times relevant herein, the defendant, CARLOS RIVERA GONZALES, (hereinafter respectfully referred to herein as "GONZALES"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

29.     Upon information and belief, and at all times relevant herein, the defendant, ROSEMARY CRUZ, (hereinafter respectfully referred to herein as "CRUZ"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

30.     Upon information and belief, and at all times relevant herein, the defendant,

ROSEANN CAPANEGRO, (hereinafter respectfully referred to herein as "CAPANEGRO"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

31.    Upon information and belief, and at all times relevant herein, the defendant, BENJAMIN KWOK, (hereinafter respectfully referred to herein as "KWOK"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

32.    Upon information and belief, and at all times relevant herein, the defendant, STEVEN DAVIS, (hereinafter respectfully referred to herein as "DAVIS") was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

33.    Upon information and belief, and at all times relevant herein, the defendant, LOUIS MOYET, (hereinafter respectfully referred to herein as "MOYET") was and still is one of the investors involved in the NASSAU ACTION, and a resident of the State of New York.

34.    Upon information and belief, and at all times relevant herein, the defendant, YVONNE FRANCES, QUEENS COUNTY DISTRICT ATTORNEY, OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY, (hereinafter respectfully referred to herein as "YVONNE FRANCES/QDA") was and still is the District Attorney of the County of Queens of the State of New York that has an obligation to investigate criminal complaints and prosecute valid complaints and crimes committed against the residents. Prosecutorial discretion does not shield the defendant from properly acting in accordance therewith when a crime has been committed.

10

35.     Upon information and belief, and at all times relevant herein, the defendant, KATHLEEN RICE, NASSAU  COUNTY DISTRICT ATTORNEY, OFFICE OF THE NASSAU COUNTY DISTRICT ATTORNEY, (hereinafter respectfully referred to herein as "RICE/NCDA") was and still is the District Attorney of the County of Nassau of the State of New York that has an obligation to investigate criminal complaints and prosecute valid complaints and crimes committed against the residents. Prosecutorial discretion does not shield the defendant from properly acting in accordance therewith when a crime has been committed.

36.     Upon information and belief, and at all times relevant herein, the defendant, CHARLES ROBUNDO, was and still is an investigator of the NASSAU COUNTY DISTRICT ATTORNEYS OFFICE, and a resident of the State of New York.

37.     Upon information and belief, and at all times relevant herein, the defendant, RICHARD SMYTHE, (hereinafter respectfully referred to as "SMYTHE"), was and still is an investigator of the FEDERAL BUREAU OF INVESTIGATION, and a resident of the State of New York, that has an obligation to investigate criminal complaints and to assist the public in recommending that complaints and crimes committed against the residents be prosecuted. Prosecutorial discretion does not shield the defendant assisting in properly acting in accordance therewith when a crime has been committed.

38.     Upon information and belief, and at all times relevant herein, the defendant, OLGA NOVOSAD, (hereinafter respectfully referred to herein as "NOVOSAD"), was and still is an  investigator of the FEDERAL BUREAU OF INVESTIGATION, and a resident of the State of New York, that has an obligation to investigate criminal complaints and to assist the public in recommending that complaints and crimes committed against the residents be prosecuted.

11

Prosecutorial discretion does not shield the defendant assisting in properly acting in accordance therewith when a crime has been committed.

39.     Upon information and belief, and at all times relevant herein, the defendant, MICHAEL RYAN, (hereinafter respectfully referred to as "RYAN"),  was and still is an investigator of the FEDERAL BUREAU OF INVESTIGATION, and a resident of the State of New York, that has an obligation to investigate criminal complaints and to assist the public in recommending that complaints and crimes committed against the residents be prosecuted. Prosecutorial discretion does not shield the defendant assisting in properly acting in accordance therewith when a crime has been committed..

40.     Upon information and belief, and at all times relevant herein, the defendant, MICHAEL J. SPOSATO, THE SHERIFF OF NASSAU COUNTY, (hereinafter respectfully referred to herein as "SPOSATO"),  is the Sheriff of the County of Nassau, and is responsible for enforcing and carrying out the lawful mandates and orders of the Courts of the State of New York.

41.     Upon information and belief, and at all times relevant herein, the defendant, the OFFICE OF THE NASSAU COUNTY SHERIFF, is occupied by MICHAEL J. SPOSATO, and is an appointed position, and is responsible for enforcing and carrying out the lawful mandates and orders of the Courts of the State of New York.

42.     Upon information and belief, and at all times relevant herein, the defendant, EDWARD MANGANO, (hereinafter respectfully referred to as "MANGANO"), was and still is the County Executive of the County of Nassau, and is responsible for the operations and activites of THE COUNTY OF NASSAU, including the OFFICE OF THE NASSAU COUNTY SHERIFF, as occupied by MICHAEL J. SPOSATO.

12

43.    Upon information and belief, and at all times relevant herein, the defendant, the COUNTY OF NASSAU, (hereinafter respectfully referred to as the "COUNTY"), was and still is a municipal subdivision of the State of New York, organized pursuant to and in accordance with the United States Constitution and the Constitution of the State of New York.

44.    Upon information and belief, and at all times relevant herein, the defendant, ELIZABETH LOCONSOLO, ESQ., (hereinafter respectfully referred to as '"LOCONSOLO"), was and still is the attorney for the SHERIFF, MANGANO, and has acted and represented that she advised SPOSATO,  the Sheriff, and MANGANO to act in the manner they did on June 13, 2013 and prior thereto in court and YACKOW has stated in his court documents that he has researched the matter with her.

45.    Upon information and belief, and at all times relevant herein, the defendant, "X" LINN, (whose first name is presently unknown), was and still is one of the deputy sheriffs who appeared at the SUBJECT PREMISES , on June 13, 2013, at the direction of the defendants, YACKOW, the SHERIFF, MANGANO, COUNTY, LOCONSOLO, and illegally and unlawfully evicted the wrong entity, despite being told to cease and desist.

46.    Upon information and belief, and at all times relevant herein, the defendant, "X" LINN, (whose first name is presently unknown), was and still is one of the deputy sheriffs who appeared at the SUBJECT PREMISES , on June 13, 2013, at the direction of the defendants, YACKOW, the SHERIFF, MANGANO, COUNTY, LOCONSOLO, and illegally and unlawfully evicted the wrong entity.

47.    Upon information and belief, and at all times relevant herein, the defendant, "X" MASTROFIERI, (whose first name is presently unknown), was and still is one of the deputy

13

sheriffs who appeared at the SUBJECT PREMISES , on June 13, 2013, at the direction of the defendants, YACKOW, the SHERIFF, MANGANO, COUNTY, LOCONSOLO, and illegally and unlawfully evicted the wrong entity.

48.    Upon information and belief, and at all times relevant herein, the defendant, "X" SCHULZ, (whose first name is presently unknown), was and still is one of the deputy sheriffs who appeared at the SUBJECT PREMISES , on June 13, 2013, at the direction of the defendants, YACKOW, the SHERIFF, MANGANO, COUNTY, LOCONSOLO, and illegally and unlawfully evicted the wrong entity.

49.    Upon information and belief, and at all times relevant herein, the defendant, NASSAU COUNTY POLICE DEPARTMENT, (hereinafter respectfully referred to as "NCPD"), was and still is the police department of the County of Nassau.

50.    Upon information and belief, and at all times relevant herein, the defendant, MARVIN LEVINE, (hereinafter respectfully referred to as "LEVINE"), was and still is a representative of THE NEW YORK STATE LIQUOR AUTHORITY.

51.    Upon information and belief, and at all times relevant herein, the defendant, THE NEW YORK STATE LIQUOR AUTHORITY,  (hereinafter respectfully referred to as "NYSLA"), was and still is a state agency that regulates the licensing of permits provided to catering halls, food establishments, stores, and other businesses operating in the general public that caters to the public.

52.    Upon information and belief, THE NEW YORK STATE DEPARTMENT OF TAXATION  AND FINANCE, (hereinafter respectfully referred to as the "STATE TAX"), is an agency of the Stat of New York that acts with regard to taxation issues.

14

53.     Upon information and at all times relevant herein, the defendant, STEPHEN BUCARIA, JSC.,(hereinafter respectfully referred to as "BUCARIA"), is a justice of the Supreme Court of the State of New York, County of Nassau.

54.     Upon information and at all times relevant herein, the defendant, IRA WARSHAWSKY, (hereinafter respectfully referred to as "WARSHAWSKY"), was a justice of the Supreme Court of the State of New York, County of Nassau.

55.     Upon information and at all times relevant herein, the defendant, ANTONIO BRANDVEEN, JSC.,(hereinafter respectfully referred to as "BRANDVEEN"), is a justice of the Supreme Court of the State of New York, County of Nassau.

56.     Upon information and at all times relevant herein, the defendant, LEONARD B. AUSTIN, ASSOCIATE JUSTICE OF THE APPELLATE DIVISION ,(hereinafter respectfully referred to as "AUSTIN"), is a justice of the Supreme Court of the State of New York, County of Nassau, assigned to the APPELLATE DIVISION, SECOND DEPARTMENT, STATE OF NEW YORK.

57.     Upon information and at all times relevant herein, the defendant, JOSEPH SALADINO, (hereinafter respectfully referred to as "SALADINO"), is a Republican n Assemblyman representing the various parts of Nassau County and parts of Suffolk County of the State of New York.

58.     Upon information and belief, and at all relevant times herein, the LONG ISLAND CATERERS ASSOCIATION, (hereinafter respectfully referred to herein as "LICA"), is a group of caterers of the State of New York, and BUTCH YAMALLI is the head of such organization.

59.     Upon information and belief, and at all relevant times herein, BUTCH YAMALLI,

15

(herein respectfully referred to herein as "YAMALLI"), is the head and organizer of THE LONG ISLAND CATERERS ASSOCIATION within the State of New York and also owns various other catering halls within the State of New York.

60.     Upon information and belief, CSH VENTURES, LLC, was and still is a limited liability company, and allegedly operates and conducts business within the State of New York

61.     Upon information and belief, 201 JR CORP., (hereinafter respectfully referred to herein as "JR), was and still is a corporation formed by YACKOW to transfer the subject premises immediately after he illegally stole the property.

62.     Upon information and belief, "X","Y","Z" Corporations, is the designation presently provided to those corporations whose names and addresses are presently unknown to the plaintiffs who will become party defendants to the action.

63.     "JANE DOE"and "JOHN DOE" as co-conspirators, whose names and addresses are presently unknown are presently unknown to the plaintiffs who will become party defendants to the action.

## THE PLEADINGS AND PROCEEDINGS

64.     This case involves several different actions brought during the course of the past years, designed to deprive the plaintiff of its property rights, in violation of the State and Federal Constitution, involving a civil and criminal enterprise.

65.     These actions took place within the Supreme Court of the County of Nassau, as well as the Appellate Division of the State of New York, Second Department and involved the various branches of the Judiciary and government at all levels, including the Nassau County District Attorney's Office, the Queens County District Attorneys's Office, and the Sheriff of Nassau

16

County, the result of which was to deprive the plaintiff, including but not limited to JOHN DE

JOHN, a 79 year old Veteran, of his life savings, though the concerted action of strategic court

appointments and the deliberate failure of governmental criminal authorities to prosecute crimes,

all to perpetuate a system that allows the unconstitutional taking of property under the guise of

alleged due process.

66.     Some of the numerous actions that were taken against the plaintiffs to destroy their

property interests were involved:

(1)     2851 OCEAN AVENUE REALTY INC AND STILL WATERS
        RESTAURANT, INC V. ALLYSA LEIGH LLC (INDEX NO.
        001578-2008, JUSTICE AUSTIN)

(2)     CSH VENTURES, LLC. V. JAX VENTURES, LLC ET AL,
        (INDEX NO. 2347-2012, JUSTICE AUSTIN)

(3)     CIENA CAPITAL FUNDING, LLC, V. 201 JERUSALEM AVE
        MASSAPEQUA LLC ET AL (INDEX NO. 12738-2008)

(4)     BAYVIEW LOAN SERVICING LLC V. ALLYS A LEIGH
        CORP, ET AL (INDEX NO. 20936-2007, JUSTICE MURPHY)

(5)     ALLEGIANT PARTNERS INCORPORATED, V. MANOR EAST
        OF MASSAPEQUA, LLC ET AL (INDEX NO. 11148-2007,
        JUSTICE WARSHAWSKY)

(6)     JOHN DEJOHN V. ROY J. LESTER, (INDEX NO. 12112-2012
        JUSTICE WINSLOW)

(7)     PAUL BIBBO AND NADINE LUGO V. ARVANITKIS, ETAL,
        (INDEX NO. 22873-2012-QUEENS COUNTY)

67.     That the defendants, CIENA, BLX, JAX VENTURES, 201 J&R CORP, and the

individual investors, organized by YACKOW, are engaged in the business of providing

business loans to small businesses.

68.     The defendant-investors provide loans in particular to restaurants, manufacturing

17

industries, and other small businesses. They also offer finance services including loans and long term investment property financing, including loans secured by personal residences within this District.

69.     In such capacity, the defendants, CIENA, BLX, JAX VENTURES, 201 J&R CORP, collect the periodic payments made by loan borrowers and perms other mortgage loan servicing obligations.

70.     The plaintiff, 201 JERUSALEM AVE MASSAPEQUA LLC, is a family owned business and landmark catering hall operating in Massapequa New York for approximately 50 years.

71.     The unlawfully staged and planned eviction, by each of the defendants involved, is the result of a long fought and still ongoing effort to address and eliminate serious flaws in our legal system that, as evidenced by the present circumstances, has devastating consequences not only on the parties immediately involved, but on numerous members of the public as well.

72.     The well-organized plan of the party defendants was to squeeze the plaintiff out of business such that another business would purchase the property, to the detriment of the plaintiffs, is illustrative of the campaign of harrasment the plaintiff has endured over the past years in this court system

73.     This was a well-calculated and planned move by the parties involved and is part of the criminal conspiracy that strikes at the heart of what this country is founded upon.

**PROCEDURAL BACKGROUND**

74.     Through to in or about December 18, 2012, the defendant, 201 JERUSALEM AVE MASSAPEQUA LLC, (hereinafter respectfully referred to herein as "201"), was the owner of the

18

commercial premises located at 201 Jerusalem Avenue Massapequa, New York 11758 (hereinafter respectfully referred to herein as the "SUBJECT PREMISES"). The plaintiff (then defendant), JOHN DE JOHN, executed a lease agreement, duly recognized by the Supreme Court of the State of New York, County of Nassau, as a valid lease agreement, wherein he, as the shareholder of the corporation , 201, reserved the right to transfer possession, use and occupancy of the subject premises.

75.    In an action pending before the Honorable Leonard Wexler, CV 13-3160, the Manor East of Massapequa, LLC, made application to the Court to vacate the underlying foreclosure judgment because it was obtained by means of fraud, misrepresentation and misconduct. That motion fell and never was decided.

76.    The defendant, BUCARIA, as Justice of the Supreme Court, County of Nassau, improperly granted a writ of assistance, finalizing the matter, when six (6) months prior to the date at issue, the motion to vacate the foreclosure sale, remained open and not determined.

77.    Through to June 13, 2013, and for quite some time herein, the MASSAPEQUA MANOR INC, along with the plaintiff- landlord, 201,  had been occupying the subject premises without interruption and conducting business as a catering hall for an extended period of time. This was the result of the defendants exercise of the aforementioned  option to transfer all right and interest in a lease agreement duly exercised by Plaintiff (then defendant), JOHN DE JOHN.

78.    That on or about July 10, 2008, an action was commenced to foreclose the mortgage by defendant (then plaintiff) CIENA. The original mortgage secured a note dated September 27, 2006 in the principal amount of $4,750,000 and made by the defendant 201. The note was payable to Madison Realty Capital LP.

19

79.     On February 23, 2007, 201 entered into a consolidation agreement with BLX Capital, LLC, the holder of the mortgage. At the time of the consolidation agreement, the principal amount of the indebtedness was $5,350,000. On January 7, 2008, defendant STEVEN COHN, ESQ., was appointed as temporary receiver to engage a professional management firm and to collect the rent on the property.

80.     At all times herein, the subject premises had been occupied by the MANOR EAST, and/or its assignees, MASSAPEQUA MANOR INC., which defendants (then plaintiffs) neglected to include as a party defendant to the instant foreclosure action.

81.     On August 31, 2009, pursuant to a stipulation of settlement, CIENA assigned its interest in the foreclosure action to JAX. Within the Stipulation of Settlement, dated August 31, 2009, defendants (then plaintiffs) agreed not to schedule a sale of the subject premises as long as the instant defendants (plaintiffs in the instant action), among other conditions, made monthly payments of $34,000.00 commencing October 1, 2009. The stipulation provided that at any time through to the foreclosure sale, the defendants would accept the sum of $2,555,000 plus interest at the rate of 16%, or 24% in the event of a default, in full settlement of the loan.

82.     On March 3, 2010, the investors counsel served 201 with a notice of default based upon their alleged failure to make the monthly payment due December 1, 2009 and alleged outstanding taxes. The investors counsel, in a further attempt to steal the property from JOHN DEJOHN and 201, submitted a proposed "consent judgment of foreclosure" in the amount of $6,565,045, including accrued interest, late fees, and miscellaneous fees in the amount of $232,992.

83.    On July 18, 2011, at the advice of defendant ROY LESTER, ESQ., JOHN

DEJOHN, filed a bankruptcy petition with the Eastern District Federal Bankruptcy Court, on

behalf of one of the tenants, 201. During the course of the Bankruptcy Proceeding, the Honorable

Judge Grossman removed COHN as Referee .   At no point thereafter was defendant COHN ever

re-appointed by JUSTICE BUCARIA as Referee to sell the subject premises.

84.    In fact, the record in the foreclosure action fails to indicate that Steven Cohn, Esq.,

was at any time reinstated as referee for the purpose of selling the subject property at the subject

premises.  As such, the defendant, STEVEN COHEN, ESQ., lost all power and jurisdiction to

conduct a sale of the SUBJECT PREMISES after being removed as Referee by the Federal Court.

85.    Defendant, BUCARIA, was fully aware of the Federal Court's removal of

COHN, and the Referee's removal by the Federal Court Judge was duly recognized by

Justice Bucaria within his Order dated April 11, 2011.  Yet despite this fact, the Nassau County

Supreme Court, by and through the defendant, Justice Bucaria, deliberately permitted the subject

premises to be lost at a foreclosure sale where the Referee lacked jurisdiction to sell and transfer

the real property and subject premises at issue. The State Supreme Court deprived the defendants

of their property rights without due process of law and by allowing the Courts of the State of

New York to perform a governmental function without the authority to do so.

86.    By Order to Show Cause dated September 27, 2012, JOHN DEJOHN and 201

made application to the Supreme Court of the State of New York, County of Nassau, for an Order

vacating and setting aside the judgment of foreclosure and sale dated August 5, 2010 upon the

grounds of the fraud, misrepresentation and misconduct of the plaintiffs, or their agents, in

connection with obtaining the judgment and permitting the defendants in that action to interpose a

supplemental verified answer. **This motion has never been decided to date yet**, all the other motions which benefit the plaintiffs have been decided.

87.     On December 18, 2012, Referee COHN purported to conduct a foreclosure sale of the subject premises.  The subject premises was sold to 201 JR CORP, (hereinafter respectfully referred to as "JR CORP")[1], a New York corporation, with offices c/o Attorney Jay Yackow, Esq., 1400 Old Country Road Westbury, Suite 309, New York.   At the conclusion of the sale, Defendant COHN delivered a Referee's deed to JR which purported to convey title to the subject premises.

88.     By Order in the Foreclosure Action dated March 27, 2013, defendant BUCARIA granted the plaintiffs' motion for a Writ of Assistance thereby giving the Nassau County Sheriff the authority to enter and evict the Manor East from the subject premises.  On April 15, 2013, the Manor East filed a notice of Appeal of that order with the Nassau County Clerk.

89.     On April 16, 2013, the Manor East, in order to avail itself of the automatic stay provisions contained in the New York CPLR 5519(a)(6), presented an Order to Show Cause to defendant, Justice Bucaria containing a Temporary Restraining Order of the eviction proceeding pending a hearing to determine the "value and the use occupancy".

90.     The court issued an Order wherein the eviction was stayed pending a hearing and determination of the motion conditioned upon the posting of a temporary undertaking in the sum of $160,000 within five (5) days of the Order.

91.     The application to set an undertaking was made returnable on April 25,

_____

[1]Interestingly, JAY YAKOW, ESQ., has now become the attorney for JAX VENTURES, LLC., although he, upon information and belief, the President and sole shareholder.

2013, however, the court was not in session. That (improperly set)   undertaking was for the purpose of staying an eviction from April 16, 2013, until further order of the court made after the April 25 return date of the application[2].

92.     The amount of the undertaking was set after the MANOR'S counsel refused to opine as to the value, when asked by Justice Bucaria's Law Secretary.  The correct and proper procedure mandated by CPLR 5519 was that no amount be set until a formal hearing be scheduled.  Despite this citation, the Court requested a value to be set from JAY YAKOW, ESQ., with no evidentiary basis ("What do you think?"), and in direct violation of statute.  The response to the Court's inquiry, off the record and without evidentiary basis, by YAKOW was "40,000 per month and that the *present owner*[3] of the premises had been in title for approximately four months").  The amount was obviously set upon Yakow's representation that the use and occupancy should be $40,000 per month and that the present owner of the premises had been in title for approximately four months.  The computation ignored the explicit language contained in CPLR 5519(a) (6) that states that "the undertaking is from the taking of the appeal"

93.     Predicated upon the improper response, the Court violated CPLR 5519, and set an undertaking of $160,000.00 pending hearing and determination of the application.  The Supreme Court, by failing to apply statutory procedure, and upon surmise and conjecture ("what do you think?") by making a decision in a simple "discussion",  and **without a hearing**, and in violation

---

[2]The Court never did schedule a  hearing on this date to determine an amount. The court deprived the defendants of its due process right to be heard on this matter and to present evidentiary documentation.

[3]Acknowledging the existence of Massapequa Manor Inc which plaintiff had failed to include in the foreclosure proceeding.

of the defendants' right to a hearing on the matter, unilaterally usurped defendants' JOHN

DEJOHN, along with the remaining defendants, of its property rights, due process, and right to a

hearing, which inevitably resulted in the loss of a $6-7 MILLION DOLLAR PLUS commercial

premises.

94.    After failing to be provided with a hearing as to the amount of the permanent

undertaking pending appeal, as it was anticipated that a hearing would be conducted to make a

proper determination of the value of the use and occupancy of the premises, to allow the

defendants to properly proceed, inquiry was made.  Originally, when the April 16th Order was

signed, the Court's Law Secretary, approached Mr. Popkin, Esq., defendants' counsel, and

admonished him for allegedly failing to provide plaintiffs with access to the subject premises for

valuation purposes.  Additionally, counsel received an e-mail communication from the defendants

advising them that their expert would be there to appraise the property.

95.    On April 24, 2013, in anticipation of the alleged evidentiary hearing,  the

plaintiffs herein  made the subject premises available to the appraiser.

96.    May 9, 2013, was the return date of the plaintiffs' order to show cause,

to vacate the stay predicated upon the MANOR'S failure to post a bond in the amount of $160,000

as a condition of obtaining the temporary stay.

97.    On that date and time, the plaintiffs counsel demanded that the application

be heard by the Court. Defendant, JUSTICE BUCARIA permitted counsel to enter his chambers,

after the clerk collected the defendants motion and opposition papers, and the parties entered

chambers.  Defendants demanded that a stenographer be present. The request was **denied** as the

Judge took umbrage to the request, and summarily dismissed counsel.

98.     In a fit of pique, JUSTICE BUCARIA immediately, after the attorneys left his chambers, dictated an Order vacating the stay, denying the defendants an opportunity to be heard on the issue of a stay on the issue of value of the bond to be posted

99.     The arbitrary imposition of the required $160, 000.00 surety bond within five (5) days of the date of the Order without any consideration as to whether such a bond can be realistically obtained in such a short period of time, and failing to provide any form of basis whatsoever for the computation other than surmise and conjecture, and failing to permit the defendants to provide oral testimony from its experts and from its witnesses, was irrational, lacked basis in law and fact, and in violation of the State and Federal Constitution.

100.    The instant plaintiffs made application to the Appellate Division, Second Department, where the Appellate Division, Second Department rendered a determination dated May 24, 2013, that denied the defendants motion to stay enforcement of the writ of assistance and remit the matter to Supreme Court Nassau County to determine the value of use and occupancy. The Appellate Division denied the motion which again, denied the defendants their right and entitlement to a hearing, and deprived them of their Constitutional due process rights under the Fourteenth Amendment. The Court has taken their property away from them without due process of law and in direct defiance of the equal protection afforded to all citizens of this country.

101.    On April 25, 2013, the Court was not convened and no notice was provided by the Court of any other scheduled or adjourned date. Obviously, the Court had set out to deprive the defendants of a hearing.

102.    The Appellate Division, Second Department also deprived the defendants of their

25

right to a hearing on the matter, and denied the defendants leave of court to appeal the decisions of the lower court.

103.    Oddly enough, in furtherance of the untoward speed with which the COUNTY, the SHERIFF OF THE COUNTY OF NASSAU, ELIZABETH CONSOLO, SPOSATO, MANGANO, and others deliberately and in furtherance of the conspiracy and plan, acted with great haste to issue a notice to vacate the premises on May 30, 2013, within 72 hours. The usual time for an eviction within the COUNTY OF NASSAU has been approximately six (6) months of a backlog. Yet, these individuals, with whatever financial gain they had, and with whatever means that they sought, over the past years, acted together to ensure that this particular eviction was undertaken so quickly that everyone, including improper parties were evicted, despite the fact that they were told as such, in writing ahead of time and during the time of the eviction.

104.    Counsel for the plaintiffs even went to the Appellate Division on June 13, 2013, in a further attempt to stop the illegal actions of the COUNTY, at the alleged direction of LOCONSOLO, SPOSATO, MANGANO and most astonishingly YACKOW. When informing the SHERIFFS that they were acting illegally, plaintiffs agents and attorneys were told that they should call YACKOW as he had told them to proceed the night before and that morning.

105.    Defendant Associate Justice AUSTIN, who improperly denied the vacatur of the stay, refused to stop the SHERIFF from acting amuck, in violation of the automatic stay of 28 USC 1446 , in violation of the very notice to vacate and writ of assistance that specified that only the 'MANOR EAST OF MASSAPEQUA' was to be removed.

106.    The defendant, AUSTIN, was the justice that sat on a lower court proceeding and improperly acted at the Appellate level, as he never should have signed the order.

107.    To add insult to injury, before 3:00 pm, on June 13, 2013, JACKIE DYBER,

one of plaintiff's agents, received a call from the movers who stated that defendant YACKOW

had telephoned them, stating that the case was over in the Appellate Division, that JUDGE

AUSTIN had refused to sign the stay. That was the amusing part, since the Clerk had not yet

reviewed the papers as of yet with counsel for the applicant. Apparently, the decision has to block

the stay had been pre-determined prior to MRS LOPRESTI arriving at the Appellate Division.

108.    Oddly enough, the Appellate Division Clerk only conferenced the case at 3:30 or

thereafter with counsel as the papers were only intaked at about 3:00 or thereafter. Yet, the

decision was made ahead of time.

109.    The defendant COHN had represented the Justices just the week prior to against

Solicitor General's Office, wherein he argued on behalf of the Justices being entitled to a pay

increase. In addition thereto, there is some type of personal relationship between COHN and

defendant AUSTIN, upon information and belief, involving the children.

110.    Defendant COHN was the attorney that the Federal Court determined should not

preside as a referee in the underlying matter and was duly removed.

## THE UNLAWFUL EVICTION

111.    The lawful landlord and owner as well as the tenants of the premises have been

improperly removed from the premises. 201 as the rightful landlord of the subject premises, as

well as MASSAPEQUA MANOR INC, the tenant formerly in possession, has leases to operate at

the subject premises. Yet, the SHERIFF OF THE COUNTY OF NASSAU, at the alleged direction

of EDWARD MANGANO, NASSAU COUNTY EXECUTIVE, and LOCONSOLO and

YACKOW, on June 13, 2013, refused to read the language of the Writ of Assistance and

27

wrongfully removed and evicted two of the tenants. Each of the deputy sheriffs, deliberately acted in a manner in which they intentionally abridged and violated the plaintiffs' constitutional rights.

112. The plaintiffs have operated the business at the SUBJECT PREMISES as a family business, for the purposes of a family catering hall, as the Manor East. At the present time, there are approximately $700,000.00 in events booked that have been cancelled due to the actions of the defendants, especially YACKOW, and the Sheriff. The plaintiff employs 75 people who have lost their means of employment.

113. Defendant, YACKOW, admitted that he has worked in conjunction with the COUNTY and colluded therewith.

114. Prior to that date, 201 obtained various temporary restraining orders within the context of an Article 78 proceeding as the NASSAU COUNTY SHERIFF and YACKOW refused to honor the statutory stay imposed by 28 USC 1446(d). Further, Justice Bianco stated on the record during oral argument that the procedure left to follow was an Article 78 proceeding.

115. Upon arrival at the Appellate Division as the lower court vacated the stay obtained in the Article 78 (illegally by a non-party), the Appellate Division stated that they did not care about the directives of the Federal Court or what the Federal Court had stated.

116. Even more bizarre was the fact that the defendant YACKOW had improperly quoted 28 USC 1446 ( c ). Plaintiffs did not rely upon that section.

117. As such, an un yet unheard of additional proceeding had to be filed. The plaintiffs as Petitioners therein, due to the failure of defendants, ELIZABETH LOCONSOLO, who stated that she was acting on behalf of EDWARD MANGANO, THE COUNTY , SPOSATO, and in assistance with defendant, YACKOW, insisted that there was no stay of the notice to vacate,

28

despite the fact that Judge Wexler had a removal proceeding before him where all state proceedings are stayed, including actions of the sheriff.

118.    Furthermore, defendant, BRANDVEEN, on three hours notice, granted a NON-PARTY , the defendant herein, YACKOW, summary vacatur of the restraining order staying the illegal actions of the Sheriff.   This was illegally obtained as follows: an Article 78 proceeding was commenced and on June 10, 2013, and the  defendants petitioned the court to obtain an order :  (1) prohibiting the Respondents, MICHAEL J. SPOSATO, THE NASSAU COUNTY SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF, EDWARD MANGANO, THE NASSAU COUNTY EXECUTIVE, and THE COUNTY OF NASSAU, each of them, from executing the Notice to Vacate dated May 30, 2013, issued by the State Supreme Court as the State Supreme Court as well as all other orders of the State Court; (2) prohibiting the Respondents from requiring the Petitioners to vacate the premises located at 201 Jerusalem Avenue Massapequa, New York, until a final disposition on the merits is reached in the pending federal matter; (3) compelling the Respondents to act in accordance with federal law of removal as their ultimate liability will be borne by the tax payers as they act with willful indifference to the law and under the color of law; (4) temporarily and permanently enjoining the Respondents from enforcing the notice to vacate and other orders as they lack jurisdiction to do so (Exhibit "A"); (5) costs, disbursements and reasonable attorneys fees to the Petitioners; and (6) granting such other relief as this Court deems just and proper.

119.    The State properly court granted the petitioners (plaintiffs herein)  temporary restraining orders staying the SHERIFF OF THE COUNTY OF NASSAU along with the COUNTY OF NASSAU and the municipal entities from acting with respect to the Notice to

29

Vacate as the matter had been removed to Federal Court. However, defendant, YACKOW, on behalf of the investors, acting as a "non-party" proposed intervenor, upon 3 hours notice, made application to the court the next day to vacate the restraining orders preventing the sheriffs from acting on the notice to vacate.

120.    Astonishingly, the State Supreme Court, granted a non-party the relief of a party. Again, the State court allowed affirmative relief to be afforded to a party where there lacked any jurisdiction to do so. Property was taken away from a 79 year old United States Veteran by the NASSAU COUNTY SHERIFF, at the direction of LIZ LOCONSOLO, ESQ., COUNSEL FOR THE COUNTY EXECUTIVE and NASSAU COUNTY SHERIFF, where there was no jurisdiction to so act.

121.    That there are no other remedies available to the plaintiff, in this matter to stop the defendants from continuing to knowingly violating the plaintiff's constitutional rights of due process guaranteed by both the Federal and State Constitutions. Despite the fact that the action was removed to the Federal Court, the NASSAU COUNTY SHERIFF'S OFFICE actively defied Federal statutory law and proceeded with the notice to vacate the Respondents from the premises at issue despite the fact that the Order is incorrect and illegal and in direct violation of the automatic statutory stay imposed by 28 USC 1446 (d)[4]. (Defendant YACKOW in his papers to defendant BRANDVEEN, cites to 1446( c ). The letter sent to the Respondents cites to 1446( d ). These are two separate and distinct sections.

_____

[4]Conveniently, Mr. Yackow cites to the incorrect section of 28 USC 1446. Petitioners did not cite subsection ( c ) as misrepresented at par. 18. And, if there is no automatic stay, that is exactly why we are before this Court. Justice Bianco stated that we should proceed by Article 78.

122.     Defendant, YACKOW, ESQ., **lacked standing** as a non-Party movant to obtain any form of temporary relief, as his application for relief should not have been entertained by the Court. Therefore, the court lacked jurisdiction over the non-party to vacate the stays imposed. This maneuver was part and parcel of the continuing conduct occurring in this case and others.

123.     Defendant, YACKOW failed to provide sufficient notice of the application. Three hours is insufficient notice to an adversary where a stay is applied for, especially when the applicant is not a party to the proceeding. (22 NYCRR 202.7(f)).

124.     Defendant, YACKOW, misinformed the court, by citing the incorrect removal provision as stated above.

125.     Defendant, YACKOW, obtained the ultimate relief that he sought, the lifting and striking of the stay, which is impermissible on the filing of the order to show cause, especially by a non-party, which was permitted by the State Supreme Court and the Appellate Division Justice LEONARD B AUSTIN, in direct contravention of established Second Department caselaw. There was no annexation of any pleading whatsoever and the granting of any exparte relief is prohibited to a non-party.

126.     Defendant, YACKOW, failed to inform the court that Judge Bianco informed Mrs. LoPresti that the next procedure was to go to either Justice Wexler and/or an Article 78 proceeding. This had never been required prior to this proceeding, and, in fact, a similar action in Brooklyn, had stayed the Sheriff from acting.

127.     Defendant, YACKOW, admitted to collusion between the SHERIFF and YACKOW at pars. 4, 18, 21 of the YACKOW affirmation that he had submitted to the court yet despite this documentation, ultimate relief was granted to a non-party.

31

128.    Plaintiff had previously established entitlement to a preliminary injunction in this matter as it had established (1) irreparable damage (all property is unique and therefore, the loss of the property constitutes irreparable damage); (2) likelihood of success on the merits (the referee was never re-appointed by the court to conduct the sale and as such the sale is void; the parties have engaged in mortgage fraud to the detriment of the investors and the Respondents;); and the equities tip in favor of the movant (the Manor East has been a catering hall for 50+ years. The plaintiff did further establish that there were approximately $700,000.00 in events booked which would be cancelled if the Sheriff would be allowed to execute the illegal notice to vacate. Also, and of paramount importance, the plaintiff had failed to sue the necessary and proper party at issue -MASSAPEQUA MANOR INC , despite being told this over and over again).

129.    The tenant in possession had not been notified of any Sheriff's activity nor have been served with any eviction notice on these premises.

130.    The wrong tenant had been evicted from the premises and harmed by the NASSAU COUNTY EXECUTIVE'S directives as well as the NASSAU COUNTY SHERIFF. This has resulted in direct and substantial harm to the public. While at the premises, each of the individual deputy sheriffs, along with the head Sheriff assigned to the matter, were specifically told that they were illegally removing the wrong tenant as well as the landlord in possession. They informed refused to stop removing the tenant and the landlord, 201, stating that they did not care, that "WE DO NOT READ"..."WE FOLLOW DIRECTIONS"...

131.    That the municipal defendants, with the non-municipal defendants, including YACKOW, engaged in a planned campaign of harassment designed to ultimately result in the loss of the commercial property at issue, to the detriment of the plaintiff.

32

## THE IMPROPRIETIES OF THE VARIOUS ATTORNEYS

132.    That prior to the unfolding of the horrific events above, the plaintiff, through JOHN

DEJOHN, retained various attorneys to assist in resolving the underlying matter.

133.    The defendant, ROY J. LESTER is the owner of a law firm operating at 600 Old

Country Road Garden City, New York 11530. The defendant, ROY J. LESTER, ESQ., (hereinafter

respectfully referred to as "LESTER"), was retained by the plaintiff to represent the plaintiff's

interests and to file a petition in bankruptcy on behalf of the corporation, to allow it to fight the

foreclosure proceeding.

134.    LESTER was also hired with the express purpose of preserving the contractual

rights of his designated entities under the  June 2011 stipulations and agreements between JAX and

CSH to which DEJOHN and his entities were third party beneficiaries.

135.    To induce DEJOHN to retain LESTER, defendant LESTER represented to

DEJOHN that he knew and was well acquainted with YACKOW and that he would be able to

"work things out" with him.  Despite that representation, it was discovered that LESTER, like the

other parties, worked together and behind his back to his detriment to transfer and steal the

SUBJECT PREMISES at issue.

136.    The plaintiff soon discovered that LESTER'S partner was simultaneously

representing an adversary involved in the same case pending against the plaintiff, wherein secrets

and confidences that were believed to have been sacred and sacrosanct, were transmitted and

revealed to LESTER'S partner and ultimately the plaintiff's adversary.

137.    The Plaintiff also hired defendant,  FORCHELLI CURTO DEEGAN,

SCHWARTZ, MINEO & TERRANA, LLP, (hereinafter respectfully referred to herein as

"FORCHELLI"), to safeguard its interest in the subject premises. The defendant law firm also

guaranteed that it would represent the plaintiff in a fair and accurate manner, to the best of its

ability, to protect its interest in the SUBJECT PREMISES and to ensure that the interests of the

property would be protected such that it would be safe from any mortgage scams.

138.     That an issue arose with missing escrow funds that were to be held by the mortgage

company.   A favorable settlement agreement was arranged and worked out by the plaintiff and the

attorneys for the mortgage holder.

139.     When the settlement was discovered by FORCHELLI, the firm destroyed the

settlement agreement, harming its own client, the plaintiff herein, to the extreme detriment of 201.

Thereafter, it engaged on a planned campaign to undermine the progress of the plaintiff in

resolving the mortgage funding issue.  The plaintiff had not been delinquent on its account yet the

holder of the mortgage note had acted improperly and had caused funds to be suddenly misplaced.

140.     The plaintiff  later discovered that FORCHELLI had been double-dealing plaintiff

the entire time, behind its back, scheming to sell and re-convey the SUBJECT PREMISES to

another bidder, without the knowledge or consent of the plaintiff, all to the detriment of the

plaintiff, and solely for the gain of the defendant, FORCHELLI.

141.     That during the course of the many several actions, defendant, ARENT FOX , in a

proceeding before IRA WARSHAWSKY, was involved with the unnecessary and repeated

harassment of JOHN DEJOHN, the shareholder of 201.

142.     This consisted of, among other things, the defendants stealing the plaintiffs

automobile and/or the automobile of the plaintiff that contained funds in excess of $500,000.

The automobile was eventually recovered without the funds available as the funds were missing

34

therefrom.

143.    During the course of the court proceedings, before the defendant IRA

WARSHAWSKY, the defendant WARSHAWSKY, improperly refused to allow the debt to be

paid in full and instead, stated on the open record that that amount (payment in full) "was not

enough"...... The defendant, WARSHAWSKY, for some unknown reason, and in furtherance of

what has been transpiring in the SUPREME COURT OF THE COUNTY OF NASSAU; THE

COUNTY OF NASSAU; THE APPELLATE DIVISION; THE SHERIFF'S OFFICE; THE

COUNTY EXECUTIVE'S OFFICE, THE COUNTY ATTORNEY'S OFFICE, acted improperly

and with a vengeance toward the plaintiff, making JOHN DEJOHN, an elderly man, of 79 years of

age, a United States Veteran, break down on the stand, and now, eventually lose his place of

business, all part and parcel of a joint conspirital effort.

144.    That, the plaintiff had retained the law offices of because of  now the plaintiff has

lost hundreds of thousands of dollars that JOHN DEJOHN placed in escrow in the accounts of

Dustin Dente, Esq., who was eventually disbarred.

145.    That the fund established to redress innocent victims who have had their monies

stolen by their former  attorneys through stealing their escrow funds, failed to reimburse the

plaintiff for the funds taken by plaintiff's former counsel, Dente.

146.    To date, approximately and at least $300,000.00+ has been missing and due and

owing to plaintiffs from this counsel.

147.    Despite plaintiff's repeated contact with the QUEENS DISTRICT ATTORNEY,

who promised that the individual would be arrested, the QUEENS DISTRICT ATTORNEY failed

to act and allowed the plaintiff to become victimized by another counsel.

35

148.    That the QUEENS DISTRICT ATTORNEY, although bestowed with the defense of prosecutorial discretion, in choosing whom to prosecute, was more than lax in failing to even remotely perform the task before it.

149.    That the allowance of anyone to steal $300,000 from an elderly man, no less a United States Veteran, is deplorable in and of itself.

### THE FAILURE OF THE VARIOUS AGENCIES TO ACT

150.    Prior to the debacle occurring above, plaintiff, JOHN DE JOHN, as owner and shareholder of 201, on several occasions did repeatedly contact the various municipal agencies and sought assistance.  The e-mails that he received and documentation confirmed that the conspiracy was true; the plan to rob the plaintiffs of the SUBJECT PREMISES from underneath them would be consummated shortly.  The life savings of the plaintiffs, along with the landmark that had been established, would be lost to the greed and avarice of the defendants.

151.    That,  on several occasions, and over the past, plaintiff, with and without the assistance of counsel, contacted the  QUEENS COUNTY DISTRICT ATTORNEY, the OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY, CHARLES ROBUNDO, RICHARD SMYTHE, OLGA NOVOSAD, and MICHAEL RYAN, regarding the illegal and unlawful activities as above-stated.

152.    Defendant, YACKOW and the defendant investors had engaged on a plan of attrition, to deplete the plaintiffs of their monies, to the point where they would pay attorneys approximately $400,000.00 in legal fees, to defend against the above-listed actions mentioned in paragraph #66.

153.    That despite the fact that plaintiff, JOHN DEJOHN, telephoned CHARLES

36

ROBUNDO, of the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE, regarding what had been transpiring between the court proceedings and the defendants' plans to steal the plaintiff's catering hall, all the telephone calls went unanswered.

154.    The defendants conspired to steal the business from plaintiff, JOHN DEJOHN, a 79 year old man. Yet, the NASSAU COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, despite being repeatedly called over and over again, failed and refused to act.

155.    That the defendant, THE NASSAU COUNTY POLICE DEPARTMENT, on the date and time of the illegal eviction by the SHERIFF'S DEPARTMENT, refused to act and stop the SHERIFF and THE COUNTY OF NASSAU, along with the individual deputy sheriffs from committing a crime. THE NASSAU COUNTY POLICE DEPARTMENT was shown and the CHIEF OF POLICE was told that the wrong tenant was being evicted.

156.    Nonetheless, THE NASSAU COUNTY POLICE DEPARTMENT, in concert with the other co-defendants, acted to deprive the plaintiff of its civil rights.

157.    The NASSAU COUNTY POLICE DEPARTMENT refused to act and protect the plaintiff from the unlawful behavior and actions of the NASSAU COUNTY SHERIFF which was unlawfully evicting the tenants that were not listed on the Writ of Assistance. Instead, it allowed a crime to be committed before it and watched it being committed, to the detriment of the plaintiff. This was part of the continued campaign of harassment engaged in toward the plaintiff.

158.    That agents RICHARD SMYTHE, MICHAEL RYAN, and OLGA NOVOSAD, all let the plaintiff's business be stolen before it.

159.    That the plaintiff, by JOHN DEJOHN, was accompanied by counsel to the office of the FBI, as recent as April/May of 2013. Yet, despite being provided with a box of documents,

37

dates and times of illegal transactions, etc., the FBI failed to act.

160.    That the unlawful eviction would be conducted during the time when (1) the FBI was "out of pocket" and away; (2) Justice Bucaria was on vacation; (3) the eviction was expedited for defendant YACKOW.

161.    That the eviction so harmed the public that the plan of the defendants, including defendants, JOSEPH SALADINO, BUTCH YAMALLI, and THE LONG ISLAND CATERERS ASSOCIATION staged a press conference to obtain business and publicity from this debacle.

162.    The defendants, JOSEPH SALADINO, BUTCH YAMALLI, and THE LONG ISLAND CATERERS ASSOCIATION, refused to allow the plaintiff and RICHARD BIVONA and his attorneys to speak about the illegal actions of the defendants that caused the illegal eviction and closure of the catering hall. Instead, the plaintiff was told that they would make sure that each of the prices and contracts would be honored .

163.    Thereafter, it was discovered that these defendants had misrepresented to the plaintiffs  and to the public.

164.    Specifically, they had failed to honor the prices and had charged an increased price, causing a great deal of hostility toward the plaintiff. In turn, this has caused a tremendous amount of turmoil. There were $700,000. 00 of parties that the defendants destroyed, and the court, in conjunction therewith, along with the SHERIFF, COUNTY, LOCONSOLO, MANGANO, and others, gave little to no thought or concern about the public in allowing the immediate 72 hour illegal and unlawful closure of the catering hall.

165.    That instead of addressing the matter with the proper parties, the NASSAU COUNTY DISTRICT ATTORNEY, THE FBI, SMYTHE, and the government officials should be

addressing the inappropriate manner in which they have acted. Their failure to address the illegal eviction has resulted in a loss to the community of a landmark of 50 years, and also **75 jobs** for the community residents.

166.    That during the course of the years, THE NEW YORK STATE DEPARTMENT OF TAXATION, has been harassing the plaintiff for no valid reason. It has paid its fair share of taxes and despite this fact, the department has harassed the plaintiff over and over again. The loss of 75 jobs now has resulted. There is no more basis to derive any economic benefit from to pay any taxes.

167.    That during the course of the years, THE NEW YORK STATE LIQUOR AUTHORITY harassed the plaintiff, in total disregard of the law.  There was a repeated pattern of abuse, especially with regard to the issuance of the licensing.  The agency repeatedly badgered the plaintiffs, delayed the process, required repeated information, and engaged in abusive and other tactics.

168.    They have acted in total disregard for the safety, and welfare of the residents of this COUNTY. This includes: (1) the Nassau County District Attorney's Office, (2) the  Federal Bureau of Investigation, (3) the Queens District Attorney, (4) the Supreme Court; (5) the Sheriff's Office and Each of the Deputy Sheriffs; (6) the Appellate Division; (7) Justice Bucaria; (8) Justice Austin; (9) Justice Brandveen; (10) NY State Department of Taxation; (11) NY State Liquor Authority; (12) Loconsolo.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL PARTIES
## FOR VIOLATION OF 42 USCA SECTION 1983 AND EQUAL PROTECTION CLAUSE
## OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA

169.    Plaintiffs repeat and reiterate each and every allegation set forth in the above

paragraphs designated as "1" through "168" of the complaint with the same force and effect as if

the same had been set forth at length herein.

170.    Through the implementation of the Harassment campaign and/or other actions,

practices, custom and usages of the defendants, the COUNTY, THE NASSAU COUNTY

SPOSATO, LOCONSOLO, THE SHERIFF, and other municipal and governmental officials and

employees, with the assistance of the non-municipal defendants, intentionally abridged and

violated the plaintiff's Constitutional rights to equal protection under the laws and due process, as

per the Fourteenth Amendment to the United States Constitution.

171.    The defendants, QUEENS COUNTY DISTRICT ATTORNEY, OFFICE OF THE

QUEENS COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, NASSAU COUNTY

DISTRICT ATTORNEY, CHARLES ROBUNDO, RICHARD SMYTHE, OLGA NOVOSAD,

MICHAEL RYAN, MICHAEL J. SPOSATO, THE NASSAU COUNTY SHERIFF, THE

OFFICE OF THE NASSAU COUNTY SHERIFF, EDWARD MANGANO, THE NASSAU

COUNTY EXECUTIVE, THE COUNTY OF NASSAU, ELIZABETH LOCONSOLO, ESQ.,

INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS COUNSELTO THE NASSAU

COUNTY SHERIFF ANDTHE NASSAU COUNTY EXECUTIVE, "X" LINN,

INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, "X" LINN,

INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, "X"

40

MASTROFIERI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF

NASSAU, "X" SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY

OF NASSAU, THE  NASSAU COUNTY POLICE DEPARTMENT, MARVIN LEVINE,

THE NEW YORK STATE LIQUOR AUTHORITY,THE NEW YORK STATE DEPARTMENT

OF TAXATION  AND FINANCE, STEPHEN BUCARIA, JSC., IRA WARSHAWSKY,

ANTONIO BRANDVEEN, JSC., LEONARD  B. AUSTIN, JOSEPH SALADINO, (collectively

referred to herein as the "MUNICIPAL DEFENDANTS"), and each of them, with the assistance of

the non-municipal defendants, with YACKOW, at the lead of the investors,   PROCTOR WONG,

STEVEN PRINCE, LU DIDA PR INC, HOWARD GETZ, DR. ALAN GREENFIELD, SAMUEL

MELNICK, ROSEMARY CRUZ, CARLOS RIVERA GONZALES, ROSEANN

CAPANEGRO,BENJAMIN KWOK, STEVEN DAVIS, LOUIS MOYET, (collectively referred to

herein as the "INVESTORS"),  intentionally failed to enforce non-discretionary non-discretionary

Federal and/or privileges and/or immunities and/or decisions (formally or informally adopted)

(Non-Discretionary Customs/Laws").

172.    The Harrassment Campaign and/or other actions against the plaintiffs implemented

or executed policies, decisions and/or custom adopted (formally or informally) by the

municipalities to eventually deprive the plaintiffs, JOHN DE JOHN of his catering hall, and to

destroy the plaintiff business and corporation operation of 201.

173.    That Defendants' actions were taken under the color of the State law.

175.    The Municipal Defendants, especially the MICHAEL J. SPOSATO, THE NASSAU

COUNTY SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF, EDWARD

MANGANO, THE NASSAU COUNTY EXECUTIVE,  THE COUNTY OF NASSAU,

41

ELIZABETH LOCONSOLO, ESQ., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS

COUNSEL TO THE NASSAU COUNTY SHERIFF AND THE NASSAU COUNTY

EXECUTIVE, "X" LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY

OF NASSAU, "X" LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF

NASSAU, "X" MASTROFIERI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE

COUNTY OF NASSAU, "X" SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF OF

THE COUNTY OF NASSAU, THE NASSAU COUNTY POLICE DEPARTMENT, (hereinafter

respectfully referred to as the "COUNTY DEFENDANTS"), at the behest of YACKOW and the

INVESTORS, treated similarly situated homeowners in the COUNTY OF NASSAU differently

than the plaintiffs herein, in that the COUNTY DEFENDANTS, TOH property owners resulted

from non-discretionary state action.

176.    There was no rational basis for the difference in treatment between the plaintiffs

and those similarly situated to them.   Rather, Defendants treated the plaintiffs differently than

those similarly situated to them for reasons including, but not limited to, the following:

> i.    In furtherance of the scheme to deprive them of their property and in
> retaliation for the repeated requests for a hearing during the course of the
> proceedings in court;

> ii.    In retaliation for the complaints to the authorities regarding the illegalities
> in the court system, the illegal Scam; and/or to cover-up the Scam; and/or

> iii.    to protect the Defendants from liability for the scam that had been

perpetrated from the beginning with IRA WARSHAWSKY through to

defendant BUCARIA, through to defendant AUSTIN,

Iv.     To cover up the illegalities of the improper issuance of the Writ of

Assistance when defendant STEVEN COHN had been removed by the

Federal Court Judge as a referee, and defendant BUCARIA had failed to re-

appoint him, yet approved the sale and allowed Defendant to conduct a sale

without the jurisdiction to do so.

V.      To cover up the Nassau County Sheriff's knowingly violation of the stay of

the eviction imposed by Federal Law.

Vi.     To harass Plaintiffs into ceasing and desisting from pursuing its rights and

remedies.

(Hereinafter "i" - Vi  are referred to collectively as the "Improper Reason").

177.    In carrying forth the Harassment Campaign against the Plaintiffs, the MUNICIPAL

DEFENDANTS,  with the assistance of the non-municipal defendants, and at the insistence of

YACKOW, and the INVESTOR-Defendants, and the defendants on an individual basis,

intentionally and for the Improper Reason singled out laintiffs for treatment unlike similarly

situated homeowners in the COUNTY OF NASSAU by deviating from the clear standards set forth

by Non-Discretionary Customs/Laws, including, but not limited to the Harassment Campaign:

A.   **Plaintiff, JOHN DE JOHN, by attacking his corporation where he was**

**the sole shareholder, and attacking a UNITED STATES VETERAN, by**

**improperly acting on a Writ of Assistance and Order of the Court that**

**specifically limited the eviction only to the following:**

> Motion by plaintiffs for a writ of assistance to the Nassau
> County Sheriff providing delivery of possession of the
> Subject premises to 201 JR Corp is **granted** to the extent
> below
>
> ..................
> Accordingly, plaintiff's motion for a writ of assistance directed to the
> Nassau County Sheriff is granted to the extent that the sheriff may
> evict defendant **Manor East of Massapequa, LLC** from the
> premises. (See Exhibit "A").

178.    Repeated requests were made to the defendants to cease and desist to no avail.

Upon information and belief, these actions by the MUNICIPAL defendants, were a departure from

the Non-Discretionary Customs/Laws established in the COUNTY and STATE OF NEW YORK,

which limits eviction of persons and/or entities to those persons written on the document.

179.    These other similarly situated MUNICIPAL property owners were not subjected

to this treatment and did not have to be put through this .

180.    There was no rational basis for the defendants differential treatment of plaintiffs..

Rather, Plaintiffs were treated differently due to the Improper Reason.

B.   **The MUNICIPAL DEFENDANTS acted with great haste and sped up**

**and accelerated the eviction, where there was a 6 months waiting list for**

**others similarly situated.**

44

## C. The MUNICIPAL DEFENDANTS acted in conjunction with YACKOW and the other investor defendants .

181. As described above, Plaintiff was treated differently than those similarly situated. There was no rational basis for treating Plaintiffs, JOHN DE JOHN, to the demise of his corporate entity, differently than other similarly situated property owners. Rather, Plaintiff was treated differently due to the Improper Reason.

182. These actions were a departure from Non-Discretionary Customs/Laws, requiring that Citizens are entitled to due process of law and that they are entitled to defend themselves against evidence submitted against them. The plaintiff, JOHN DE JOHN, lost his property, when he should not have been and was summarily dispossessed.

183. The COUNTY OF NASSAU is liable for the conduct of its employees. YVONNE FRANCES, QUEENS COUNTY DISTRICT ATTORNEY, OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY, CHARLES ROBUNDO, RICHARD SMYTHE, OLGA NOVOSAD, MICHAEL RYAN, all failed to act to prevent the scam that was being perpetrated.

184. The COUNTY has an applicable code for its employees to follow.

185. The COUNTY has demonstrated a deliberate indifference to upholding COUNTY LAW . This is demonstrated by the fact that COUNTY employees have a history of violating law and applicable provisions in the course of exercising their duties herein, especially when executing warrants and writs of assistance, and related duties with the resulting violation of the Constitutional rights of property owners and others. Thus, training and supervision was necessary.

45

186.    The DEFENDANTS failure to train COUNTY employees against violating their

obligation under the COUNTY LAW rises to deliberate indifference to the Constitutional rights

of citizens, including Plaintiff. Based upon past history, COUNTY policy makes known to a moral

certainty that COUNTY employees would encounter the opportunity to engage in self dealing in

the course of their duties and related duties; there were and are strong incentives to

engage in self dealing, i.e., money incentives, which encourage the employees to make the

wrong choices. Also, there is a history of the COUNTY decision makers mishandling the problem

with self dealing in the COUNTY; and the wrong choice to engage in self dealing frequently

causes the deprivation of a citizen's Constitutional rights, such as the violation of the Plaintiff's

Equal Protection rights in the case at them.

187.    The COUNTY is also liable for the acts of its employees and others because it

ratified said employees' illicit behavior. Even though the COUNTY knew about such

behavior, officials chose to ignore it until such behavior was published in the newspapers. The

COUNTY acquiesced in the Scam, the Cover-Up Story, and assisted YACKOW in taking the

plaintiffs' property.

188.    Defendants, when faced with strong evidence against it, summarily dismissed it and

buried its head ; when they failed to discipline the employees and actors for their role in the

Scam, although the COUNTY had knowledge or constructive knowledge of the involvement.

189.    That the aforesaid actions, practices, customs and usages of the Defendants herein

were intentional, willful, wanton, reckless and malicious, giving rise to punitive damages.

190.    The violation of Plaintiff's rights were accomplished under the color of law,

through LOCONSOLO'S position as well as that of the other COUNTY actors, including

46

SPOSATO, and through other COUNTY employees.

191.    That by reason of the Defendants' abridgment and violation of Plaintiff's

Constitutional rights, Plaintiffs have lost their property, and have incurred significant damage.

As such, the plaintiffs seek A monetary judgment in favor of Plaintiff and against said Defendants

in a sum to be determined at trial but in no event is it believed to be less than $1,000,000.00;

### AS AND FOR A SECOND CAUSE OF ACTION
### AS AGAINST ALL DEFENDANTS

192.    Plaintiffs repeat and reiterate each and every allegation set forth in the above

paragraphs designated as "1" through "191" of the complaint with the same force and effect as if

the same had been set forth at length herein.

193.    That the plaintiffs never did obtain funds from the alleged assignment and

sale of the property that was to transpire in or about 2011.

194.    At all times herein, the plaintiffs were innocent victims of this scheme, which

resulted in the premises being used as collateral for a mortgage on the property.

195.    That all the listed defendants are necessary parties to the instant action.

196.    That the defendants and each of them undertook a role in defrauding the plaintiffs

and the plaintiffs failed to obtain adequate consideration, if any, in the illegal transfer of the

premises. (Attached Exhibit "A")

### THE CRIMINAL ENTERPRISE

197.    The certain of the defendants engaged in a criminal enterprise (respectfully

referred to as an "enterprise"), that was created and operated for the purpose of stealing money

through mortgage fraud and related criminal conduct. The members of the criminal enterprise

47

included  various lenders, its principals and employees, and a network of lawyers, appraisers, bank employees and other participants.

198.    The enterprise mirrored the roles played by various participants in the residential and real estate and mortgage origination field, where mortgage brokers frequently work together with real estate agents, attorneys, appraisers, and lending institution representatives to obtain fraudulent mortgage loans on behalf of residential real estate purchasers and engaged in the process of transferring properties at closings.

199.    The defendants targeted distressed residential real estate properties and their owners, appraised the properties at greatly inflated values, recruited and deceived straw buyers - individuals with good credit scores but limited income and assets-and submitted false loan applications and supporting documents in the straw buyers' names, bribed bank and lending institution employees, and laundered the fraudulent mortgage loan proceeds they obtained through a web of personal and shell company bank accounts.

200.    That the defendants,  and others, recruited straw buyers to make fictitious purchases from financially distressed home owners and commercial property owners and then inducing bank loans on the transactions.  The defendants' role was to perpetuate the fiction by using his escrow account to move money to principals rather than the homeowner, (such as plaintiffs herein), or their banks of choice.

201.    The defendants that accomplished this purpose were members of a criminal enterprise.

202.    At all times hereinafter mentioned,  upon information and belief, and at all relevant times herein, the defendants, and each of them, acted  representing the sellers and buyers of the

48

properties . They all concealed the true nature of the transactions from their clients whom they frequently met for the first time at the closings, and were paid from fraudulently obtained loan proceeds.

203.    The plaintiffs never received any proceeds of any transfer of the property at issue. Instead, plaintiffs lost their property due to the failure of the defendants to pay the plaintiffs what was due and owing.

204.    That  contracts of sale signed and executed with regard to the instant matter were breached by the defendants.

205.    That the defendants, FORCHELLI, and the others, at the behest of YACKOW, concealed the  truth and nature of the transactions from his clients and distributed fraudulently obtained loan proceeds to defendants and others.

206.    That the defendants caused the damage and  all resulting damages were caused solely by reason  of the breach of contract of the defendants who have been unjustly enriched by their breach and fraudulent behavior.

207.    The promises and assurances given by the defendants to the plaintiffs were false when made, and were made by the defendants with the knowledge that the plaintiffs would rely same, and in relying upon same, the plaintiffs conveyed title to the premises.

208.    The representations were in fact false when made, and were made by the defendants for the purpose of deceiving the plaintiffs and leading them to believe that there was a true  relationship between the parties, one of respect and of trust, whereas in fact, the defendants never intended to honor their agreement.

209.    Had the plaintiffs  known of the falsity of the representations made by the

49

defendants to them, never to repay the monies due and owing, they would not have relied upon same nor would he have conveyed title to the subject premises.

210.    By reason of the above, the plaintiffs are entitled to have the defendants declared to hold and possess his interest in the subject real property as a constructive trustee for the benefit of the plaintiffs, and to require the defendants as such trustees, to convey the property to the plaintiffs.

211.    By reason of the above, the plaintiffs are entitled to have an accounting as to the income received by the defendants, and to have the defendants set forth copies of any and all leases or other instruments entered into by the defendants with tenants or others, as affecting the premises

212.    The defendants acted jointly in this criminal enterprise.

213.    By reason of the foregoing, the plaintiffs request the following:

A monetary judgment in favor of Plaintiff and against said Defendants in a sum to be determined at trial but in no event is it believed to be less than $1,000,000.00;

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST
CIENA CAPITAL LLC, BUSINESS LOAN EXPRESS, LLC., BLX CAPITAL, LLC,
CIENA CAPITAL FUNDING (NEW YORK) LLC, CIENA CAPITAL FUNDING, LLC,
ALLEGIANT PARTNERS LLC, JAY L. YACKOW, ESQ., JAX VENTURES, LLC,
STEVEN COHN, ESQ. ROY J. LESTER, ESQ., ARENT FOX, FORCHELLI CURTO
DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP, PROCTOR WONG, STEVEN
PRINCE, LU DIDA PR INC, HOWARD GETZ, DR. ALAN GREENFIELD, SAMUEL
MELNICK, ROSEMARY CRUZ, CARLOS RIVERA GONZALES, ROSEANN
CAPANEGRO, BENJAMIN KWOK, STEVEN DAVIS, LOUIS MOYET
(DISPOSSESSION AND WRONGFUL EVICTION)**

214.    Plaintiffs repeat and reiterate each and every allegation set forth in the above paragraphs designated as "1" through "213" of the complaint with the same force and effect as if the same had been set forth at length herein.

215. That the plaintiffs have operated the Manor East as a family business, for the purposes of a family catering hall, as the Manor East. At the present time, there are approximately $700,000.00 in events booked that have been cancelled due to the actions of the defendants, especially YACKOW, and the Sheriff. The plaintiff employs 75 people who have lost their means of employment.

216. Prior to the commencement of the instant action and through to the present date, the plaintiffs were the landlords and owners of the subject premises.

217. By virtue of a lease agreement the plaintiffs had all right and entitlement to remain at the subject premises for a period of thirty years which had not expired.

218. The SHERIFF, at the direction of YACKOW and the investors, and other defendants, wrongfully removed the plaintiffs from use and possession of the property at issue (the subject premises).

219. Defendant YACKOW improperly directed the COUNTY and SHERIFF, along with LOCONSOLO to wrongfully remove the plaintiffs from possession and use of the subject premises in direct defiance of the writ of assistance and the Order of Justice Bucaria.

220. That, the defendants have directly impeded and destroyed the possession and property interests of the plaintiffs.

221. In addition thereto, during this time period, the defendants used a non-party status to illegally remove the plaintiffs from the property. . As a result of the conduct alleged above, the plaintiffs have been, in effect, wrongfully ejected from the subject premises in violation of their ownership and lease and term as landlord and owner.

**WHEREFORE,** based upon the foregoing, Plaintiffs request judgment as follows:

**A.**     **ON THE FIRST CAUSE OF ACTION:**

A monetary judgment in favor of Plaintiffs and against said Defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00,

**B.**     **ON THE SECOND CAUSE OF ACTION:**

A monetary judgment in favor of Plaintiffs and against said Defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00 plus punitive damages of $3,000,000.00,

**C.**     **ON THE THIRD CAUSE OF ACTION:**

A monetary judgment in favor of Plaintiffs and against said Defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00 plus punitive damages of $3,000,000.00,

**D.**     **ON THE FOURTH CAUSE OF ACTION:**

Plaintiffs demand judgment all causes of action that, during the pendency of this action, the defendants be enjoined and restrained from selling, transferring, encumbering, or otherwise disposing of their interest in the real property located at 201 Jerusalem Avenue Massapequa, New York 11758, and ultimately transferring the property back to the plaintiffs; immediate reinstatement of the property at issue by the plaintiffs as of the filing of the complaint;

**E.**     **ON ALL CAUSES OF ACTION**

Treble damages against each and every defendant, in an amount to be determined by the Court

and/or after trial in this matter, together with costs, disbursements, attorneys fees, and such other and

further and different relief  legal and equitable as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Melville, New York
      June 24, 2013                                    _____
                                          IRWIN POPKIN, ESQ.
                                          Attorney for Plaintiffs
                                          445 Broadhollow Road, Suite 25
                                          Melville, New York 11747
                                        (631) 281-0030

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NASSAU  )


JOHN DE JOHN, being duly sworn, deposes and says:

That deponent is a plaintiff in the within action;  that he has read the foregoing COMPLAINT and knows the contents thereof;  that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

JOHN DE JOHN

Sworn to before me this

24th   day of June , 2013


NOTARY PUBLIC

GENEVIEVE LANE LOPRESTI
Notary Public, State of New York
No. 02LO4876963
Qualified in Nassau County
Commission Expires October 20, 2014

**Schedule A Description**

Title Number **615-567N**

Lot No. 88, 89, 90 and 98

ALL that certain plot, piece or parcel of land, situate, lying and being at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by parts of Lots No. 39 to 46, both inclusive and adjoining part of Lots No. 47 in Block 14 on a certain map entitled "Map of Massapequa Centre, Jerusalem Avenue Section, situated at Massapequa, N.Y., surveyed May 1927 by Baldwin and Cornelius Co., C.E., Freeport, N.Y., McGoldrick Realty Co., Inc., Developers, New York, N.Y.", and filed in the office of the Clerk of the County of Nassau on June 28, 1927 as Map No. 636, New Map No. 743, being more particularly bounded and described as follows:

BEGINNING at a point on the new northerly side of Jerusalem Avenue, as widened, distant 90.70 feet westerly when measured along the new northerly side of Jerusalem Avenue from the corner formed by the intersection of the new northerly side of Jerusalem Avenue with the new westerly side of Broadway (Bethpage Road) as widened, and which said point of beginning is also where the division line between Lots 38 and 39 on Block 14 on the aforesaid map intersects the new northerly side of Jerusalem Avenue;

RUNNING THENCE north 84 degrees 45 minutes 20 seconds west along the new northerly side of Jerusalem Avenue 179.97 feet;

THENCE north 10 degrees 09 minutes 00 seconds east 95.23 feet to the division line between Lots 47 and 20 in Block 14 on the aforesaid map;

THENCE south 79 degrees 51 minutes 00 seconds east partly along the last mentioned division line and partly along the division line between Lots 21 to 28, inclusive, and Lots 39 to 46, inclusive, in Block 14 on the aforesaid map 179.30 feet to the division line between Lots 35 and 39 in Block 14 on said map first above mentioned;

THENCE south 10 degrees 09 minutes 00 seconds west partly along said division line and partly along the division line between Lots 36, 37, 38 and Lot 39 in Block 14 on said map 79.84 feet to the new northerly side of Jerusalem Avenue, as widened, the point or place of BEGINNING.

Continued On Next Page

**Schedule A Description - continued**

Title Number **615-567N**

Page    **2**

Lot No. 93

ALL that certain plot, piece or parcel of land, situate, lying and being at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by Parts of Lots No. 51 to 53, both inclusive in Block 14 on a certain map entitled "Map of Massapequa Centre, Jerusalem Avenue Section, situated at Massapequa, N.Y., surveyed May 1927 by Baldwin and Cornelius Co., C.E., Freeport, N.Y., McGoldrick Realty Co., Inc., Developers, New York, N.Y.", and filed in the office of the Clerk of the County of Nassau on June 28, 1927 as Map No. 636, Case No. 743, which said parts of lots, when taken together, are more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of Jerusalem Avenue, as widened, distant 260.96 feet easterly when measured along said northerly side of Jerusalem Avenue from the corner formed by the intersection of the northerly side of Jerusalem Avenue, as widened, with the easterly side of Central Drive (formerly N. Central Avenue);

RUNNING THENCE north 10 degrees 09 minutes 00 seconds east along the division line between Lots numbered 53 and 54 in Block 14 on the above mentioned map, 105.59 feet to the northerly line of Log Numbered 53;

THENCE south 79 degrees 51 minutes 00 seconds east along the northerly line of Lots Numbered 53, 52 and 51 a distance of 60 feet to the division line between Lots Numbered 50 and 51;

THENCE south 10 degrees 09 minutes 00 seconds west along last mentioned division line, 100.44 feet to the northerly side of Jerusalem Avenue, as widened;

THENCE north 84 degrees 45 minutes 20 seconds west along the aforesaid northerly side of Jerusalem Avenue, 60.22 feet to the point or place of BEGINNING.

Continued On Next Page

**Schedule A Description - continued**

Title Number **615-567N**                                                       Page     3

Lot No. 94

ALL that certain plot, piece or parcel of land, situate, lying and being at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by part of Lots No. 54, 55 and 56 in Block 14 on a certain map entitled "Map of Massapequa Centre, Jerusalem Avenue Section, situated at Massapequa, N.Y., surveyed May 1927 by Baldwin and Cornelius Co., C.E., Freeport, N.Y., McGoldrick Realty Co., Inc., Developers, New York, N.Y.", and filed in the office of the Clerk of the County of Nassau on June 28, 1927 as Map No. 636, Case No. 743,  bounded and described as follows:

BEGINNING at a point on the northerly side of Jerusalem Avenue, as widened, distant 200.73 feet easterly from the corner formed by the intersection of the easterly side of Central Drive and the new northerly side of Jerusalem Avenue;

RUNNING THENCE southerly on a line forming an interior angle of 85 degrees 05 minutes 40 seconds with the new northerly side of Jerusalem Avenue, a distance of 110.74 feet;

THENCE easterly at right angles to the preceding course, 60 feet;

THENCE southerly at right angles to the preceding course, 105.59 feet to the new northerly side of Jerusalem Avenue;

THENCE westerly along the new northerly side of Jerusalem Avenue 60.23 feet to the point or place of BEGINNING.

Continued On Next Page

**Schedule A Description - continued**

Title Number **615-567N**                                                                    Page   **4**

Lot No. 95

ALL that certain plot, piece or parcel of land, situate, lying and being at
Massapequa, Town of Oyster Bay, County of Nassau and State of New York,
known and designated as and by part of Lots No. 57 to 61, inclusive, in Block 14
on a certain map entitled "Map of Massapequa Centre, Jerusalem Avenue
Section, situated at Massapequa, N.Y., surveyed May 1927 by Baldwin and
Cornelius Co., C.E., Freeport, N.Y., McGoldrick Realty Co., Inc., Developers,
New York, N.Y.", and filed in the office of the Clerk of the County of Nassau on
June 28, 1927 as Map No. 636, New Number 743, being more particularly
bounded and described as follows:

BEGINNING at a point on the northerly side of Jerusalem Avenue, distant 100.37
feet easterly from the corner formed by the intersection of said northerly side of
Jerusalem Avenue and the easterly side of Central Drive;

RUNNING THENCE north 10 degrees 09 minutes 00 seconds east 119.32 feet;

THENCE south 79 degrees 51 minutes 00 seconds east 100 feet;

THENCE south 10 degrees 09 minutes 00 seconds west 110.74 feet to said
northerly side of Jerusalem Avenue;

THENCE along said northerly side of Jerusalem Avenue north 84 degrees 45
minutes 20 seconds west 100.36 feet to the point or place of BEGINNING.

Continued On Next Page

## Schedule A Description - continued

Title Number **615-567N**                                                                                   Page    **5**

Lot No. 97

ALL that certain plot, piece or parcel of land, situate, lying and being at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by part of Lots No. 47 to 50, both inclusive, in Block 14 on a certain map entitled "Map of Massapequa Centre, Jerusalem Avenue Section, situated at Massapequa, N.Y., surveyed May 1927 by Baldwin and Cornelius Co., C.E., Freeport, N.Y., McGoldrick Realty Co., Inc., Developers, New York, N.Y.", and filed in the office of the Clerk of the County of Nassau on June 28, 1927 as Map No. 636, Case No. 743, which said part of said lots are more particularly bounded and described as follows:

BEGINNING at a point on the present northerly line of Jerusalem Avenue, where the same is intersected by the division line between lots numbered 50 and 51 in block numbered 14 on the above mentioned map at a point on the present northerly line of Jerusalem Avenue distant 321.18 feet easterly from the corner formed by the intersection of the present northerly line of Jerusalem Avenue with the easterly line of Central Drive (N. Central Avenue);

RUNNING THENCE north 10 degrees 09 minutes 00 seconds east along the division line between lots numbered 50 and 51 in block numbered 14 on the above mentioned map 100.44 feet to the division line between lots numbered 17 and 50 in block numbered 14 on the above mentioned map;

THENCE south 79 degrees 51 minutes 00 seconds east along the division line between lots numbered 17 to 20, both inclusive, and lots numbered 47 to 50, both inclusive, in block numbered 14 on the above mentioned map 60.70 feet;

THENCE south 10 degrees 09 minutes 00 seconds west 95.23 feet to a point on the present northerly line of Jerusalem Avenue distant 270.67 feet westerly from the corner formed by the intersection of the present northerly line of Jerusalem Avenue with the present westerly line of Broadway (Bethpage Road);

THENCE north 84 degrees 45 minutes 20 seconds west along the present northerly line of Jerusalem Avenue 60.92 feet to the point or place of BEGINNING.