UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
201 JERUSALEM AVE MASSAPEQUA LLC,
and JOHN DE JOHN

                                 Plaintiffs ,                Docket No.  13 cv 03568
                                                          (LDW)(AKT)


    -against-

                                                   **AMENDED**
                                                  **COMPLAINT**

                                                  **JURY TRIAL**
                                                  **DEMANDED**

CIENA CAPITAL LLC, BUSINESS LOAN EXPRESS,
LLC., BLX CAPITAL, LLC, CIENA CAPITAL FUNDING
(NEW YORK) LLC, CIENA CAPITAL FUNDING, LLC,
ALLEGIANT PARTNERS LLC, PAUL BIBBO,
NADINE LUGO, JAY L. YACKOW, ESQ.,
JAX VENTURES, LLC, STEVEN COHN, ESQ.
ROY J. LESTER, ESQ., ARENT FOX, FORCHELL I
CURTO DEEGAN, SCHWARTZ, MINEO & TERRANA,
 LLP, PROCTOR WONG, STEVEN PRINCE, LU DIDA
PR INC, HOWARD GETZ, DR. ALAN GREENFIELD,
SAMUEL MELNICK , ROSEMARY CRUZ, CARLOS
RIVERAGONZALES, ROSEANN CAPANEGRO,
BENJAMINKWOK, STEVEN DAVIS, LOUIS MOYET,
NASSAU COUNTY DISTRICT ATTORNEY,
CHARLES ROBUNDO, MICHAEL RYAN, MICHAEL J.
SPOSATO, THE NASSAUCOUNTY SHERIFF, THE
COUNTY OF NASSAU, ELIZABETH LOCONSOLO,
ESQ., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY
AS COUNSEL TO THE NASSAU COUNTY SHERIFF
AND THE NASSAU COUNTYEXECUTIVE,
CSH VENTURES, LLC, 201 JR CORP,"X","Y","Z"
Corporations, whose names and addresses are
presently unknown and"JANE DOE"and "JOHN DOE"
as co-conspirators, whose names and addresses
are presently unknown,

                                         Defendants.
--------------------------------------------------------------------------x

       Plaintiffs, 201 JERUSALEM AVENUE MASSAPEQUA, LLC, and JOHN DE JOHN by

their undersigned attorneys, complaining of the Defendants, allege as follows:

## JURISDICTION AND VENUE

1. This action arises under the Civil Rights Law, 42 U.S.C. § 1983 and 1985. This Court has jurisdiction of this matter pursuant to 28 U.S.C.A. 1342. The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights guaranteed by the Federal Constitution and laws. This court also has jurisdiction of this action under the additional following statutes and acts: Organized Crime Act of 1970, 18 USC Sec. 1964 (a) and ( c ) (RICO); 28 USC Sections 1331, 1332, 1337, 42 USC Sec 1983, and 1985.

2. Jurisdiction is conferred on this court to secure protection of the ordinances, customs, and usages o all rights, privileges and immunities secured to the plaintiffs by the Fourteenth Amendment to the Constitution of the United States Statutes thereunder.

3. Jurisdiction is conferred on this on this court pursuant to 28 USC Section 1367 to hear the pendent claims arising from the same common nucleus of operative facts under the laws of the State of New York and supplemental jurisdiction is invoked by 28 USC 1376.

4. Personal jurisdiction and venue in this action are predicated pursuant to 18 USC Section 1965, 28 USC Sections 1391 (b), (1391(b)(1), 1391 (b)(2), and 1391 (c ) as all defendants reside and/or work in this judicial district and sine certain defendants are residents of, are found within the, have agents within or transact their affairs in this District, and certain activities of the defendants giving rise to this action took place in this District.

5. This Court has authority to grant compensatory and punitive damages and costs and disbursements pursuant to 42 USC Section 1983, et seq.,

6. To the extent that some of Plaintiffs' claims rest exclusively upon New York State law, this Court has jurisdiction to adjudicate such claims pursuant to 28 U.S.C. §1367.

7.   Venue with regard to the claims asserted herein is proper pursuant to 28 U. S. C.§ 1391, since a substantial part of the events or omissions giving rise to the claims of the Plaintiffs occurred in the Eastern District of New York and Plaintiffs 201 JERUSALEM AVENUE reside in the Eastern District of New York.

### NATURE OF ACTION AND RELIEF REQUESTED

8.   This civil action is brought against the various named defendants who damaged the plaintiffs as a result of participation in one or more of the following activities affecting the plaintiffs:  (1) conspiracy to breach a contract; (2) scheme to defraud and to steal property (RICO); (3) violation of equal protection clause; (4) violation of substantive and procedural due process; (5) wrongful eviction and  ejectment; (6) common law fraud;  (7) conspiracy to breach a contract; (8) scheme to defraud and to steal property (RICO); (9) violation of equal protection clause ( violation of substantive and procedural due process); and other related relief.

9.   Plaintiffs request the Court to award to them compensatory damages and punitive damages; to impose a constructive trust upon the real property from which they were wrongfully evicted; to award attorneys' fees and such other monetary damages which are just and proper under the circumstances.

10.   This case was instituted as a consequence of  several different law suits brought during the course of the past years, designed to deprive the plaintiffs of their property rights, in violation of the State and Federal Constitutions.

11.   These actions took brought in the Supreme Court ,Nassau County and in the Appellate Division , Second Department . These actions involved the various branches of the Judiciary and government at all levels, including the Nassau County District Attorney's Office, the Queens County District Attorney's Office, and the Sheriff of Nassau County.

12.     The concerted actions of strategic court appointments and the deliberate failure of governmental authorities to prosecute crimes, perpetuated a system in this instance which allowed the unconstitutional taking of property under the guise of alleged due process and resulted in depriving the plaintiffs, including but not limited to DeJOHN, a 80 year old Veteran, of his life savings.

13.     Some of the numerous court actions that were taken against the plaintiffs to destroy their property interests included:

> a.   BAYVIEW LOAN SERVICING LLC V. ALLYS A LEIGH CORP, ET AL (INDEX NO. 20936-2007)
>
> b.   ALLEGIANT PARTNERS INCORPORATED, V. MANOR EAST OF MASSAPEQUA, LLC ET AL (INDEX NO. 11148-2007)
>
> c.   JOHN DEJOHN V. ROY J. LESTER, (INDEX NO. 12112-2012 )
>
> d.   PAUL BIBBO AND NADINE LUGO V. ARVANITKIS, ETAL, (INDEX NO. 22873-2012-QUEENS COUNTY)

14.     Defendants, CIENA, BLX, JAX VENTURES, 201 J&R CORP, and the individual investors, organized by YACKOW, are engaged in the business of providing business loans to small businesses.

15.     Defendants, CIENA, BLX, JAX VENTURES, 201 J&R CORP, and the individual investors, organized by YACKOW, are engaged in the business of providing business loans to small businesses.

16.     The defendant-investors provide loans in particular to restaurants, manufacturing

industries, and other small businesses. They also offer finance services including loans and long term investment property financing, including loans secured by personal residences within this District.

17.     In such capacity, defendants, CIENA, BLX, JAX VENTURES, 201 J&R CORP, collect the periodic payments made by loan borrowers and preform other mortgage loan servicing obligations.

18.     201 is a landmark catering hall operating in Massapequa New York for approximately 50 years.

19.     The unlawfully staged and planned writ of assistance, by each of the defendants involved, is the result of a long fought and still ongoing effort to address and eliminate serious flaws in our legal system that, as evidenced by the present circumstances, has devastating consequences not only on the parties immediately involved, but on numerous members of the public as well.

20.     The well-organized plan of the party defendants was to squeeze the plaintiffs out of business such that another business would purchase the property, to the detriment of the plaintiffs, is illustrative of the campaign of harassment the plaintiffs have endured over the past years in this court system. They have entered into contracts, sold equipment, all to their detriment, to be double crossed by their own attorneys and municipal officials.

21.     This was a well-calculated and planned move by the parties involved and is part of the criminal conspiracy that strikes at the heart of what this country is founded upon

**THE PARTIES**

22.     At all times hereinafter mentioned, and at all relevant times, Plaintiff, 201 JERUSALEM AVE MASSAPEQUA LLC, ("201"), was, and still is a New York Limited

Liability Company, and the owner of Premises know as 201 Jerusalem Avenue, Massapequa, New York ("the Premises") which functioned for more than 50 years as a catering hall until December 18, 2013 when it was illegally evicted from the Premises as hereinafter described.

23.     Plaintiff, JOHN De JOHN ("DeJOHN"), is sole owner and managing member of 201.

24.     Upon information and belief, and at all relevant times, the Defendant, CIENA CAPITAL, LLC.,was and still is a limited liability company, having its principal offices at 1633 Broadway, 39th Floor, New York, New York 10019 ("CIENA"). CIENA is named as a defendant because it improperly instituted the foreclosure action causing the damages suffered by the plaintiffs.

25.     Upon information and belief, and at all times hereinafter mentioned, defendant, BUSINESS LOAN EXPRESS, LLC, ("EXPRESS"), was and still is a limited liability company, and allegedly operates and conducts business within the State of New York.

26.     Upon information and belief, and at all times hereinafter mentioned , Defendant BLX CAPITAL, LLC, ("BLX"), was and still is a limited liability company, and allegedly operates and conducts business within the State of New York.

27.     Upon information and belief, and at all times hereinafter mentioned, Defendant, ALLEGIANT( " ALLEGIANT"), is a corporation having an address of 999 Fifth Avenue , Suite 300, San Rafael, California 94901. ALLEGIANT held a lien on the Premises by virtue of a judgment in the amount of $276,046.91 entered in the Nassau County Clerk's Office on October 9, 2007.

28.     Upon information and belief, and at all relevant times, the Defendants, PAUL BIBBO, ("BIBBO") and  NADINE LUGO, ("LUGO") are husband and wife , who reside in Queens, New York.

29.     Defendant JAY L. YAKOW ("YAKOW"), is an attorney at law with offices located at 1400 Old Country Road, Suite 309, Westbury, New York, 11590. YAKOW is the attorney of record for the individual plaintiffs in the underlying foreclosure action entitled MAZZUKA, et., al., v. 201 JERUSALEM AVENUE MASSAPEQUA, LLC Nassau County Supreme Court, Index number 12738-08, which was removed to Judge Wexler, and now bears docket number CV 13-3160-hereinafter referred the "NASSAU ACTION" and/or "12738").

30.     Defendant, JAX ADVENTURES, LLC., ("JAX") is a domestic Limited Liability Company.

31.     Defendant Steven Cohn ("COHN") is an attorney at law with offices located at 1 Old Country Rd Carle Place, NY 11514. COHN was removed as the appointed referee in the Nassau Action, but purported to sell the premises not withstanding such lack of authority.

32.     Defendant, ROY J. LESTER, ESQ., ("LESTER"), was and still is an attorney at law with offices at 600 Old Country Road, Suite 229 Garden City, New York 11530. LESTER represented De JOHN, in a Chapter 13 case before the Federal Bankruptcy Court.

33.     Defendant ARENT FOX LLP ("FOX"), is a law firm with offices located at 1675 Broadway, New York, New York. FOX to illegally and unlawfully and wrongfully initiated the seizure of an automobile belonging to DeJOHN containing thousands of dollars which were never returned.

34.     Defendant, FORCHELLI CURTO DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP, ( "FORCHELLI"), is a law firm with offices at 333 Earl Ovington Blvd, Uniondale, New York. FORCHELLI formally represented the plaintiffs.

35.     Upon information and belief, defendant, PROCTOR WONG, ("WONG") was appointed as the Executor of the estate of JOHN MAZZUKA, a plaintiff in the underlying

action, and one of the investors involved in the NASSAU ACTIO N.

36.     Upon information and belief, and at all times relevant herein,  defendant, STEVEN PRINCE, ("PRINCE") was one of the investors and a plaintiff involved in the NASSAU ACTION.

37.     Upon information and belief, and at all times relevant herein, the defendant, LU DIDA PR INC., ("LU DIDA PR INC") was and still is a domestic corporation, organized in accordance with the laws of the State of New York.

38.     Upon information and belief, and at all times relevant herein, defendant, HOWARD GETZ, ("GETZ"), one of the investors and a plaintiff involved in the NASSAU ACTION..

39.     Upon information and belief, and at all times relevant herein, the defendant, Dr. ALAN GREENFIELD, ("GREENFIELD"), one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

40.     Upon information and belief, defendant, SAMUEL MELNICK, (hereinafter respectfully referred to herein as "MELNICK"), was one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York.

41.     Upon information and belief, and at all times relevant herein, the defendant, CARLOS RIVERA GONZALES, ("GONZALES "),  one of the investors and a plaintiff involved in the NASSAU ACTION.

42.     Upon information and belief defendant, ROSEMARY CRUZ, ( "CRUZ"), was and still is one of the investors and a plaintiff involved in the NASSAU ACTION, and a resident of the State of New York .

43.     Upon information and belief, defendant, ROSEANN CAPANEGRO, (hereinafter respectfully referred to herein as "CAPANEGRO"), was one of the investors and a plaintiff

-8-

involved in the NASSAU ACTION.

44.    Upon information and belief, defendant, BENJAMIN KWOK ("KWOK"), was one of the investors and a plaintiff involved in the NASSAU ACTION.

45.    Upon information and belief defendant, STEVEN DAVIS,("DAVIS") was one of the investors and a plaintiff involved in the NASSAU ACTION.i)

46.    Upon information and belief, defendant, LOUIS MOYET, ( "MOYET") was one of the investors involved in the NASSAU ACTION.

47.    Upon information and belief, and at all times relevant herein, the defendant, MICHAEL J. SPOSATO, ("SPOSATO"), was the Sheriff of the County of Nassau , and is responsible for enforcing and carrying out the lawful mandates and orders of the Courts of the State of New York.

48.    Upon information and belief, and at all times relevant herein, defendant, the OFFICE OF THE NASSAU COUNTY SHERIFF, is an appointed position, and is responsible for enforcing and carrying out the lawful mandates and orders of the Courts of the State of New York.

49.    Upon information and belief, and at all times relevant herein, the defendant, the COUNTY OF NASSAU, ("COUNTY"), was and still is a municipal subdivision of the State of New York, organized pursuant to and in accordance with the United States Constitution and the Constitution of the State of New York.

50.    Upon information and belief, and at all times relevant herein, defendant, ELIZABETH LOCONSOLO, ESQ., ("LOCONSOLO"), was and still is the attorney for the SHERIFF, and EDWARD MANGANO ("MANGANO") the Nassau County Executive, and has acted and represented that she advised SPOSATO, the Sheriff, and MANGANO to act in the

manner they did on June 13, 2013 and prior thereto in court and YACKOW has stated in his court documents that he has researched the matter with her.

51.     Upon information and belief, CSH VENTURES, LLC, was and still is a limited l liability company, and allegedly operates and conducts business within the State of New York.

52.     Upon information and belief, 201 JR CORP., ("JR"), was and still is a corporation formed by YACKOW to transfer the subject premises immediately after he illegally stole the property.

53.     Upon information and belief, "X","Y","Z" Corporations, is the designation presently provided to those corporations whose names and addresses are presently unknown to the plaintiffs who will become party defendants to the action.

54.     "'JANE DOE" and " JOHN DOE" are co-conspirators, whose names and addresses are presently" unknown are presently unknown to the plaintiffs who will become party defendants to the action.

## THE FACTS

55.     The Manor East was purchased by Plaintiff, DeJOHN, on September 27th, 2006 for 4.750 million dollars. A portion of the purchase was financed  with a one year bridge loan (hard money) provided by MADISON REALTY CAPITAL LLP ("MADISON").

56.     On December 18, 2006 ALLEGIANT loaned $200,000.00 to 201. The loan was collateralized by a second mortgage.

57.     Approximately six months later, while the loan was current and all payments were timely made, ALLEGIANT demanded DeJOHN's personal guarantee. DeJOHN refused to comply with the demand.

58.     ALLEGIANT then hired FOX, to foreclose its second mortgage. 201 hired the Law

Firm of Sarisohn and Partners, to answer the foreclosure complaint. The Sarisohn Firm failed to answer the complaint, which lead to a JUSTICE IRA WARSHAWSKY ("WARSHAWSKY") awarding ALLEGANT a default judgment.

59.     WARSHAWSKY, refused to release the funds contained in an account owned by DeJOHN satisfy the Judgment ( at a premium of 200%). As a result FOX caused a vehicle belonging to DeJOHN containing thousands of dollars to be improperly seized. Although the vehicle was ultimately returned together with FOX's apology, the money was not.

60.     The plaintiffs were referred to a company entitled "BLX CAPITAL LLC" (hereinafter respectfully referred to as "BLX") which later became known as "CIENA". BLX took an assignment of the MADISON and advanced an additional $600,000.00. The total indebtedness amounted to $5,350,000.00.

61.     The additional $600,000.00 which BLX/CIENA, advanced was to be held in escrow for the payment of taxes. BLX/CIENA, took the assignment from MADISON, holding $600,000.00 in escrow. When 201 subsequently received a tax bill directly, it inquired and learned that BLX/CIENA declared bankruptcy and that the $600,000.00 was no longer being held in their escrow account.

62.     Negotiations ensued through counsel and BLX/CIENA, agreed to accept $1.5 million in return for a non-prosecution agreement. When DeJOHN presented himself at BLX/CIENA's attorneys office with the funds, he was advised that the offer of $1.5 million was withdrawn. JAX bought the loan.

63.     On August 31, 2009, pursuant to a stipulation of settlement, CIENA assigned its interest in the foreclosure action to JAX. In the Stipulation of Settlement, dated August 31, 2009, it was agreed that a sale of the subject premises would not occur so long as 201 among other

conditions, made monthly payments of $34,000.00 commencing October 1, 2009. The

stipulation provided that at any time through to the foreclosure sale, JAX would accept the sum

of $2,555,000.00 plus interest at the rate of 16%, or 24% in the event of a default, in full

settlement of the loan.

64.     As time passed it became abundantly clear that YACKOW and the JAX investors had

no intention of honoring the stipulation permitting 201 to have the loan settled as above stated.

On the contrary, they made every effort to thwarted that from happening.

65.     BIBBO became interested in 201 as a party who would acquire the Premises or take

an assignment of mortgage that had been assigned by BLX/CIENA, to JAX VENTURES.

66.     Initially, BIBBO offered to pay 4.6 million dollars, if the deal would close on or

before December 31, 2010, time being of the essence because of BIBBO's tax concerns. JAX

was to receive 2.8 million and the balance to DeJOHN or his designee.

67.     At all times hereinafter mentioned,  BIBBO was and still is the sole Member and

Manager of CSH Ventures, LLC ("CSH").

68.     Prior to June 10, 2011 the mortgage encumbering Premises was owned by JAX and

was the subject of a foreclosure action entitled *Mazzuka v 201Jerusalem Avenue Massapequa*,

Supreme Court, Nassau County, Index No.12738/08.

69.     JAX had offered to allow 201 to pay off the mortgage or buy back the property, in the

event they took title subsequent to a foreclosure sale for  $2,550,000.00;  provided 201 paid

interest on that amount at the rate of 16%, or $34,000.00 per month. I felt that I had no choice

but to agree to those terms.

70.     In an effort to salvage what had become an untenable circumstance, and realize

whatever  could be done from the horrific situation, the plaintiffs then attorney,  introduced

BIBBO, the principal of CSH  to JAX.

71.     Plaintiffs prior counsel apparently knew BIBBO and represented that he had  prior dealings withBIBBO and new him as a successful real estate operator who owned, through various entities, numerous properties and was otherwise a financial wizard. He had  approached BIBBO and explained the circumstances to him. BIBBO expressed a keen interest in acquiring the premises as both a tax shelter and at a bargain price. When the deal was first presented to him he expressed a desire to take title almost immediately so as to obtain immediate tax benefits. He made it very clear to plaintiffs' then counsel that his ability to consummate the deal on an "all cash" basis was not an issue.

72.     Predicated upon that introduction and the ensuing negotiations, a deal was struck between CSH and JAX which provided for JAX to foreclose the mortgage, assign its bid to CSH for a specified price and upon the closing of that transaction, JAX would pay $750,000.00 to an entity designated by DeJOHN.

73.     JAX's obligation to pay $750,000.00 to the entity designated by the DeJOHN was conditioned upon 201 going out of business and delivering  possession of the premises to JAX on or before July 10, 2011. That date was later orally modified to July 17, 2011 because of time the Auctioneer's time constraints.

74.     In justifiable reliance upon BIBBO's commitment to JAX and JAX's consequential promise to pay $750,000.00 to an entity chosen by DeJOHN, DeJOHN  advertised and caused an auction sale to be held of all of the furniture and fixtures.

75.     Additionally, he returned all of the contract deposits it received for parties or events scheduled to take place. As far as the community was concerned the catering hall was out of business.  The DeJOHN and 201 was ready willing and able to deliver vacant possession  upon

-13-

receipt of the promised payment.

76.     That circumstance cost DeJOHN and 201 more than $5,000,000.00.

77.     Bibbo violated the covenant of "good faith and fair dealing." As events unfolded, it became abundantly clear that neitherBIBBO nor CSH intended to close with JAX unless they were able to "flip" their contract for a profit. Upon information and belief, BIBBO initially had a buyer for the catering facility. When that buyer failed to materialize he chose to walk away from the deal.

78.     The DeJOHN and 201 relied upon BIBBO's representation to Lisi, its attorney, that he was a very wealthy man and had sufficient assets to unconditionally close the deal with JAX which would then require JAX to pay $750,000.00 to  the Manor Defendants.

79.     Upon information and belief BIBBO had meetings with a member of the JAX group in an effort to devise a plan which would enable JAX and BIBBO to accomplish their respective objectives and avoid having to honor their commitment to me.

80.     DeJohn would not have taken such actions on behalf of 201 had he known that BIBBO had no intention of closing with JAX unless he could "flip" the deal.

81.     When it appeared to Steven Haffner, Esq. ("Haffner"), CSH's then attorney, that JAX was equivocating about honoring its deal with CSH, Haffner instituted a specific performance action on behalf of CSH, entitled *CSH Ventures, LLC v JAX, Ventures, LLC.*, in the Supreme Court, Nassau County, Index No.12- 2437 in which DeJOHN's affiliates were named as parties defendant.

82.     Apparently, BIBBO no longer wanted the deal. His response to forcing JAX to close which would require him to come up with more than $3,000,000.00 and trigger JAX's obligation to pay over the $750,000.00, was to sue Haffner.

-14-

83.     BIBBO then hired LESTER who negotiated a settlement with JAX. That settlement which allowed JAX's attorney to keep $25,000.00 of the $50,000.00 initially deposited with him and the balance of that deposit was paid to Lester's designee.

84.     LESTER then filed *CSH Ventures LLC v Haffner*, in the Supreme Court, Nassau County, Index No. 12- 10642 seeking the $450,000.00 that Haffner was still holding in escrow. Lester moved by Order to Show Cause for an order directing Haffner to turn over the escrow funds to BIBBO. On the return date of that order LESTER represented to the Justice presiding that BIBBO and LUGO, who were both then present in court with their baby, were destitute and desperately needed the money.

85.     On June 10, 2011 the 201 and DeJOHN executed a Stipulation and Surrender Agreement in favor of CSH together with the Stipulation of Estoppel and Release of Claims and Waiver of Defenses.

86.     The 201 and DeJOHN were fraudulently induced by CSH and BIBBO to give up rights expressed in those documents predicated upon the express understanding that the 201 would vacate the Premises on or before July 10, 2011 and in consideration of the delivery of such possession, an entity designated by DeJOHN would be paid approximately $750,000.00.

87.     That understanding was confirmed in an agreement between JAX and CSH to which the 201 and DeJOHN were third party beneficiaries.

88.     CSH failed to honor the promises made to t 201 and DeJOHN and and entity designated by DeJOHN was never paid

89.     STEVEN COHN ESQ., acted under the color of the law after having been removed as a Referee by a Federal Bankruptcy Judge, and his authority to act as such Referee was never reinstated not withstanding that fact, STEVEN COHN was instrumental in divesting 201

JERUSALEM AVENUE MASSAPEQUA LLC, and its title to 201 JERUSALEM AVENUE

MASSAPEQUA LLC, by conducting a foreclosure sale there after conveying title to the

premises to defendant 201 JR CORP. While relieved, but still continuing as referee he also saw

fit to represent PAULBIBBO, and CSH VENTURES LLC, in which is a direct contradiction

with his fiduciary duties. When confronted by Irwin Popkin, Esq. in Nassau Supreme counted,

Steven Cohn misrepresented and he lied to Justice Bucaria and also to the Second Department

Appellate Division Justice Austin, that he did not represent of PAULBIBBO. (201 JR CORP is a

corporation owned and controlled by JAY YACKOW and the members of JAX VENTURES).

90.     ROY J. LESTER, ESQ., acted in conspiracy with all involved as his representation of

John DeJohn, PaulBIBBO and his claim to have a personal relationship with JAY YACKOW.

He fraudulently induced John DeJohn to retain his services and file a Chapter 13 to achieve the

ultimate goal of an August 16, 2011 closing date.

91.     FORCHELLI.was retained by  DeJOHN on numerous occasions to defend him, but

instead they betrayed him. The firm took lofty retainers and performed no work, as evidenced by

the court records. GARY KUSHNER, a Partner, was assigned to stop and settle the

ALLEGIANT claim, finalize the deal with YACKOW, audit YACKOW, all of which never

came to pass. Every municipality, law enforcement, when made aware that FORCHELLI

represented DeJOHN backed off immediately in pursuing their duties.

92.     Defendant, CHARLES ROBUNDO, was contacted and failed to take action with

regard to the plaintiffs' complaint in an attempt to avoid further damages. Although being duly

advised by the Chief of Police of the County of Nassau, and the Chief of Police, met with

DeJOHN and was told to make a criminal complaint in 2011 and 2012, when the said deal fell

apart.

-16-

93.     Thereafter, the municipalities became involved and could not be stopped. THE

NASSAU COUNTY SHERIFF, THE OFFICE OF THE NASSAU COUNTY

SHERIFF, MICHEAL J. SPOSATO. MICHAEL SPOSATO, Sheriff of Nassau County, ignored

the explicit direction contained in a writ of assistance issued by JUSTICE BUCARIA and

wrongfully evicted MASSAPEQUA MANOR INC and 201 JERUSALEM AVENUE

MASSAPEQUA LLC, at the time which had been the owner of the subject premises.

**PROCEDURAL BACKGROUND**

94.     Through to in or about December 18, 2012,  the plaintiff,  201, was the owner of the

commercial premises located at 201 Jerusalem Avenue Massapequa, New York 11758

(hereinafter respectfully referred to herein as the "SUBJECT PREMISES").  The plaintiff, DE

JOHN, executed a lease agreement, duly recognized by the Supreme Court of the State of New

York, County of Nassau, as a valid lease agreement, wherein he, as a shareholder of the

corporation , 201, reserved the right to transfer possession, use and occupancy of the subject

premises.

95.     Thereafter, 201 leased the SUBJECT PREMISES to INC. **(Annexed hereto, made**
**a part hereof and labeled Exhibit "A" is a copy of the description to the subject premises).**

96.     In an foreclosure action pening before JUSTICE BUCARIA  Manor East of

Massapequa, LLC, made application to vacate the underlying foreclosure judgment because it

was obtained by means of fraud, misrepresentation and misconduct.  That motion fell and never

was decided. To this date, JUSTICE BUCARIA has yet to determine the motion, yet, despite this

open motion, JUSTICE  BUCARIA issued a Writ of Assistance, destroying the MANOR EAST

OF MASSAPEQUA.

.

-17-

97.     Through to June 13, 2013, and for quite some time herein, INC, along with the plaintiff- landlord, 201,  had been occupying the subject premises without interruption and conducting business as a catering hall for an extended period of time.

98.     This was the result of the defendants exercise of the aforementioned option to transfer all right and interest in a lease agreement duly exercised by Plaintiff (then defendant), De JOHN.

99.     That on or about July 10, 2008, an action was commenced to foreclose the mortgage by defendant (then plaintiff) CIENNA.  The original mortgage secured a note dated September 27, 2006 in the principal amount of $4,750,000 and made by the defendant 201.  The note was payable to MADISON.

100.     On February 23, 2007, 201, entered into a consolidation agreement with BLX Capital, LLC, the holder of the mortgage.  At the time of the consolidation agreement, the principal amount of the indebtedness was $5,350,000.  On January 7, 2008, defendant  COHN, was appointed as temporary receiver to engage a professional management firm and to collect the rent on the property.

101.     At all times herein, the subject premises had been occupied by the MANOR EAST, and/or its assignees, MASSAPEQUA MANOR INC., which defendants (then plaintiffs) neglected to include as a party defendant to the instant foreclosure action.

102.     On August 31, 2009, pursuant to a stipulation of settlement, CIENA assigned its interest in the foreclosure action to JAX.  Within the Stipulation of Settlement, dated August 31, 2009, defendants (then plaintiffs) agreed not to schedule a sale of the subject premises as long as the instant defendants (plaintiffs in the instant action),  among other conditions, made monthly payments of $34,000.00 commencing October 1, 2009.  The stipulation provided that at any time through to the foreclosure sale, the defendants would accept the sum of $2,555,000 plus interest

-18-

at the rate of 16%, or 24% in the event of a default, in full settlement of the loan.

103.    On March 3, 2010, the investors counsel served 201 with a notice of default based upon their alleged failure to make the monthly payment due December 1, 2009 and alleged outstanding taxes. The investors counsel, in a further attempt to steal the property from DEJOHN and 201, submitted a proposed "consent judgment of foreclosure" in the amount of $6,565,045, including accrued interest, late fees, and miscellaneous fees in the amount of $232,992.

104.    On July 18, 2011, at the advice of defendant LESTER., DeJOHN, filed a bankruptcy petition with the Eastern District Federal Bankruptcy Court, on behalf of one of the tenants, 201. During the course of the Bankruptcy Proceeding, the Honorable Judge Grossman removed COHN as Referee . At no point thereafter was defendant COHN ever re-appointed by JUSTICE  BUCARIA as Referee to sell the subject premises.

105.    In fact, the record in the foreclosure action fails to indicate that COHN was at any time reinstated as referee for the purpose of selling the subject property at the subject premises. As such, the defendant, COHN lost all power and jurisdiction to conduct a sale of the SUBJECT PREMISES after being removed as Referee by the Federal Court.

106.    JUSTICE  BUCARIA, was fully aware of the Federal Court's removal of COHN, and the Referee's removal by the Federal Court Judge was duly recognized by JUSTICE BUCARIA within his Order dated April 11, 2011.  Yet despite this fact, the Nassau County Supreme Court, by and through JUSTICE  BUCARIA deliberately permitted the subject premises to be lost at a foreclosure sale where the Referee lacked jurisdiction to sell and transfer the real property and subject premises at issue. The State Supreme Court deprived the defendants of their property rights without due process of law and by allowing the Courts of the State of

New York to perform a governmental function without the authority to do so.

107.    By Order to Show Cause dated September 27, 2012,  DeJOHN and 201  made application to the Supreme Court of the State of New York, County of Nassau, for an Order vacating and setting aside the judgment of foreclosure and sale dated August 5, 2010 upon the grounds of the fraud, misrepresentation and misconduct of the plaintiffs, or their agents, in connection with obtaining the judgment and permitting the defendants in that action to interpose a supplemental verified answer.  **This motion has never been decided to date yet**, all the other motions which benefit the plaintiffs have been decided.

108.    On December 18, 2012, Referee COHN purported to conduct a foreclosure sale of the subject premises.  The subject premises was sold to 201 JR CORP, (hereinafter respectfully referred to as "JR CORP"), a New York corporation, with offices c/o YACKOW, 1400 Old Country Road Westbury, Suite 309, New York.   At the conclusion of the sale, Defendant COHN delivered a Referee's deed to JR which purported to convey title to the subject premises.

109.    By Order in the Foreclosure Action dated March 27, 2013, defendant JUSTICE BUCARIA granted the plaintiffs' motion for a Writ of Assistance thereby giving the Nassau County Sheriff the authority to enter and **remove by Writ of Assistance only the Manor East** from the subject premises.  On April 15, 2013, the Manor East filed a notice of Appeal of that order with the Nassau County Clerk.

110.    On April 16, 2013, the Manor East, in order to avail itself of the automatic stay provisions contained in the New York CPLR 5519(a)(6), presented an Order to Show Cause  to JUSTICE  BUCARIA containing a Temporary Restraining Order of the eviction proceeding pending a hearing to determine the "value and the use occupancy".

111.    The court issued an Order wherein the eviction was stayed pending a hearing and

determination of the motion conditioned upon the posting of a temporary undertaking in the sum of $160,000 within five (5) days of the Order.

112.    The application to set an undertaking was made returnable on April 25, 2013, however, the court was not in session. That (improperly set) undertaking was for the purpose of staying an eviction from April 16, 2013, until further order of the court made after the April 25 return date of the application[1].

113.    The amount of the undertaking was set after the MANOR'S counsel refused to opine as to the value, when asked by JUSTICE BUCARIA'S Law Secretary.  The correct and proper procedure mandated by CPLR 5519 was that no amount be set until a formal hearing be scheduled. Despite this citation, the Court requested a value to be set from YACKOW, with no evidentiary basis, and in direct violation of statute.  The response to the Court's inquiry, off the record and without evidentiary basis, by YACKOW was "40,000 per month and that the *present owner*[2] of the premises had been in title for approximately four months".  The amount was obviously set upon Yakow's representation that the use and occupancy should be $40,000 per month and that the present owner of the premises had been in title for approximately four months.  The computation ignored the explicit language contained in CPLR 5519(a) (6) that states that "the undertaking is from the taking of the appeal"

114.    Predicated upon the improper response, the Court violated CPLR 5519, and set an undertaking of $160,000.00 pending hearing and determination of the application.  The Supreme

---

[1]The Court never did schedule a hearing on this date to determine an amount. The court deprived the defendants of its due process right to be heard on this matter and to present evidentiary documentation.

[2]Acknowledging the existence of Massapequa Manor Inc which plaintiff had failed to include in the foreclosure proceeding.

Court, by failing to apply statutory procedure, and upon surmise and conjecture ("what do you think?") by making a decision in a simple "discussion", and **without a hearing**, and in violation of the defendants' right to a hearing on the matter, unilaterally usurped defendants' DeJOHN, along with the remaining defendants, of its property rights, due process, and right to a hearing, which inevitably resulted in the loss of a $6-7 MILLION DOLLAR PLUS commercial premises.

115. After failing to be provided with a hearing as to the amount of the permanent undertaking pending appeal, as it was anticipated that a hearing would be conducted to make a proper determination of the value of the use and occupancy of the premises, to allow the defendants to properly proceed, inquiry was made. Originally, when the April 16th Order was signed, the Court's Law Secretary, approached Mr. Popkin, counsel for the Plaintiffs herein, and admonished him for allegedly failing to provide plaintiffs with access to the subject premises for valuation purposes. Additionally, counsel received an e-mail communication from the defendants advising them that their expert would be there to appraise the property.

116. On April 24, 2013, in anticipation of the alleged evidentiary hearing, that never did occur, depriving the plaintiffs of their due process rights, plaintiffs herein made the subject premises available to the appraiser.

117. May 9, 2013, was the return date of the plaintiffs' order to show cause, to vacate the stay predicated upon 201 's failure to post a bond in the amount of $160,000 as a condition of obtaining the temporary stay.

118. On that date and time, the plaintiffs counsel demanded that the application be heard by the JUSTICE BUCARIA permitted counsel to enter his chambers, after the clerk collected the motion and opposition papers, and the parties entered chambers. Defendants demanded that a stenographer be present. The request was **denied** as the Judge took umbrage to

-22-

the request, and summarily dismissed counsel.

119.    In a fit of pique, JUSTICE  BUCARIA immediately, after the attorneys left his chambers, dictated an Order vacating the stay, denying 201  an opportunity to be heard on the issue of a stay on the issue of value of the bond to be posted

120.    The arbitrary imposition of the required $160, 000.00 surety bond within five (5) days of the date of the Order without any consideration as to whether such a bond can be realistically obtained in such a short period of time, and failing to provide any form of basis whatsoever for the computation other than surmise and conjecture, and failing to permit the defendants to provide oral testimony from its experts and from its witnesses, was irrational, lacked basis in law and fact,  and in violation of the State and Federal Constitution.

121.    201 made application to the Appellate Division, Second  Department, where the Appellate Division, Second Department rendered a determination dated May 24, 2013, that denied the defendants (plaintiffs herein)  motion to stay enforcement of the writ of assistance and remit the matter to Supreme Court Nassau County to determine the value of use and occupancy. The Appellate Division denied the motion which again, denied the defendants  (plaintiffs herein) their right and entitlement to a hearing, and deprived them of their Constitutional due process rights under the Fourteenth Amendment.  The Court has taken their property away from them without due process of law and in direct defiance of the equal protection afforded to all citizens of this country.

122.    On April 25, 2013, the Court was not convened and no notice was provided by the Court of any other scheduled or adjourned  date. Obviously, the Court had set out to deprive the defendants (plaintiffs herein) of a hearing.

123.    The Appellate Division, Second Department also deprived the defendants

(plaintiffs herein) of their right to a hearing on the matter, and denied the defendants (plaintiffs herein) leave of court to appeal the decisions of the lower court.

124.     Oddly enough, in furtherance of the untoward speed with which the COUNTY, the SHERIFF OF THE COUNTY OF NASSAU, ELIZABETH CONSOLO, SPOSATO, MANGANO, and others deliberately and in furtherance of the conspiracy and plan, acted with great haste to issue a notice to vacate the premises on May 30, 2013, within 72 hours. The usual time for an eviction within the COUNTY OF NASSAU has been approximately six (6) months of a backlog. Yet, these individuals, with whatever financial gain they had, and with whatever means that they sought, over the past years, acted together to ensure that this particular eviction was undertaken so quickly that everyone, including improper parties were evicted, despite the fact that they were told as such, in writing ahead of time and during the time of the eviction.

125.     Counsel for the plaintiffs even went to the Appellate Division on June 13, 2013, in a further attempt to stop the illegal actions of the COUNTY, at the alleged direction of LOCONSOLO, SPOSATO, MANGANO and most astonishingly YACKOW.  When informing the SHERIFFS that they were acting illegally, plaintiffs agents and attorneys were told that they should call YACKOW as he had told them to proceed the night before and that morning.

126.     Defendant Associate Justice AUSTIN, who improperly denied the vacatur of the stay, refused to stop the SHERIFF from acting amuck, in violation of the automatic stay of 28 USC 1446 , in violation of the very notice to vacate and writ of assistance that specified that only the 'MANOR EAST OF MASSAPEQUA' was to be removed.

127.     JUSTICE AUSTIN, the justice that sat on a lower court proceeding and  improperly acted at the Appellate level, who was later discovered to either be a close friend of COHN, never should have signed the order.

-24-

128.    To add insult to injury, before  3:00 pm, on June 13, 2013, JACKIE DYBER, one

of plaintiff's agents, received a call from the movers who stated that defendant YACKOW, had

telephoned them, stating that the case was over in the Appellate Division, that JUDGE AUSTIN

had refused to sign the stay.  That was the amusing part, since the Clerk had not yet reviewed the

papers as of yet with counsel for the applicant. Apparently, the decision was to block the stay

had been pre-determined prior to MRS LOPRESTI arriving at the Appellate Division. The

defendants' conspiracy had come full circle. Plaintiffs were of Italian descent and their attorney

was of Italian descent and because of this ethnicity, Mrs. LoPresti now received four to five

threats to get off of the case.

129.    Oddly enough, the Appellate Division Clerk only conferenced the case at 3:30 or

thereafter with counsel as the papers were only intaked at about 3:00 or thereafter. Yet, the

decision was made ahead of time TO tank the stay which furthered the demise of the plaintiffs

and furthered the unlawful plot.

130.    The defendant COHN had represented the Justices just the week prior to against

the Solicitor General's Office, wherein COHN  argued on behalf of the Justices being entitled to

a pay increase. The defendant appears before each of these Justices in Nassau County Supreme

Court, receives Receiverships and Referee appointments from these Justices that he represented

and continues to represent each and every Supreme Court Justice in this pay raise issue, thereby

deriving a substantial income from this arrangement.

131.    Defendant COHN was the attorney that the Federal Court determined should not

preside as a referee in the underlying matter and was duly removed. Thereafter, COHN was

never re-appointed by the State court to act as Referee and therefore, there was no jurisdiction to

sell and transfer the SUBJECT PREMISES at issue.

-25-

## THE UNLAWFUL EXECUTION OF THE WRIT OF ASSISTANCE

132. The lawful landlord and owner as well as the tenants of the premises have been improperly removed from the premises. 201, as the rightful landlord of the subject premises, as well as INC, the tenant formerly in possession, have leases to operate at the subject premises. Yet, the SHERIFF OF THE COUNTY OF NASSAU, at the alleged direction of EDWARD MANGANO, NASSAU COUNTY EXECUTIVE, and LOCONSOLO and YACKOW, on June 13, 2013, refused to read the language of the Writ of Assistance and wrongfully removed and evicted two of the tenants. Each of the deputy sheriffs, deliberately acted in a manner in which they intentionally abridged and violated the plaintiffs' constitutional rights.

133. The plaintiffs have operated the business at the SUBJECT PREMISES as a family business, for the purposes of a family catering hall, as the Manor East. At the present time, there are approximately $700,000.00 in events booked that have been cancelled due to the actions of the defendants, especially YACKOW, and the Sheriff.

134. The illegal execution of the writ of assistance caused the plaintiffs to be the subject of an unwarranted investigation and because they are of Italian descent; are represented by an Italian attorney, plaintiffs employ 75 people, a substantial if not all of these 75 individuals have lost their means of employment.

135. Prior to the illegal removal INC, the tenant that was legally in occupation thereof, the defendants and each of them involved in this unlawful and criminal enterprise, including but not limited to, YACKOW, admitted that he has worked in conjunction with the COUNTY and colluded therewith.

136. Prior to that date, 201 obtained various temporary restraining orders within the context of an Article 78 proceeding as the NASSAU COUNTY SHERIFF and YACKOW

refused to honor the statutory stay imposed by 28 USC 1446(d).  Further, Justice Bianco stated

on the record during oral argument that the procedure left to follow was an Article 78

proceeding.

137.    Upon arrival at the Appellate Division as the lower court vacated the stay

obtained in the Article 78 (illegally by a non-party), the Appellate Division stated that they did

not care about the directives of the Federal Court or what the Federal Court had stated.

138.    Even more bizarre was the fact that the defendant  YACKOW had improperly

quoted 28 USC 1446 ( c ).  Plaintiffs did not rely upon that section.

139.    As such, a yet unheard of additional proceeding had to be filed. The plaintiffs

as Petitioners therein, due to the failure of defendants, ELIZABETH LOCONSOLO, who stated

that she was acting on behalf of EDWARD MANGANO, THE COUNTY , SPOSATO, and in

assistance with defendant, YACKOW, insisted that there was no stay of the notice to vacate,

despite the fact that Judge Wexler had a removal proceeding before him where all state

proceedings are stayed, including actions of the sheriff.

140.    Furthermore, JUSTICE BRANDVEEN, on three hours notice, granted a NON-

PARTY , the defendant herein,YACKOW, summary vacatur of the restraining order staying the

illegal actions of the Sheriff.   This was illegally obtained as follows: an Article 78 proceeding

was commenced and on June 10, 2013, and the  defendants petitioned the court to obtain an

order :  (1) prohibiting the Respondents, MICHAEL J. SPOSATO, THE NASSAU COUNTY

SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF, EDWARD MANGANO,

THE NASSAU COUNTY EXECUTIVE, and THE COUNTY OF NASSAU, each of them, from

executing the Notice to Vacate dated May 30, 2013, issued by the State Supreme Court as the

State Supreme Court as well as all other orders of the State Court; (2) prohibiting the

Respondents from requiring the Petitioners to vacate the premises located at 201 Jerusalem Avenue Massapequa, New York, until a final disposition on the merits is reached in the pending federal matter; (3) compelling the Respondents to act in accordance with federal law of removal as their ultimate liability will be borne by the tax payers as they act with willful indifference to the law and under the color of law; (4) temporarily and permanently enjoining the Respondents from enforcing the notice to vacate and other orders as they lack jurisdiction to do so (Exhibit "A"); (5) costs, disbursements and reasonable attorneys fees to the Petitioners; and (6) granting such other relief as this Court deems just and proper.

141.    The State properly court granted defendant, 201, and other parties, temporary restraining orders staying the SHERIFF OF THE COUNTY OF NASSAU along with the COUNTY OF NASSAU and the municipal entities from acting with respect to the Notice to Vacate as the matter had been removed to Federal Court. However, defendant, YACKOW, on behalf of the investors, acting as a "non-party" proposed intervenor, upon 3 hours notice, made application to the court the next day to vacate the restraining orders preventing the sheriffs from acting on the notice to vacate.

142.    The State Supreme Court improperly acted and granted a non-party the relief of a party. Again, the State court allowed affirmative relief to be afforded to a party where there lacked any jurisdiction to do so. Property was taken away from a 79 year old United States Veteran by the NASSAU COUNTY SHERIFF, at the direction of LIZ LOCONSOLO, ESQ., COUNSEL FOR THE COUNTY EXECUTIVE and NASSAU COUNTY SHERIFF, where there was no jurisdiction to so act.

143.    That there are no other remedies available to the plaintiff, in this matter to stop the defendants from continuing to knowingly violating the plaintiffs' constitutional rights of

due process guaranteed by both the Federal and State Constitutions. Despite the fact that the action was removed to the Federal Court, the NASSAU COUNTY SHERIFF'S OFFICE actively defied Federal statutory law and proceeded with the notice to vacate the Respondents from the premises at issue despite the fact that the Order is incorrect and illegal and in direct violation of the automatic statutory stay imposed by 28 USC 1446 (d)[3]. (Defendant YACKOW in his papers to defendant JUSTICE BRANDVEEN, cites to 1446( c ). The letter sent to the Respondents cites to 1446( d ). These are two separate and distinct sections.

144. Defendant, YACKOW, lacked standing as a non-Party movant to obtain any form of temporary relief, as his application for relief should not have been entertained by the Court. Therefore, the court lacked jurisdiction over the non-party to vacate the stays imposed. This maneuver was part and parcel of the continuing conduct occurring in this case and others.

145. Defendant, YACKOW failed to provide sufficient notice of the application. Three hours is insufficient notice to an adversary where a stay is applied for, especially when the applicant is not a party to the proceeding. (22 NYCRR 202.7(f)).

146. Defendant, YACKOW, misinformed the court, by citing the incorrect removal provision as stated above.

147. Defendant, YACKOW, obtained the ultimate relief that he sought, the lifting and striking of the stay, which is impermissible on the filing of the order to show cause, especially by a non-party, which was permitted by the State Supreme Court and the Appellate Division Justice AUSTIN, in direct contravention of established Second Department caselaw. There was no

---

[3]Conveniently, Yackow cites to the incorrect section of 28 USC 1446. Petitioners did not cite subsection ( c ) as misrepresented at par. 18. And, if there is no automatic stay, that is exactly why we are before this Court. Justice Bianco stated that we should proceed by Article 78.

annexation of any pleading whatsoever and the granting of any exparte relief is prohibited to a non-party.

148.    Defendant, YACKOW, failed to inform the court that Judge Bianco informed Mrs. LoPresti that the next procedure was to go to either Justice Wexler and/or an Article 78 proceeding. This had never been required prior to this proceeding, and, in fact, a similar action in Brooklyn, had stayed the Sheriff from acting.

149.    Defendant, YACKOW, admitted to collusion between the SHERIFF and YACKOW at pars. 4, 18, 21 of the YACKOW affirmation that he had submitted to the court yet despite this documentation, ultimate relief was granted to a non-party.

150.    Plaintiffs had previously established entitlement to a preliminary injunction in this matter as it had established (1) irreparable damage (all property is unique and therefore, the loss of the property constitutes irreparable damage); (2) likelihood of success on the merits (the referee was never re-appointed by the court to conduct the sale and as such the sale is void; the parties have engaged in mortgage fraud to the detriment of the investors and the Respondents;); and the equities tip in favor of the movant (the Manor East has been a catering hall for 50+ years. The plaintiffs did further establish that there were approximately $700,000.00 in events booked which would be cancelled if the Sheriff would be allowed to execute the illegal notice to vacate. Also, and of paramount importance, the defendants had failed to sue the necessary and proper party at issue -MASSAPEQUA MANOR INC , despite being told this over and over again).

151.    The tenant in possession, had not been notified of any Sheriff's activity nor have been served with any eviction notice on these premises.

152.    The wrong tenant had been evicted from the premises and harmed by the NASSAU

COUNTY EXECUTIVE'S directives as well as the NASSAU COUNTY SHERIFF. This has

resulted in direct and substantial harm to the public. While at the premises, each of the individual

deputy sheriffs, along with the head Sheriff assigned to the matter, were specifically told that

they were illegally removing the wrong tenant as well as the landlord in possession. They

informed refused to stop removing the tenant and the landlord, 201, stating that they did not care,

that "WE DO NOT READ"..."WE FOLLOW DIRECTIONS"...

153.     That the municipal defendants, with the non-municipal defendants, including

YACKOW, engaged in a planned campaign of harassment designed to ultimately result in the

loss of the commercial property at issue, to the detriment of the plaintiffs.

154.     This cavalier attitude of the MUNICIPAL defendants establishes a pattern of

behavior that deprives the plaintiffs of their due process rights and subject the citizenry to

untoward and improper evictions.

155.     Prior to COHN being appointed Referee, GARY MELIUS, was appointed Receiver

and then was removed.

## THE IMPROPRIETIES OF THE VARIOUS ATTORNEYS

156.     That prior to the unfolding of the horrific events above, the plaintiff, through

DEJOHN, retained various attorneys to assist in resolving the underlying matter.

157.     The defendant, LESTER is the owner of a law firm operating at 600 Old Country

Road, Garden City, New York 11530. LESTER, was retained by the plaintiffs to represent the

plaintiffs interests and to file a petition in bankruptcy on behalf of the corporation, to allow it to

fight the foreclosure proceeding.

158.     LESTER was also hired with the express purpose of preserving the contractual rights

of his designated entities under the June 2011 stipulations and agreements between JAX and

CSH to which DeJOHN and his entities were third party beneficiaries.

159.     To induce DeJOHN to retain LESTER, defendant LESTER represented to DeJOHN that he knew and was well acquainted with YACKOW and that he would be able to "work things out" with him.  Despite that representation, it was discovered that LESTER, like the other parties, worked together and behind his back to his detriment to transfer and steal the SUBJECT PREMISES at issue.

160.     The plaintiffs soon discovered that LESTER'S partner was simultaneously representing an adversary involved in the same case pending against the plaintiff, wherein secrets and confidences that were believed to have been sacred and sacrosanct, were transmitted and revealed to LESTER'S partner and ultimately the plaintiff's adversary.

161.     The Plaintiffs  also hired defendant,  FORCHELLI to safeguard its interest in the subject premises. The defendant law firm  also guaranteed that it would represent the plaintiff in a fair and accurate manner, to the best of its ability, to protect its interest in the SUBJECT PREMISES and to ensure that the interests of the property would be protected such that it would be safe from any mortgage scams.

162.     That an issue arose with missing escrow funds that were to be held by the mortgage company.   A favorable settlement agreement was arranged and worked out by the plaintiff and the attorneys for the mortgage holder.

163.     When the settlement was discovered by FORCHELLI, the firm destroyed the settlement agreement, harming its own client, the plaintiff herein, to the extreme detriment of 201.  Thereafter, it engaged on a planned campaign to undermine the progress of the plaintiff in resolving the mortgage funding issue.  The plaintiff had not been delinquent on its account yet the holder of the mortgage note had acted improperly and had caused funds to be suddenly misplaced.

164.     The plaintiffs  later discovered that FORCHELLI had been double-dealing plaintiffs the entire time, behind its back, scheming to sell and re-convey the SUBJECT PREMISES to another bidder, without

-32-

the knowledge or consent of the plaintiff, all to the detriment of the plaintiff, and solely for the gain of the defendant, FORCHELLI.

165.    That during the course of the many several actions, defendant, FOX , in a proceeding before WARSHAWSKY, was involved with the unnecessary and repeated harassment of DeJOHN, the shareholder of 201.

166.    This consisted of, among other things, the defendants stealing the plaintiffs automobile and/or the automobile of the plaintiff that contained funds in excess of $400,000. The automobile was eventually recovered without the funds available as the funds were missing therefrom.

167.    The law firm of FOX improperly caused DE JOHN'S automobile to be taken and illegally driven over state lines, as stolen property in contravention of the applicable statutes of the UCC.

168.    That during the course of the proceedings FOX contacted WARSHAWSKY via his personal cellular telephone regarding the pending court action.  This call was placed from New York to a foreign country.

169.    During the course of the court proceedings, before WARSHAWSKY,  WARSHAWSKY, improperly refused to allow the debt to be paid in full and instead, stated on the open record that that amount (payment in full) "was not enough"...... The defendant, WARSHAWSKY, for some unknown reason, and in furtherance of what has been transpiring in the SUPREME COURT OF THE COUNTY OF NASSAU; THE COUNTY OF NASSAU; THE APPELLATE DIVISION; THE SHERIFF'S OFFICE; THE COUNTY EXECUTIVE'S OFFICE, THE COUNTY ATTORNEY'S OFFICE, acted improperly and with a vengeance toward the plaintiff, making JOHN DeJOHN, an elderly man, of 79 years of age, a United States Veteran, break down on the stand, and now, eventually lose his place of business, all part and parcel of a joint conspiratorial effort.

170.    That, the plaintiffs had retained the law offices of counsel to seek redress due to their loss of now

hundreds of thousands of dollars that DeJOHN placed in escrow in the accounts of Dustin Dente, Esq., who was eventually disbarred.

171. That the fund established to redress innocent victims who have had their monies stolen by their former attorneys through stealing their escrow funds, failed to reimburse the plaintiff for the funds taken by plaintiff's former counsel, Dente.

172. To date, approximately and at least $300,000.00+ has been missing and due and owing to plaintiffs from this counsel.

173. Despite plaintiff's repeated contact with the QUEENS DISTRICT ATTORNEY, who promised that the individual would be arrested, the QUEENS DISTRICT ATTORNEY failed to act and allowed the plaintiff to become victimized by another counsel.

174. That the QUEENS DISTRICT ATTORNEY, although bestowed with the defense of prosecutorial discretion, in choosing whom to prosecute, was more than lax in failing to even remotely perform the task before it.

175. That the allowance of anyone to steal $300,000 from an elderly man, no less a United States Veteran, is deplorable in and of itself.

**THE FAILURE OF THE VARIOUS AGENCIES TO ACT**

176. Prior to the debacle occurring above, plaintiff, DE JOHN, as owner and shareholder of 201, and BIVONA, on behalf of INC, on several occasions did repeatedly contact the various municipal agencies and sought assistance. The e-mails that he received and documentation confirmed that the conspiracy was true; the plan to rob the plaintiffs of THE SUBJECT PREMISES from underneath them would be consummated shortly. The life savings of the plaintiffs, along with the landmark that had been established, would be lost to the greed and avarice of the defendants.

177. That, on several occasions, and over the past, plaintiff, with and without the assistance of

counsel, contacted the QUEENS COUNTY DISTRICT ATTORNEY, the OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY, CHARLES ROBUNDO, RICHARD SMYTHE, OLGA NOVOSAD, and MICHAEL RYAN, regarding the illegal and unlawful activities as above-stated.

178.    Defendant, YACKOW and the defendant investors had engaged on a plan of attrition, to deplete the plaintiffs of their monies, to the point where they would pay attorneys approximately $400,000.00 in legal fees, to defend against the above-listed actions mentioned in the aforesaid paragraphs.

179.    That despite the fact that plaintiff, DeJOHN, telephoned ROBUNDO, regarding what had been transpiring between the court proceedings and the defendants' plans to steal the plaintiff's catering hall, all the telephone calls went unanswered.

180.    The defendants conspired to steal the business from plaintiff, DeJOHN, a 79 year old man, shut the operation as a catering hall down, creating the appearance to the public that the plaintiffs were horrible and dishonest individuals and businesses and that they had robbed and defrauded the public. All the while, YACKOW and the co-defendants, had engaged in such horrific behavior all to their own improper gain, with the assistance of the municipal defendants.

181.    The NASSAU COUNTY DISTRICT ATTORNEY, KATHLEEN RICE, despite being repeatedly called over and over again, failed and refused to act and hid and either discarded and/or destroyed documents while stating that an investigation was underway when nothing was deliberately undertaken. Then, to skirt the blame, attempted to justify their inaction upon finding liability against an innocent victim, only to find out that DeJOHN was the victim and covered by the FBI.

182.    That the defendant, THE NASSAU COUNTY POLICE DEPARTMENT, on the date and time of the illegal eviction by the SHERIFF'S DEPARTMENT, refused to act and stop the SHERIFF and THE COUNTY OF NASSAU, along with the individual deputy sheriffs

from committing a crime. THE NASSAU COUNTY POLICE DEPARTMENT was shown and the CHIEF OF POLICE was told that the wrong tenant was being evicted.

183.     Nonetheless, THE NASSAU COUNTY POLICE DEPARTMENT, in concert with the other co-defendants, acted to deprive the plaintiffs of their civil rights.

184.     All these defendants, especially the municipal defendants, acted as though the Constitution of the State of New York and the United States had no longer existed.

185.     The NASSAU COUNTY POLICE DEPARTMENT refused to act and protect the plaintiff from the unlawful behavior and actions of the NASSAU COUNTY SHERIFF which was unlawfully evicting the tenants that were not listed on the Writ of Assistance. Instead, it allowed a crime to be committed before it and watched it being committed, to the detriment of the plaintiff. This was part of the continued campaign of harassment engaged in toward the plaintiffs.

186.     That the unlawful eviction would be conducted during the time when (1) JUSTICE  BUCARIA was on vacation; (2) ROBUNDO  and the NASSAU COUNTY POLICE DEPARTMENT were directed not to act by KATHLEEN RICE, LIZ LOCONSOLO and MARSHALL TRAGER,  (3) the eviction was expedited for defendant YACKOW.

187.     The plaintiffs as Italian Americans, along with their Italian American attorney, have become a targeted group because of their ethnicity, being of Italian-American decent, and referred to openly and on the record by the Judiciary as "made men".

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

## (CONSPIRACY TO BREACH CONTRACT)

188.    Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though "187" of the Amended Complaint with the same force and effect as if same has been set forth at length herein.

189.    On August 31, 2009, JAX VENTURES, LLC, ("JAX") and CIENA CAPITAL FUNDING, LLC ("CIENA"), entered into a Loan Sale Agreement wherein JAX purchased the certain mortgage dated September 27, 2006 conveyed by 201 Jerusalem Avenue Massapequa LLC ("201 Jerusalem"), to Madison Realty Capital, LP ("MADISON").

190.    That on or about, June 23, 2011, the Plaintiffs entered into a contract (hereinafter "CONTRACT and/or AGREEMENT, with the Defendants, JAX, BIBBO, ETC., and THE INVESTORS.  The Agreement, provided that among other things, that the defendants would purchase the real property and Assets, of the Plaintiffs, in exchange for which would receive payment in the amount of SEVEN HUNDRED FIFTY THOUSAND ($750,000.00).

191.    As part of this Agreement and as more fully said forth above the Plaintiffs were to liquidate part of their inventory, on or before, July 13 2011, advertise the closing of their catering business, sign a consent stipulation, etc.

192.    In consideration, therefor, the Defendants were to tender a check, in the amount of $750,000.00 to the Plaintiffs. as and for this sale.

193.    During the course of the negotiations, the CONTRACT was modified to include various terms . YACKOW undertook to draft the terms of the Agreements.

194.    Plaintiffs complied with each and every term of the Agreement, however, when it came time to receive payment, payment was never tendered.

195.    JAX and plaintiffs had previously thereto, entered into an Agreement, such that, plaintiffs, as Sellers entered into an ("Agreement"), wherein defendants as purchasers, would purchase, among other things,   the real estate and certain assets that included the real property located at 201 Jerusalem Avenue Massapequa, New York. Section 52, Block 125, Lots 88, 89, 90, 98, 97, 95, 94, 93.

196.    In consideration for the sale of the Assets, the defendants, YACKOW and the Financial Investors or ("Buyers"), agreed to make certain payments to the plaintiffs, subject to certain expressed in the agreement.

197.    The conditions were very clear, the  most important being time of the essence to obtain an  assignment by December 31, 2010. The purchase price was 4.6 million dollars, to be allocated as follows: 2.8 million dollars to JAX VENTURES and 1.6 million dollars to Manor East. STEVEN HAFFNER ESQ., counsel for PAUL BIBBO was introduced to FORCHELLI CURTO'S employee GARY KUSHNER on December 14th, 2010 for their initial conference. In essence, they had 16 days to prepare a document that YACKOW, refused to sign, despite the fact that he had stated he could prepare in 24 hours. BIBBO needed the closing to take place by the end of the calendar year to reap the rewards of a 1031 and other tax benefits. No papers were drawn by YACKOW.  This later resulted in a case in Queens County, NY entitled CSH VENTURES vs JAX VENTURES LLC.

198.    The plaintiffs complied with all of the terms of the Agreement, and held the Auction, liquidating all of the inventory inside Manor East. When it came time for the defendant to tender payment to the plaintiffs, the defendants failed to meet their end of the Agreement.

-38-

199.    At all relevant times, defendants failed to comply with the terms and breached the contract to the detriment of plaintiffs.

200.    At all relevant times, defendants, FORCHELLI CURTO, ROY J. LESTER, ESQ., STEVEN COHN, SPOSATO, LOCONSOLO, JAY YACKOW ESQ., STEVEN HAFFNER, and PAUL BIBBO, joined together to sabotage and conspire against the plaintiffs, to prevent the sale of the premises at issue.

201.    At all relevant times , defendants knew and were aware of the Agreement, including the purchasers obligation to tender the check to the plaintiffs. Not withstanding their knowledge of the plaintiffs rights under the contract and Agreement, defendants agreed and conspired with purchasers to breach the Agreement and aided and abetted and conspired with the purchasers to defraud Plaintiffs of monies paid Plaintiffs under the Agreement and the real property and assets included within the sale, including but not limited to various pieces of the property in the possession, custody and/or control of the defendants.

202.    The defendants, FORCHELLI took special advantage of their attorney client relationship, and requested that a check in the amount of $10,000.00 be tendered to Mr. Kushner. Annexed hereto, made a part hereof, and labeled Exhibit "B", is s copy of the check. In furtherance of the contract, defendant YACKOW, acting individually and on behalf of the defendants, and each of them demanded an additional check of $25,000.00. YACKOW requested that this amount ensured that the defendant "financial investors" would consummate the transaction.

203.    In furtherance of the contract, YACKOW sent various e-mails over the internet, engaged in various mailing through the United States Post Office and sent various documentation, fraudulently inducing the Plaintiffs to enter into the Agreement.

-39-

204.    In furtherance of this conspiracy, the defendants agreed with the purchasers and assisted them in withholding all funds, reneged on the transaction, drove the Plaintiffs business into the ground as all contracts were pending and winding down as a sale of all items and contents had been had on July 13th, 2011.

205.    As a direct and proximate result of the defendants actions, plaintiffs have been and continue to be deprived of their property and have lost their business.

206.    Plaintiffs have performed all of the terms, conditions, and covenants to be preformed on their part under and pursuant to Agreement.

207.    Defendants, and each of them agreed and conspired between and among themselves and with purchasers to breach the Agreement by, and among other things, failing and refusing to consummate the transaction.

208.    As a direct and proximate result of defendants conspiracy to breach the contract, plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial, but not less than TWENTY MILLION ($20,000,000.00) DOLLARS, according to proof at trial.

209.    The defendants conspired with each other to interfere with Plaintiffs rights. Defendants and each of them, in doing the acts alleged in this Amended Complaint, acted in conscious disregard of Plaintiffs' rights in and to the real property, assets located within the subject premises, with intent to deprive Plaintiffs of their rights and interests in such realm property and assets, and in order to enrich or benefit themselves and/or related or affiliated parties at the expense of Plaintiffs. In doing the acts alleged in this Complaint, defendants, and each of them further acted with oppression, fraud and malice, so as to entitle Plaintiffs to exemplary and punitive damages in an amount to be determined at trial.

## <u>SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS</u>

### (CONVERSION OF ASSETS)

210.    Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" through "209" of the Amended Complaint with the same force and effect as if the same has been set fourth at length herein.

211.    At all relevant times, defendants, and each of them knew and were aware that Plaintiffs owned and had the right to possess and exercise exclusive use, dominion and control over the assets. These assets included, but were not limited to (1) plaintiffs personal property; (2) all non personal items considered not to be fixtures located within the interior of the subject premises; (3) fish tank and fish; (4) accounts receivable ; (5) chairs, desks, couches, tables, pianos, etc; (6) and improvements made therein, all too numerous to list herein.

212.    Defendants, and each of them wrongfully converted these assets and/or agreed and conspired in the wrongful conversion of such assets including but not limited to the following: (A) unlawfully exercising or continuing to exercise possession, custody and control over such assets instead of delivering or providing for the sale; (b) actively encouraging and substantially assisting other defendants unlawfully exercising or continuing to exercise possession, custody and control over such assets; and ( C ) conspiring with the other defendants with the intent and purpose of unlawfully exercising or continuing to exercise possession, custody and control over such assets.

213.    As a direct and proximate result of defendants conversion, and/or aiding and abetting conversion and/or conspiracy to commit conversion, Plaintiffs have suffered and continue to suffer damages in an amount not less than TWENTY MILLION ($20,000,000.00) DOLLARS, according to proof at trial.

214.    Defendants and each of them, in doing the acts alleged in the amended complaint, acted in conscious disregard for plaintiffs rights in and to the Assets,  with intent to deprive Plaintiffs of their rights and interests in such Assets,and in order to enrich or benefit themselves and/or related or affiliated parties at the expense of the Plaintiffs. In doing the acts with oppression, fraud, malice, so as to entitle Plaintiffs to exemplary and punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (TRESPASS TO CHATTELS)

215.    Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" through "214" of the  Amended Complaint with the same force and effect as if the same has been set fourth at length herein.

216.    At all relevant times, Plaintiffs owned and had the right to process and exercise exclusive dominion and control over the Assets.

217.    At all relevant times, Defendants and each of them, knew and were aware that Plaintiffs owned and had the right to possess and exercise exclusive dominion and control over the Assets and that none of the Defendants or Purchasers had the right to exercise possession; custody and control over the Assets.

218.    Defendants and each of them wrongfully trespassed upon certain Assets and/or aided and abetted the wrongful trespass of such Assets, and/or agreed and conspired in the wrongful trespass of such Assets, including, but not limited to the following: (a) unlawfully exercising or continuing to exercise possession, custody and control over such Assets instead of delivering or providing the delivery of such Assets to Plaintiffs; (b)  .actively encouraging and substantially assisting other Defendants and/or Purchasers unlawfully exercising or continuing to

exercise possession, custody and control over such Assets; ( c ) conspiring with other Defendants and/or Purchasers with intent and purpose of unlawfully exercising or continuing to exercise possession, custody and control over such Assets instead of delivering or providing for the delivery of such Assets to Plaintiffs..

219.　As a direct and proximate result of Defendants trespass and/or aiding and abetting trespass and/or conspiracy to commit trespass, the plaintiffs have suffered and continue to suffer damages in an amount not less than TWENTY MILLION ($20,000,000,00) DOLLARS, according to proof of trial.

220.　Defendants, and each of them in doing the acts alleged in this Amended Complaint, acted in conscious disregard of Plaintiffs rights in and to the Assets with intent to deprive Plaintiffs of their rights and interest in such Assets and in order to enrich or benefit themselves and/or related or affiliated parties at the expense of Plaintiffs.  In doing the acts alleged in this Amended Complaint, the defendants, and each of them, further acted with oppression, fraud and malice, so as to entitle the plaintiffs to exemplary and punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (FRAUD)

221.　Plaintiffs repeat each and every allegation set forth within the above paragraphs designated in "1" through "220" of the Amended Complaint, with the same force and effect as if the same has been set fourth at length herein.

222.　At the closing and prior to the time to exchange the check the Buyers and Defendants, falsely represented to Plaintiffs that they would provide a check for payment; that they would fund the balance of $3.250 MILLION DOLLARS, as the Manor East took a $1

-43-

MILLION DOLLAR loss when the December, 31st 2010 deadline came and went; further fraudulently induced Plaintiffs into executing a consent judgment predicated upon a stipulation allowing Plaintiffs to regain control of the Manor East, when in truth and fact, defendants never had any intentions to honor the Stipulation and made every effort to thwart Plaintiffs ability to do so.

223.    Defendants knew at the time they made the alleged representations, that they were false, and made such representations under false pretenses, with intent to induce Plaintiffs to deliver the payment of monies to Defendants for the Assets and to steal the MANOR EAST.

224.    Plaintiffs reasonably relied upon Defendants representations in delivering payment of the check, for the Assets. Had Plaintiffs known of the true facts, regarding Defendants representations, Plaintiffs would not have provided for the signing of the Contract, the execution of the Consent Judgment, the sale of various items, etc.

225.    Defendants, and each of them,  knew that the Purchasers, had no right to the property or Assets, provided by Plaintiffs without full delivery of the check and payment, and, nonetheless, intentionally and actively encouraged and substantially assisted Defendants in obtaining payment of such monies without receiving any payment.

226.    Defendants, and each of them, knew that the purchasers, had no right whatsoever to the property at issue and the assets provided by the plaintiffs under the Agreement without tender of the check and nonetheless intentionally and wrongfully conspired with each other and purchasers to rob the plaintiffs of their property and personal and commercial assets and chattel.

227.    As a direct and proximate result of Defendants aiding and abetting and/or conspiring to defraud, Plaintiffs as alleged within the Amended Complaint, Plaintiffs have

suffered and continue to suffer damages in an amount not let than TWENTY MILLION ($20,000,000.00) DOLLARS, according to proof at trial.

228.     Defendants, and each of them, in doing the acts alleged in the Amended Complaint, acted in conscious disregard of Plaintiffs rights, in and to the real property, personal and commercial Assets, with intent to deprive Plaintiffs of their rights and interest, in and to the Assets, and in order to enrich or benefit themselves, and/or related or affiliated parties, at the expense of Plaintiffs. In doing the acts alleged within the Amended Complaint, Defendants, and each of them further acted with oppression, fraud and malice, so as to entitle the Plaintiffs to exemplary and punitive damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANTS

### (BREACH OF CONTRACT)

229.     Plaintiffs repeat each and every allegation set forth within the above paragraphs designated in "1" through "228" of the Amended Complaint, with the same force and effect as if the same has been set fourth at length herein.

230.     That on or about, June 23, 2011, the Plaintiffs entered into a contract (hereinafter "CONTRACT and/or AGREEMENT, with the Defendants, JAX, BIBBO, ETC., and THE INVESTORS.  The Agreement, provided that among other things, that the defendants would purchase the real property and Assets, of the Plaintiffs, in exchange for which would receive payment in the amount of SEVEN HUNDRED FIFTY THOUSAND ($750,000.00).

231.     As part of this Agreement and as more fully said forth above the Plaintiffs were to liquidate part of their inventory, on or before, July 13 2011, advertise the closing of their catering business, sign a consent stipulation, etc.

232.     In consideration, therefor, the Defendants were to tender a check, in the amount of

-45-

$750,000.00 to the Plaintiffs. as and for this sale.

233. During the course of the negotiations, the CONTRACT was modified to include various terms. YACKOW undertook to draft the terms of the Agreements.

234. Plaintiffs complied with each and every term of the Agreement, however, when it came time to receive payment, payment was never tendered.

235. The Defendants, and each of them, breached the Agreement by failing to tender the check.

236. As a result of the breach on contract, the Plaintiffs have been damaged for a sum to be determined at trial, but in no event is it believed to be less than TWENTY MILLION ($20,000,000.00) DOLLARS.

## A SIXTH CAUSE OF ACTION AGAINST ALLTHE DEFENDANTS

### (SCHEME TO DEFRAUD AND TO STEAL)
### FRCP 8(A) ; USCA SEC 1962 ( C ) and (d)
### 18 USCA SEC 1964 ( c ) )

237. Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though "236" of the Amended Complaint with the same force and effect as if same has been set forth at length herein.

238. Without the knowledge or consent of the plaintiffs, the defendants agreed, combined and conspired among themselves and with others unknown to plaintiffs to devise, intend to devise and participate in, and did devise, intend to devise and participate in- a scheme and artifice to defraud and to steal, and for obtaining property and money by means of false and fraudulent pretenses, representations, and theft, and to conceal the thefts by false and fraudulent pretenses, representations, false declarations, obstructions of justice, and perjury, all as fully

-46-

described in the following paragraphs.

239.    It was part of the scheme to defraud and to steal the plaintiff's automobile, real property, monies, and other assets, as a continuing scheme, that started in or about the time of the  FOX and ALLEGIANT matter before  WARSHAWSKY, continuing through to the 201 debacle, the real estate being located at 201 Jerusalem Avenue Massapequa NY, along with the restaurant and catering establishment, through the operations and control of the defendants, FORCHELLI, along with LESTER, as the plaintiffs alleged counsel, using their confidential relationship, and the position of ostensible trust and responsibility they occupied with regard to the affairs of that business which placed them in a unique position to cancel the contract, steal the plaintiffs assets, while working together with all the municipal defendants, with whom they had the available connections as well as with the investors and especially YACKOW, and the banking and mortgage institutions, CIENA, JAX, etc.

240.    It was further a part of the scheme to defraud and to steal that the defendants referenced made various interstate transactions, telephone calls, used the internet for sending various e-mail communications, along with the United States Mail, to engage in their scheme to defraud and steal the plaintiffs property.

241.    At one point, ALLEGIANT, at the behest of FOX, used interstate commerce to transport a stolen vehicle (plaintiff-JOHN'S vehicle that bore no relationship to the proceeding), across state lines; COHN was set to sell the property although he had been removed by Judge Grossman; the Investors would wire the funds to transfer and sell the property; the defendant attorneys would structure the deal behind the backs of the plaintiffs and the various judges mentioned would designate the plaintiffs as criminals (being of Italian origin), and refuse to accept ONE HUNDRED AND FIFTY CENTS ON A DOLLAR to satisfy a debt;

thereby furthering the victimization of the plaintiffs.

242.    That ALLEGIANT and FOX did illegally remove and take JOHN'S

property worth approximately FOUR HUNDRED THOUSAND ($400,000.00) DOLLARS from

the vehicle.  The Seventh Precinct of Nassau County NY acknowledged that the County of

Nassau had committed a crime.

243.    The defendants, FOX and ALLEGIANT acknowledged that they had wrongfully

taken and stolen plaintiffs property.  (Annexed hereto as Exhibit "C" is a copy of the admission).

244.    FOX and ALLEGIANT continued with the conspiracy, in conjunction

with FORCHELLI, and the banking defendants (CIENA CAPILAL LLC; BUSINESS LOAN

EXPRESS, LLC; BLX CAPITAL; CIENA CAPITAL FUNDING (NEW YORK)LLC; CIENA

CAPITAL FUNDING, LLC) (hereinafter "BANKING DEFENDANTS"), taking checks, and

other funds and monies by mail from the plaintiffs and mailing same to the plaintiffs.  The

BANKING DEFENDANTS, realizing that monies had been stolen from escrow, offered a

settlement, and faxed and used internet and other means of US communication, to defraud the

plaintiffs.  Plaintiffs were told to bring monies to them to resolve their mortgage debt and when

the plaintiffs appeared  the "banking defendants" reneged on the compromise, causing the

plaintiffs to spiral into the planned demise.

245.    It was a further part of the scheme to defraud and to steal that COHN, (removed

by the court), FORCHELLI, along with LESTER, as plaintiffs counsel, acting together with the

various municipal defendants,, MICHAEL J. SPOSATO, THE NASSAU COUNTY SHERIFF,

ELIZABETH LOCONSOLO, ESQ., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY

AS COUNSEL FOR THE NASSAU COUNTY EXECUTIVE, (the "MUNICIPAL

DEFENDANTS") together with COUNTY EXECUTIVE MANGANO would utilize their

-48-

trained professional expertise as trained officials to facilitate the stealing of the commercial
property located at 201 Jerusalem Avenue.

246.    It was further part of the scheme to defraud and to steal that YACKOW,
and his involvement as the attorney, investor, and managing member of JAX VENTURES, with
knowledge and consent of the following, that compromise of JAX VENTURES LLC., namely,
PROCTOR WONG, STEVEN PRINCE, LUDIDA PR INC., HOWARD GTZ, DR. ALAN
GREENFIELD, SAMUEL MELNICK, ROSEMARY CRUZ, CARLOS RIVIERA
GONZALES, ROSEANN CAPANEGRO, BENJAMIN KWOK, STEVEN DAVIS and LUIS
MOYET, (the "FINANCIAL INVESTORS")  thwarted every effort to bring this situation to an
amicable end, and to work in conjunction with the above-listed defendants.

247.    It was a further part of the scheme to defraud and to steal the property that a
medical center, worth approximately ELEVEN MILLION DOLLARS, would be constructed at
the subject premises, after the property was stolen from the plaintiffs, through the joint efforts of
the defendants, and each and every one of them playing their part, through to the execution of
the illegal Writ of Assistance, that would be improperly executed where a non-party would
obtain relief from the court before Judge Brandveen, utilizing back-door politics and influence
as, upon information and belief, is being presently investigated by the FBI.

248.    It was a further part of the scheme to defraud and to steal the property and assets
of the plaintiffs that the defendants, FORCHELLI, YACKOW, and the other defendants,
including those mentioned in the preceding paragraphs,  LESTER, THE FINANCIAL
INVESTORS, THE MUNICIPAL DEFENDANTS, all acting as willful joint participants, further
acted such that the non-party defendant of the Article 78 Proceeding, JAY L. YACKOW,  would
obtain relief from Judge Brandveen in Nassau County Supreme Court, with regard to a stay, that

would have prevented MICHAEL SPOSATO, THE NASSAU COUNTY SHERIFF as well as the other defendants from executing the Writ of Assistance in an illegal manner.  That the Writ of Assistance was illegally used to remove the wrong parties from the subject premises.

249.    It was further part of the scheme to defraud and to steal that the defendants would and did make false statements regarding their activities in order to conceal the scheme and the activities of the participants therein.  The NASSAU COUNTY DISTRICT ATTORNEYS OFFICE had assured the plaintiffs that they had taken action yet nothing was done, and the MANOR was lost.

250.    It was further part of the scheme to defraud and to steal that the defendants agent would consult with other participants in the unlawful scheme from law enforcement authorities and municipal defendants, through the making of false statements, failing to proceed with investigations, failing to proceed with matters that were determined to be "half criminal and half civil", all to conceal the scheme and the activities of the participants therein.

251.    It was further part of the conspiracy to defraud and to steal that the defendants would not only illegally transport plaintiffs property over state lines, without authority to do so, but, would also make inter state telephone calls and calls to other countries (Judge Warshawsky) FOX'S ATTORNEYS having a direct line to this judge, in furtherance of the conspiracy and plan.

252.    It was further a part of the scheme to defraud and to steal that the defendants, SPOSATO, LOCONSOLO, and the other municipal defendants together with MANGANO, by virtue of the official positions that they occupied, learned the perfect time to schedule the writ of assistance,  such that there would not be sufficient time to obtain a stay and when one would be obtained, JUSTICE BRANDVEEN would act in their favor on behalf of a non-party. Thereafter,

the COUNTY OFFICIALS, and MUNICIPAL DEFENDANTS, made certain that the Justices

available and subsequent Appellate Court Judge, would act accordingly as the Appellate Court

Judge knew that the application would be presented before it actually was.

253.    From 2009 through to June 13, 2013, the defendants, in furtherance of the

scheme to steal and defraud, and in furtherance of the conspiracy alleged above, the defendants

as well as the municipal defendants, wilfully and maliciously converted to their own use, the

defendants real and personal property. The defendants placed interstate and intercountry

telephone calls from New York to New Jersey and from New York to other countries to

consummate their plan.

254.    The knowing interstate transportation of stolen property from New York to New

Jersey was undertaken by FOX and ALLEGIANT, in conjunction with the other defendants,

with the specific knowledge, acquiescence, and consent of the defendants.

255.    In furtherance of the conspiracy, the defendants wilfully and maliciously

converted to their own use the plaintiffs assets; the automobile; FOUR HUNDRED

THOUSAND ($400,000.00) for the monies stolen from the vehicle, along with other assets

within the vehicle. These had been transmitted by the defendants to their agent, either for

distribution to others or to return to the defendants. De JOHN never did receive the return of the

FOUR HUNDRED THOUSAND ($400,000.00) DOLLARS and other assets in the vehicle.

256.    The above items and vehicle were transported in interstate commerce. The

knowing interstate transportation of stolen goods - namely a automobile, along with other items,

was undertaken by the defendants with the specific knowledge, acquiescence, and consent of the

defendants.

257.    The plaintiffs made complaints to the NASSAU COUNTY DISTRICT

ATTORNEYS OFFICE, which commenced an investigation to determine the nature and full extent of the existence of a case.  CHARLES ROBUNDO, ("ROBUNDO"), defendant herein, conducted the investigation and found and determined that it was 50% criminal and 50% civil and reassured the plaintiffs that a case was to be started.

258.    In or about 2013, the defendant, ROBUNDO, acting on behalf of the NASSAU COUNTY DISTRICT ATTORNEYS OFFICE, in furtherance of the scheme to defraud and to steal, pursuant to the defendants' guidance, consultation, and importuning, and obstruction of justice, either discarded the file and made certain that no action was undertaken with regard to the stolen vehicle, the stolen property, the stolen real estate, and all the incidents complained of, and made certain that 201 became the target of investigation, and let 201 fall prey to being victimized.

259.    No action in favor of the plaintiffs by the NASSAU COUNTY DISTRICT ATTORNEYS  OFFICE despite the statements made by the FEDERAL BUREAU OF INVESTIGATION that 201 and the plaintiffs were prove to be victims.  The NASSAU COUNTY DISTRICT ATTORNEYS OFFICE refused to this date to take any action whatsoever with regard to the stolen vehicle; the illegal execution of the writ of assistance; the incidents reported to them; and the false and misleading statements made by  their own investigator, CHARLES ROBUNDO.

260.    CHARLES ROBUNDO made misleading and false statements and obstructed justice by failing to advise of the depth of the defendants illegal actions and in informing the plaintiffs that the matter was proceeding when nothing was being done.

261.    This is a civil action brought by the plaintiffs under RICO.

262.    The plaintiffs are "persons" under the meaning of 18 USC Sec. 1961 (3) and

1964 ( C ).

263.    Various defendants, FORCHELLI, BANKING DEFENDANTS, JAX

VENTURES  ALLEGIANT, FOX, COUNTY OF NASSAU, and FINANCIAL INVESTORS,

are defined (defendant listed within the paragraphs above, (244, 247, 248, 249, 250, 251, 256),

and within the instant cause of action, are considered to be an "enterprise" within the meaning of

18 USC Sec. 1961 (4) and 1962 ( c ).

264.    Each defendant listed in paragraphs above, was an owner of, was employed by,

or was associated with, an enterprise, that is, COHN, ALLEGIANT, FOX, JAX VENTURES,

and the COUNTY OF NASSAU, all  engaged in activities that affected interstate commerce,

within the meaning of 18 USC Sec. 1962 ( c ) .

265.    Each of the defendants listed above conducted, participated,, directly or

indirectly, in the conduct of the enterprise's affairs, and conspired so to do, through a pattern of

racketeering activity within the meaning of 18 USC Sec. 1961(5), that is:

(A)     Wire fraud in violation of 18 USC Sec 1341.

(B)      Transportation in interstate commerce of goods stolen or taken by fraud in violation

         of 18 USC Sec. 2314

( C )   Obstruction of Justice in violation of 18 USC Sec. 1503.

266.    The plaintiffs were injured by the defendants in their business and property in an

undetermined amount by reason of violations of 18 USC Sec. 1962 ( C ) and ( d ) committed by

the defendants within the meaning of 18 USC Sec. 1964 ( C ).

**A SEVENTH CAUSE OF ACTION AGAINST ALL THE DEFENDANTS**

**(VIOLATION OF AND CONSPIRACY TO VIOLATE PLAINTIFFS**

**CIVIL RIGHTS-42 USCA SEC 1983)**

267.     Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though "266" of the Amended Complaint with the same force and effect as if same has been set forth at length herein.

COUNT I

268.     Defendant, SPOSATO, was employed as the SHERIFF OF THE COUNTY OF NASSAU, and as such was the chief law enforcement officer of the COUNTY OF NASSAU, solely responsible for the formation of policy, and direction of deputies, and staff of the County of Nassau Sheriff's Department acting under the color of State Law.

269.     At all times material, the defendant, COUNTY OF NASSAU, was and still is a municipal corporation and political subdivision of the State of New York.

270.     At all times material, the defendants, DEPUTY, LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU; DEPUTY LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU; DEPUTY  MASTROFIERRI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, and DEPUTY SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU; were responsible for executing the Writs of Assistance.

271.     At all times material, LOCONSOLO, was responsible as counsel for the NASSAU COUNTY EXECUTIVE and as Counsel for the SHERIFFS DEPARTMENT AND SHERIFF, for directing the SHERIFF and Deputy Sheriffs as and for their legal duties and proceedings, and appeared on behalf of EDWARD MANGANO, COUNTY EXECUTIVE OF

-54-

THE COUNTY OF NASSAU.

272.    COHN now served and acted as a referee to sell the property at issue, was

removed by Judge Grossman in Federal Court and Justice JUSTICE  BUCARIA allowed him to

sell the property regardless of the order. COHEN acted under the color of state law and in

conjunction with the co-defendant non-state actors.

273.    Beginning in or about the year 2012 and continuing through to 2013, and on and

of through to the present date, the defendants,  and each of them, all conspired with the non-

municipal defendants, including but not limited to  FORCHELLI, BANKING DEFENDANTS,

JAX VENTURES  ALLEGIANT, FOX,  and FINANCIAL INVESTORS, for the purposes of

controlling or attempting to control 201 property  and to sell it to third parties to construct and/or

use it as a medical facility.

274.    The defendants, DEPUTY, LINN, INDIVIDUALLY AND AS DEPUTY

SHERIFF OF THE COUNTY OF NASSAU; DEPUTY LINN, INDIVIDUALLY AND AS

DEPUTY SHERIFF OF THE COUNTY OF NASSAU; DEPUTY  MASTROFIERRI,

INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, and

DEPUTY SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF

NASSAU; SPOSATO, were at all times material , employed by the Office of the Sheriff of the

County of Nassau of the County of Nassau, State of New York, and were acting individually and

in concert and conspiracy, under the color or authority of the laws of the State of New York.

275.    The defendants, INVESTORS, as well as all the other non-municipal individual

defendants, including but not limited to:  FORCHELLI, BANKING DEFENDANTS, JAX

VENTURES  ALLEGIANT, FOX, LESTER, and all those set forth in the caption of the

complaint,  were at times herein material to certain of the allegations set forth in this Verified

Amended Complaint, wilful participants and acting in concert with and under the direction of the

Office of the Sheriff of the County of Nassau, the Office of the Nassau County District Attorney,

and other municipal officials, whose names and identities are not presently disclosed to the

plaintiffs, other than LOCONSOLO, THE COUNTY EXECUTIVE OF THE COUNTY OF

NASSAU, THE COUNTY ATTORNEY OF THE COUNTY OF NASSAU, and were therefore

acting under the color of authority of the laws of the State of New York as well as acting

individually.

276.    The other defendants, COHN, and YACKOW, also acted under the color of law

as well as acting individually, as wilful participants.

277.    All acted in conjunction with the defendants, municipalities as their agents, under

the color of law.

278.    The "color of law" requirement does not limit Section 1983 liability to defendants

whose actions are authorized by law, and the Supreme court's decisions have made equally clear

that when particular conduct was under "color of law", fact cannot be settled by the fact that the

defendants herein are or are not officers of the State. Adickes v. S.H. Hress & Co., 398 US 144

(1970).

279.    The municipal defendants, including but not limited to, ELIZABETH

LOCONSOLO; MICHAEL SPOSATO; SHERIFF OF THE COUNTY OF NASSAU; THE

INDIVIDUAL SHERIFFS;    THE COUNTY ATTORNEY OF THE COUNTY OF NASSAU;

THE NASSAU COUNTY DISTRICT ATTORNEY; THE COUNTY OF NASSAU; AND

OTHERS, including EDWARD MANGANO, as THE COUNTY EXECUTIVE OF THE

COUNTY OF NASSAU were all active and wilfull participants in the deprivation of the

plaintiffs civil rights, by depriving them of their (1) procedural due process rights; (2)

substantive due process rights; (3) real property due to unlawful execution of a writ of assistance aimed at them due to their ethnic origin.

280.     LOCONSOLO had been previously with the QUEENS DISTRICT ATTORNEY'S OFFICE and had a history of violating defendants civil rights.

281.     The municipal defendant, the COUNTY OF NASSAU,, ELIZABETH LOCONSOLO, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS COUNSEL TO THE SHERIFF OF THE COUNTY OF NASSAU AND TO EDWARD MANGANO , MICHAEL SPOSATO, SHERIFF, together with  EDWARD MANGANO, AS COUNTY EXECUTIVE all met and discussed the demise and taking of the real property located at 201 Jerusalem Avenue Massapequa, New York, and based it primarily upon the fact that the plaintiffs, De JOHN aBIVONA were not entitled to the same rights as those afforded to non-Italian Americans.

282.     Simply put, because of their Italian origin, which was set forth on the record before Justice Warshawsky, they were of ill repute, gangsters, and they had no rights. STILLWATERS, 201 and now TOSCANOS, a restaurant managed by BIVONA, were closed down, because "ITALIANS ARE GANGSTERS". MARVIN LEVINE from the NEW YORK STATE LIQUOR AUTHORITY reiterated these same policies and statements against Italian Americans.

283.     From that point on, their property was stolen, their businesses were driven to the ground, automobiles taken, they were denied substantive and procedural due process, their property taken, all because of their national origin as Italian.

284.     Upon information and belief,  after several letters and telephone calls made to LOCONSOLO, advising and warning her that the Writ of Assistance was not correct and that

the COUNTY OF NASSAU should cease and desist in its planned execution, the COUNTY OF

NASSAU, joining in with the aforesaid defendants, deliberately aimed to deprive the plaintiffs

of their due process rights, their property, and to drive the Italian American business out of

business, to divide the pie up for themselves, to be split with YACKOW, and the INVESTORS,

along with COHN, and the other defendants.

285.    The scheme was further uncovered as after the Writ of Assistance was improperly

executed and the plaintiffs illegally thrown out of possession, the former county attorney

attempted to settle the matter.  Shortly thereafter, he was fired and th cover-up began.

286.    The illegal actions of the municipal defendants, in conjunction with the

civilian non-municipal defendants, were the result of an established municipal policy and

custom.

287.    The defendants exhibited a deliberate indifference to a forseeable constitutional

violation, to wit; the defendants were, for example, fully aware that they lacked the power and

authority to remove the plaintiff-tenant  proceeded to do so to the contrary; proceeded in

violation of Federal Law; proceeded while conspiring with the investors where openly admitting

in court documents submitted to Justice Brandveen; Deputy Sheriffs refusing to adhere to the

clear explicit verbiage set forth within the Writ of Assistance; and the County of Nassau shutting

down the second Italian-American owned/associated Eatery within Massapeua, New York.

288.    This standard of invidious discrimination is for the jury to determine, as to

whether the deprivation of rights at issue was caused by a long-standing practice or custom

which constitutes the "standard operating procedure" of the local government entity.

289.    The defendants, as wilful joint participants, colluded and conspired with the

state actors to steal the plaintiffs real estate, business, property, and attempted to sell it to a

higher bidder, to offer it for sale as a medical facility. As part of the scheme, this was further accomplished by plaintiff's former counsel, assisting the municipal defendants, appearing at the property and/or sending his agents, assessing its value to have it sold underneath of plaintiffs, in violation of all code of ethics and in breach of their fiduciary duty.

290. The plaintiffs have lost their catering facility, their life savings, and means of employment, all due to the unconstitutional standard operating procedure of the municipal defendants acting in conjunction win the state court defendants who are wilful actors.

291. Plaintiffs have retained the undersigned law firm to represent them and are entitled to compensation pursuant to 42 USC 1983.

292. Plaintiffs were deprived of due process of law in violation of the rights, privileges, and immunities guaranteed plaintiffs under the Fourteenth Amendment of the Constitution and are therefore entitled to reimbursement pursuant to the provisions of 42 USCA Sec 1983.

## COUNT II

293. Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though "292" of the Amended Complaint with the same force and effect as if same has been set forth at length herein.

294. Defendants, and each of them illegally, intentionally, and/or recklessly engaged in a pattern of invidious discrimination against the plaintiffs, disregarding their constitutional rights.

295. Through the implementation of the Harassment campaign, and/or other actions, practices, the COUNTY, THE NASSAU COUNTY DISTRICT ATTORNEY, SPOSATO, LOCONSOLO, THE SHERIFF, COHN, and the other municipal and governmental officials,

and employees, with the assistance of the non-municipal defendants, intentionally abridged ad

violated the plaintiff's constitutional rights to equal protection under the laws and due process,

as per the Fourteenth Amendment o the United States Constitution.

296.    KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY, CHARLES

ROBUNDO, MICHAEL RYAN,  MICHAEL J. SPOSATO, THE NASSAU COUNTY

SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF, EDWARD MANGANO,

THE NASSAU COUNTY EXECUTIVE, THE COUNTY OF NASSAU, ELIZABETH

LOCONSOLO, ESQ.,  INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS

COUNSEL TO THE NASSAU COUNTY SHERIFF AND THE NASSAU COUNTY

EXECUTIVE, DEPUTY  LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE

COUNTY OF NASSAU, DEPUTY  LINN, INDIVIDUALLY AND AS  DEPUTY SHERIFF

OF THE COUNTY OF NASSAU, DEPUTY MASTROFIERI, INDIVIDUALLY AND AS

DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY SCHULZ, INDIVIDUALLY

AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, THE  NASSAU COUNTY

POLICE DEPARTMENT, MARVIN LEVINE, THE NEW YORK STATE LIQUOR

AUTHORITY, THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,

STEPHEN JUSTICE  BUCARIA, JSC., IRA WARSHAWSKY, ANTONIO BRANDVEEN,

JSC., LEONARD B. AUSTIN, JOSEPH SALADINO (collectively referred to herein as the

"municipal defendants"), and each of them, with the assistance of the non-municipal defendants,

with YACKOW at the lead of the Investors, PROCTOR WONG, STEVEN PRINCE, LU DIDA

PR INC, HOWARD GETZ, DR. ALAN GREENFIELD, SAMUEL MELNICK, ROSEMARY

CRUZ, CARLOS RIVERA GONZALES, ROSEANN CAPANEGRO,BENJAMIN KWOK,

STEVEN DAVIS, LOUIS MOYET, (collectively referred to herein as the "INVESTORS"),

intentionally failed to enforce non-discretionary Federal and/or privileges and/or immunities

and/or decisions (formally or informally adopted )(Non-Discretionary Customs/Laws".

297.    The Harassment Campaign and/or other actions against the plaintiffs

implemented or executed policies, decisions and/or customs adopted (formally or informally) by

the municipalities to eventually deprive the plaintiff, De JOHN , of his catering hall, and to

destroy the plaintiff's business and operation of 201.

298.    That defendants actions were undertaken under the color of state law.

299.    The Municipal Defendants, especially the MICHAEL J. SPOSATO, THE

NASSAU COUNTY SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF,

EDWARD MANGANO, THE NASSAU COUNTY EXECUTIVE,  THE COUNTY OF

NASSAU, ELIZABETH LOCONSOLO, ESQ.,  INDIVIDUALLY AND IN HER OFFICIAL

CAPACITY AS COUNSEL TO THE NASSAU COUNTY SHERIFF AND THE NASSAU

COUNTY EXECUTIVE, OF THE COUNTY OF NASSAU, THE NASSAU COUNTY POLICE

DEPARTMENT, (hereinafter respectfully referred to as the "COUNTY DEFENDANTS"),

together with DEPUTY LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE

COUNTY OF NASSAU, DEPUTY LINN, INDIVIDUALLYAND AS DEPUTY SHERIFF OF

THE COUNTY OF NASSAU, DEPUTY MASTROFIERI, INDIVIDUALLY AND AS

DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY SCHULZ, INDIVIDUALLY

AND AS DEPUTY SHERIFF at the behest of YACKOW and the INVESTORS, treated

similarly situated property owners of non-Italian descent  in the COUNTY OF NASSAU

differently than the plaintiffs herein,  in that the COUNTY DEFENDANTS,   property owners

resulted from non-discretionary state action.

300.    There was no rational basis for the difference in treatment between the plaintiffs

and those similarly situated to them. Rather, defendants treated the plaintiffs differently than those similarly situated to them for reasons including, but not limited to, the following:

i. In furtherance of the scheme to deprive them of their property and in retaliation for the repeated requests for a hearing during the course of the proceedings in court, violated their due process rights;

ii. In retaliation for the complaints to the authorities regarding the illegalities in the court system, the illegal Scam; and/or to cover-up the Scam; and/or

iii. to protect the Defendants from liability for the scam that had been perpetrated from the beginning with JUSTICE WARSHAWSKY through to JUSTICE BUCARIA, through to JUSTICE AUSTIN,

iv. To cover up the illegalities of the improper issuance of the Writ of Assistance when defendant COHN had been removed by the Federal Court Judge as a referee, and JUSTICE BUCARIA had failed to re-appoint him, yet approved the sale and allowed COHN to conduct a sale without the jurisdiction to do so.

V. To cover up the Nassau County Sheriff's knowingly violation of the stay of the eviction imposed by Federal Law.

Vi. To harass Plaintiffs into ceasing and desisting from pursuing its rights and remedies.

Vii. To cover-up for the appointment of Gary Melius as the first receiver for the property at issue.

Viii. Because of the plaintiffs ethnicity as Italian Americans, originating from Sicily and other parts thereof, and their attorney being repeatedly threatened, due to her Italian ancestry, and the former attorneys Ancestry, BIVONA was screamed from the bench by JUSTICE WARSHAWSKY as

a "made man"; muttering under his breath other statements of ill repute about

ITALIAN AMERICANS, that they were nothing but "GANGSTERS", JOHN DE

JOHN being subjected to the same abuse and statements; GENEVIEVE LANE

LOPRESTI, ESQ., being threatened in Judge Wexler's courtroom and the Federal

Court house  (by state and municipal actors and their agents), and other places

because of the instant case with the NASSAU COUNTY DISTRICT ATTORNEY

refusing to act.

(Hereinafter "i" - Viii  are referred to collectively as the "Improper Reason").

301.    In carrying forth the Harassment Campaign against the Plaintiffs, the

MUNICIPAL DEFENDANTS, with the assistance of the non-municipal defendants, and at the

assistance of the non-municipal defendants, and at the insistence of YACKOW, and the

INVESTOR-Defendants, and the defendants on an individual basis, intentionally and for the

Improper Reason singled out plaintiffs for treatment unlike similarly  situated property  in the

COUNTY OF NASSAU by deviating from the clear standards set forth by Non-Discretionary

Customs/Laws, including, but not limited to the Harassment Campaign:

A. **Plaintiff, De JOHN, by attacking his corporation where he was the sole**
   **shareholder, and attacking a UNITED STATES VETERAN, by improperly**
   **acting on a Writ of Assistance and Order of the Court that specifically limited**
   **the eviction only to the following:**

   Motion by plaintiffs for a writ of assistance to the Nassau

   County Sheriff providing delivery of possession of the

   Subject premises to 201 JR Corp is **granted** to the extent

   below        ..................

Accordingly, plaintiff's motion for a writ of assistance directed to the Nassau

County Sheriff is granted to the extent that the sheriff may evict defendant

**Manor East of Massapequa, LLC** from the premises. (See Exhibit "D").

302.    Repeated requests were made to the defendants to cease and desist to no avail.

Upon information and belief, these actions by the MUNICIPAL defendants, were a departure

from the Non-Discretionary Customs/Laws established in the COUNTY and STATE OF NEW

YORK,  which limits eviction of persons and/or entities to those persons written on the

document.

303.    These other similarly situated MUNICIPAL property owners were not subjected

to this treatment and did not have to be put through this.  Others of non-Italian descent were not

called "Gangsters" and were not targeted in the same manner, and their attorneys were not

likewise threatened.

304.    There was no rational basis for the defendants differential treatment of plaintiffs..

Rather, Plaintiffs were treated differently due to the Improper Reason.

**B.  The MUNICIPAL DEFENDANTS acted with great haste and sped up and**

   **accelerated the eviction, where there was a 6 months waiting list for others**

   **similarly situated.**

**C.  The MUNICIPAL DEFENDANTS acted in conjunction with YACKOW and the**

   **other investor defendants .**

**D.  IRA WARSHAWSKY, JSC., requested triple the amount due and owing from**

   **the ITALIAN AMERICAN plaintiffs, despite the fact that**

   **the debt due to  ALLEGIANT and FOX did not approximate that amount.**

**E.  Plaintiff, BIVONA, and plaintiff,De JOHN, were ridiculed and BIVONA was**

-64-

called by JUSTICE  WARSHAWSKY a "made man".

**F.  Plaintiff, De JOHN was made to cry on the stand for no legitimate reason.**

**G.  The State of New York Department of Taxation sent officials into a catering hall, 201, armed with machine guns and live rounds of ammunition.  They did not back off and stand down until FORCHELLI, who had influence unknown to plaintiffs, telephoned the STATE, and they fled like pests.**

305.    As described above, Plaintiff was treated differently than those similarly situated. There  was no rational basis for treating Plaintiffs, De JOHN, to the demise of his corporate entity, differently than other similarly situated property owners.  Rather, Plaintiff was treated differently due to the Improper Reason.

306.    These actions were a departure from Non-Discretionary Customs/Laws, requiring that Citizens are entitled to due process of law and that they are entitled to defend themselves against evidence submitted against them.  The plaintiff, JOHN DE JOHN, lost his property, when he should not have been and was summarily dispossessed.

307.    The COUNTY OF NASSAU is liable for the conduct of its employees. KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY and CHARLES ROBUNDO, who all failed to act to prevent the scam that was being perpetrated upon the plaintiffs.

308.    The COUNTY has an applicable code for its employees to follow.

309.    The COUNTY has demonstrated a deliberate indifference to upholding COUNTY LAW . This is demonstrated by the fact that COUNTY employees have a history of violating law and applicable provisions in the course of exercising their duties herein, especially when executing warrants and writs of assistance,  and related duties with the resulting violation of the

Constitutional rights of property owners and others.  Thus, training and supervision was necessary.

310.     County of Nassau's failure to train COUNTY employees against violating their obligation under the COUNTY LAW rises to deliberate indifference to the Constitutional rights of citizens, including Plaintiff.  Based upon past history, COUNTY policy makes known to a moral certainty that COUNTY employees would encounter the opportunity to engage in self dealing in the course of their duties and related duties; there were and are strong incentives to engage in self dealing, i.e., money incentives, which encourage the employees to make the wrong choices.  Also, there is a history of the COUNTY decision makers mishandling the problem with self dealing in the COUNTY; and the wrong choice to engage in self dealing frequently causes the deprivation of a citizen's Constitutional rights, such as the violation of the Plaintiff's Equal Protection rights in the case at them.

311.     The COUNTY is also liable for the acts of its employees and others because it ratified said employees' illicit behavior.  Even though the COUNTY knew about such behavior, officials chose to ignore it until such behavior was published in the newspapers.  The COUNTY acquiesced in the Scam, the Cover-Up Story, and assisted YACKOW in taking the plaintiffs' property.

312.     Defendants, when faced with strong evidence against it, summarily dismissed it and buried its head ; when they failed to discipline the employees and actors for their role in the Scam, although the COUNTY had knowledge or constructive knowledge of the involvement.

313.     That the aforesaid actions, practices, customs and usages of the Defendants herein were intentional, willful, wanton, reckless and malicious, giving rise to punitive damages.

314.     The violation of Plaintiff's rights were accomplished under the color of law,

through LOCONSOLO'S position as well as that of the other COUNTY actors, including

SPOSATO, and through other COUNTY employees.

315.     That by reason of the Defendants' abridgment and violation of Plaintiff's

Constitutional rights, Plaintiffs have lost their property, and have incurred significant damage.

As such, the plaintiffs seek A monetary judgment in favor of Plaintiff and against said

Defendants in a sum to be determined at trial but in no event is it believed to be less than

TWENTY MILLION ($20,000,000.00 ) DOLLARS.


**AN  EIGHTH  CAUSE OF ACTION AGAINST ALL THE DEFENDANTS**
**(MORTGAGE FRAUD-CRIMINAL ENTERPRISE)**


316.     Plaintiffs repeat and reiterate each and every allegation set forth within the above

paragraphs designated as "1" though "315" of the Amended  Complaint with the same force and

effect as if same has been set forth at length herein.

317.     That the plaintiffs never did obtain funds from the alleged assignment and

sale of the property that was to transpire in or about 2011.

318.     At all times herein, the plaintiffs  were innocent victims of this  scheme, which

resulted in the premises being used as collateral for a mortgage on the property.

319.     That all the listed defendants are necessary parties to the instant action. The court

has acquired diversity jurisdiction over the various named foreign defendants, CIENA, CIENA

CAPITAL LLC, BUSINESS LOAN EXPRESS, LLC., BLX CAPITAL, LLC,  CIENA

CAPITAL FUNDING (NEW YORK) LLC, CIENA CAPITAL FUNDING, LLC, ALLEGIANT

PARTNERS LLC.

320.     That the defendants and each of them undertook a role in defrauding the plaintiffs

and the plaintiffs failed to obtain adequate consideration, if any, in the illegal transfer of the premises.  (Attached Exhibit "A").

321.    From the outset, the original mortgage at issue was undertaken by the plaintiffs wherein timely payments were made.  Plaintiffs at all times remained current in their payments and were not delinquent.  The proceeding commenced by the banking defendants , from its inception, was improper as the banking institutions lacked standing to commence the action and nonetheless the court allowed the improper proceeding to proceed due to the active discrimination against the plaintiffs as Italian Americans. (We, as Italian Americans are all "gangsters").

## THE CRIMINAL ENTERPRISE

322.    The  certain of the defendants  engaged in a criminal  enterprise (respectfully referred to as an "enterprise"), that was created and operated for the purpose of stealing money through mortgage fraud and related criminal conduct. The members of the criminal enterprise included  various lenders, its principals and employees, and a network of lawyers, appraisers, bank employees and other participants.

323.    At all times hereinafter mentioned,  upon information and belief, and at all relevant times herein, some of the defendants, acted  representing the sellers and buyers of the properties .

324.    The plaintiffs never received any proceeds of any transfer of the property at issue. Instead, plaintiffs lost their property due to the failure of the defendants to pay the plaintiffs what was due and owing, as the plaintiffs would transfer their property and/or sell or auction their catering hall operating equipment in anticipation of the sale, and be left with a vacant hall, waiting for a check to be tendered which would never come to fruition.  Instead, the SHERIFF

OF THE COUNTY OF NASSAU would arrive, with an illegally issued Writ of Assistance, that would result in the removal of the wrong tenant.

325.     That  contracts of sale signed and executed with regard to the instant matter were breached by the defendants.

326.     That the defendants, FORCHELLI, and the others, at the behest of YACKOW, concealed the  truth and nature of the transactions from his clients and distributed fraudulently obtained loan proceeds to defendants and others.

327.     That the defendants caused the damage and  all resulting damages were caused solely by reason  of the breach of contract of the defendants who have been unjustly enriched by their breach and fraudulent behavior.

328.     The promises and assurances given by the defendants to the plaintiffs were false when made, and were made by the defendants with the knowledge that the plaintiffs would rely same, and in relying upon same, the plaintiffs were set up by contract and conveyed title to the premises.

329.     The representations were in fact false when made, and were made by the defendants for the purpose of deceiving the plaintiffs and leading them to believe that there was a true  relationship between the parties, one of respect and of trust, whereas in fact, the defendants never intended to honor their agreement.

330.     Had the plaintiffs  known of the falsity of the representations made by the defendants to them,  never  to repay the monies due and owing, they  would not have relied upon same nor would they considered conveying title to the subject premises, nor would they had considered scheduling and advertising the sale to liquidate their assets to the point that they had. They had relied to their detriment upon YACKOW and their own attorneys.

331.     Prior to this contract, it had been discovered that FORCHELLI had double-dealed them in the mortgage escrow monies that were being held.

332.     By reason of the above, the plaintiffs are entitled to have the defendants declared to hold and possess his interest in the subject real property as a constructive trustee for the benefit of the plaintiffs, and to require the defendants as such  trustees, to convey the property to the plaintiffs.

333.     By reason of the above, the plaintiffs are entitled to have an accounting as to the income received by the defendants, and to have the defendants set forth copies of any and all leases or other instruments entered into by the defendants with tenants or others, as affecting the premises.

334.     The defendants acted jointly in this criminal enterprise and transported properties and monies across state lines.

335.     By reason of the foregoing, the plaintiffs request the following:        A monetary judgment in favor of Plaintiff and against said Defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00.

### A NINTH  CAUSE OF ACTION AGAINST ALL THE DEFENDANTS (WRONGFUL DISPOSSESSION, WRIT OF ASSISTANCE)

336.     Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though "335" of the Amended  Complaint with the same force and effect as if same has been set forth at length herein.

337.     That the plaintiffs have  operated 201 as a family business, for the purposes of a family catering hall, as 201. There were approximately $700,000.00 in events booked that have been cancelled due to the actions of the defendants, especially YACKOW, and

the Sheriff.  The plaintiffs employed 75 people who lost their jobs.

338.     Prior to the commencement of the instant action the plaintiffs were the landlords and owners of the subject premises.

339.     By virtue of a lease agreement the plaintiffs had all right and entitlement to remain at the subject premises for a period of thirty years which had not expired.

340.     The SHERIFF, at the direction of YACKOW and the investors, and other defendants, wrongfully removed the plaintiffs from use and possession of the property at issue (the subject premises), on or about June 13, 2013, without the legal right to do so. (Annexed hereto, made a part hereof and labeled Exhibit "A" is a copy of the description of the property along with the contract, loan and lease agreement;  "B" is a copy of the check; "C" is a copy of the admission and "D" is the Writ of Assistance).

341.     Defendant YACKOW improperly directed the COUNTY and SHERIFF, along with LOCONSOLO to wrongfully remove the plaintiffs from possession and use of the subject premises in direct defiance of the writ of assistance and the Order of Justice JUSTICE BUCARIA.

342.     That, the defendants have directly impeded and destroyed the possession and property interests of the plaintiffs.

343.     In addition thereto, during this time period, the defendants used a non-party status to illegally remove the plaintiffs from the property. As a result of the conduct alleged above,  the plaintiffs  have been, in effect, wrongfully ejected from the subject premises in violation of their ownership and lease and term as landlord and owner.

344.     That, the defendants unlawfully and improperly denied the plaintiffs  access, occupancy and use of the premises, and the defendants blatantly violated plaintiffs' rights to

continue to occupy the premises until the termination of its lease agreement.

345.   The municipal defendants were made aware of their improper actions before they acted, while they acted, and even the Nassau County Police Department refused to act to stop the Nassau County Sheriff from performing the illegal eviction.

346.   The defendants were shown the Liquor License on the wall of the subject premises, and other documentation, establishing that they were removing the wrong parties who were entitled to remain in possession of the premises for a period of thirty (30) years, monies remaining in escrow to cover the rent, and the Police Department legal department fully aware of the fact that the Writ was being executed improperly, but knew that LOCONSOLO, SPOSATO, and MANGANO, in conjunction with the non-municipal defendants, were engaged in a conspiracy to separate plaintiffs of their property.

347.   Despite this knowledge, the defendant Deputy Sheriffs, stated to the attorneys of the plaintiffs, to the plaintiffs and others, when they were repeated informed that they were removing the wrong parties, "WE DON'T READ"...and continued to illegally and unlawfully removed the wrong party from the subject premises, following the directives of JAY YACKOW, ESQ. , and LOCONSOLO, along with SPOSATO, as well as the COUNTY ATTORNEY.

348.   At no point in time before the plaintiffs were denied access to the subject premises and advised of the illegal removal were any of the plaintiffs ever served with proper notice or legal process or legally evicted from the premises, nor was the lease agreement of the plaintiffs ever cancelled by due process of law or the contract   properly cancelled and at no time did the plaintiffs abandon or surrender possession of the premises, assets or personal of the premises, assets or personal and commercial property and/or fixtures thereon to any of the scrupulous defendants.

349.     The leasehold interest of the plaintiff had not expired and despite the leasehold interest, which could not have been extinguished by the illegal Writ of Assistance, the Defendants and each of them, illegally entered upon the subject premises and without performing a legal eviction , dispossessed the rightful tenants of the property.  The plaintiffs rights as an owner of the subject premises as well as the plaintiffs right as a simultaneous tenant of the subject premises, have not been terminated by legal process.  The plaintiffs have not, at any time, abandoned the lease premises nor in any manner surrendered or terminated their leasehold rights to the premises.

350.     Since June 13, 2013, the defendants have illegally prevented the plaintiffs from using the premises pursuant to the terms of the lease agreement and in contravention to their rights of due process of law, and have deprived   the plaintiffs of their right to operate the premises as a catering facility and restaurant and to collect the $700,000.00 in operating fees for the booked events, for the one year and has similarly prevented plaintiffs from continuing to operated for the future years left of the thirty year lease, thereby depriving them of their profits and means of earning a livelihood, together with damages in an amount to be determined at trial, but no less than TWENTY MILLION ($20,000,000) DOLLARS, and the use of the fixtures and equipment owned by the plaintiffs and located on the premises.

## A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (VIOLATION OF AND CONSPIRACY TO VIOLATE PLAINTIFFS CIVIL RIGHTS-42 USCA SEC 1985)

351.     Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though "350" of the  Amended Complaint with the same force and effect as if same has been set forth at length herein.

352.    This action arises under the Civil Rights Act of 1871, (42 USC Sec. 1983, and 1985,) s later more fully appears, and the Fourteenth Amendment of the United States Constitution. This Court has jurisdiction under 28 USC Sections 1331 and 1343.

353.    The amount in controversy exceeds $75,000.00 exclusive of interests and costs.

354.    The Municipal Defendants, especially the MICHAEL J. SPOSATO, THE NASSAU COUNTY SHERIFF, THE OFFICE OF THE NASSAU COUNTY SHERIFF, EDWARD MANGANO, THE NASSAU COUNTY EXECUTIVE,  THE COUNTY OF NASSAU, ELIZABETH LOCONSOLO, ESQ.,  INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS COUNSEL TO THE NASSAU COUNTY SHERIFF AND THE NASSAU COUNTY EXECUTIVE, OF THE COUNTY OF NASSAU, THE NASSAU COUNTY POLICE DEPARTMENT, (hereinafter respectfully referred to as the "COUNTY DEFENDANTS"), together with DEPUTY LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY MASTROFIERI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF at the behest of YACKOW and the INVESTORS, treated similarly situated property owners of non-Italian descent  in the COUNTY OF NASSAU differently than the plaintiffs herein,  in that the COUNTY DEFENDANTS,   property owners resulted from non-discretionary state action.

355.    A claim was filed with the municipal defendants on or about July 2, 2013, and the claim has not been addressed by the municipality.

356.    At all times hereinafter mentioned and as reiterated above, the plaintiff, JOHN DE

JOHN, was and still is a citizen and resident of the State of New York, and of Italian American

decent, that owned and operated the restaurants and catering facilities that were closed down and

were driven out of business by the municipal defendants.

357.     At all times hereinafter mentioned and as reiterated above, the plaintiff, RICHARD

BIVONA, was and still is a citizen and resident of the State of New York, and of Italian

American decent, that managed, and operated the restaurants and catering facilities that were

closed down and were driven out of business by the municipal defendants, along with the

assistance of the other defendants.

358.     MASSAPEQUA MANOR, INC., was the tenant of the subject premises that operated

a catering hall at the subject premises, owned by Italian Americans.

359.     MICHAEL SPOSATO, The SHERIFF OF THE COUNTY OF NASSAU, was and

still is a law enforcement agency acting under the authority of the COUNTY.

360.     IRA WARSHAWSKY was a Supreme Court Justice presiding in the County of

Nassau, State of New York, over the case involving Allegiant.

361.     STEPHEN BUCARIA was and still is a Supreme Court Justice of the State of New

York, County of Nassau.

362.     Plaintiffs are informed, believe and allege that at all times mentioned the defendants,

and each of them, were the agents and employees of each of the remaining defendants and were

acting within the course, scope, and purpose of such agency and employment and conspired

among each other to commit unlawful acts, along with the non-municipal defendants, their

agents.

363.     Plaintiffs are informed, believe and allege that the defendants, MICHAEL

SPOSATO,   SHERIFF OF THE COUNTY OF NASSAU, DEPUTY LINN, INDIVIDUALLY

AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY LINN,

INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY

MASTROFIERI, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE COUNTY OF

NASSAU, DEPUTY SCHULZ, INDIVIDUALLY AND AS DEPUTY SHERIFF, are law

enforcement officers and employed as such with the defendant COUNTY OF NASSAU

COUNTY SHERIFF'S DEPARTMENT, and in doing all of the things mentioned, acted under

color of their authority, as such and under color of the statutes, regulations, customs and  usages

of the defendants, COUNTY OF NASSAU AND COUNTY OF NASSAU SHERIFF'S

DEPARTMENT , and COUNTY OF NASSAU, at the behest of LOCONSOLO and

MANGANO as well as SPOSATO.

364.    Plaintiffs are informed, believe and allege that in doing all of the things alleged,

defendants, and each of them, acted under color of statutes, regulations, customs and usages of

the County of Nassau and State of New York, and pursuant to the official policy of the

defendants, THE COUNTY OF NASSAU and the STATE OF NEW YORK, the NASSAU

COUNTY SHERIFF'S DEPARTMENT-MICHAEL SPOSATO as SHERIFF, EDWARD

MANGANO as COUNTY EXECUTIVE OF THE COUNTY OF NASSAU, and that the

defendants, and each of them, including BUCARIA, WARSHAWSKY , as well as the NEW

YORK STATE DEPARTMENT OF TAXATION AND THE NEW YORK STATE LIQUOR

AUTHORITY AND MARVIN LEVINE, and each of them, assisted, cooperated, coordinated

and acted in concert with each of the other defendants.

365.    On the morning of June 13, 2013, at approximately 10:00 am, the individual listed

deputy sheriffs, DEPUTY LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF THE

COUNTY OF NASSAU, DEPUTY LINN, INDIVIDUALLY AND AS DEPUTY SHERIFF OF

THE COUNTY OF NASSAU, DEPUTY MASTROFIERI, INDIVIDUALLY AND AS

DEPUTY SHERIFF OF THE COUNTY OF NASSAU, DEPUTY SCHULZ, INDIVIDUALLY

AND AS DEPUTY SHERIFF, while on duty in the County of Nassau, Massapequa, New York,

arrived at the Manor East premises, 201 Jerusalem Avenue Massapequa, New York and

improperly executed a writ of assistance to remove JOHN DE JOHN from the premises along

with his personal property, harassing him, because he of Italian origin, this being the message

from the New York State Liquor Authority, the County Defendants, the municipal defendants,

and the defendants.

366.    During the course of the illegal removal, the defendants and each of them,

conspired to and did in fact deprive plaintiffs of liberty as would shock the conscience, removing

all his items, stealing his business of long duration,

367.    During the course of the court proceedings, and in or about the year 2009, and

thereafter, and the lower court proceeding, JUSTICE WARSHAWSKY made JOHN DE JOHN

break down in tears, engaging in invidious discrimination, calculated to create ill will, making

offensive hateful remarks from the bench, allowing him to be badgered simply because he was

an ITALIAN AMERICAN.

368.    Because of the plaintiffs ethnicity as Italian Americans, originating from

Sicily and other parts thereof, and their attorney being repeatedly threatened, due to her Italian

ancestry, and the former attorneys Ancestry, BIVONA was screamed from the bench by

JUSTICE  WARSHAWSKY as a "made man" in or about 2011; muttering under his breath other

statements of ill repute about ITALIAN AMERICANS, that they were nothing but

"GANGSTERS", JOHN DE JOHN being subjected to the same abuse and statements;

GENEVIEVE LANE LOPRESTI, ESQ., being threatened in Judge Wexler's courtroom and the

Federal Court house (by state and municipal actors and their agents) in or about 2013, Central

Islip and other places because of the instant case with the NASSAU COUNTY DISTRICT

ATTORNEY refusing to act.

369.    On April 24, 2013, in anticipation of the alleged evidentiary hearing, that never

did occur, depriving the plaintiffs of their due process rights, plaintiffs herein made the subject

premises available to the appraiser.

370.    May 9, 2013, was the return date of the plaintiffs' order to show cause, to vacate

the stay predicated upon 201 's failure to post a bond in the amount of $160,000 as a condition of

obtaining the temporary stay.   On that date and time, the plaintiffs counsel demanded that the

application be heard. Counsel entered BUCARIA'S chambers, after the clerk collected the

motion and opposition papers.  Defendants demanded that a stenographer be present. The request

was **denied** as the Judge took umbrage to the request, and summarily dismissed counsel.

371.    In a fit of pique, BUCARIA immediately, after the attorneys left his

chambers, dictated an Order vacating the stay, denying 201 an opportunity to be heard on the

issue of a stay on the issue of value of the bond to be posted

372.    The arbitrary imposition of the required $160, 000.00 surety bond within five (5)

days of the date of the Order without any consideration as to whether such a bond can be

realistically obtained in such a short period of time, and failing to provide any form of basis

whatsoever for the computation other than surmise and conjecture, and failing to permit the

defendants to provide oral testimony from its experts and from its witnesses, was irrational,

lacked basis in law and fact,  and in violation of the State and Federal Constitution.

373.    201 made application to the Appellate Division, Second  Department, where the

Appellate Division, Second Department rendered a determination dated May 24, 2013, that

denied the defendants (plaintiffs herein)  motion to stay enforcement of the writ of assistance and

remit the matter to Supreme Court Nassau County to determine the value of use and occupancy.

The Appellate Division denied the motion which again, denied the defendants  (plaintiffs herein)

their right and entitlement to a hearing, and deprived them of their Constitutional due process

rights under the Fourteenth Amendment.  The Court has taken their property away from them

without due process of law and in direct defiance of the equal protection afforded to all citizens

of this country.

374.    On April 25, 2013, the Court was not convened and no notice was provided by the

Court of any other scheduled or adjourned  date. Obviously, the Court had set out to deprive the

defendants (plaintiffs herein) of a hearing.         The Appellate Division, Second Department also

deprived the defendants (plaintiffs herein)  of their right to a hearing on the matter, and denied

the defendants (plaintiffs herein) leave of court to appeal the decisions of the lower court.

375.    Oddly enough, in furtherance of the untoward speed with which the COUNTY, the

SHERIFF OF THE COUNTY OF NASSAU, ELIZABETH CONSOLO, SPOSATO,

MANGANO, and others deliberately and in furtherance of the conspiracy and plan, acted with

great haste to issue a notice to vacate the premises on May 30, 2013, within 72 hours. The usual

time for an eviction within the COUNTY OF NASSAU has been approximately six (6)  months

of a backlog. Yet, these individuals, with whatever financial gain they had, and with whatever means that they sought, over the past years, acted together to ensure that this particular eviction was undertaken so quickly that everyone, including improper parties were evicted, despite the fact that they were told as such, in writing ahead of time and during the time of the eviction.

376.    Counsel for the plaintiffs even went to the Appellate Division on June 13, 2013, in a further attempt to stop the illegal actions of the COUNTY, at the alleged direction of LOCONSOLO, SPOSATO, MANGANO and most astonishingly YACKOW.  When informing the SHERIFFS that they were acting illegally, plaintiffs agents and attorneys were told that they should call YACKOW as he had told them to proceed the night before and that morning.

377.    Defendant Associate Justice AUSTIN, who improperly denied the vacatur of the stay, refused to stop the SHERIFF from acting amuck, in violation of the automatic stay of 28 USC 1446 , in violation of the very notice to vacate and writ of assistance that specified that only the 'MANOR EAST OF MASSAPEQUA' was to be removed.

378.    The plaintiffs were deprived of their procedural and substantive due process rights.

379.    That  the actions of the defendants resulted in (1) the county municipal officials and private individual defendants reached an understanding to deprive the plaintiffs of their constitutional rights and (2) those individual defendants were wilful participants in the joint activity with the county municipal defendants and its agents acting in concert to produce the actual abridgment of the plaintiffs civil rights, deprivation of property, substantive procedural due process of the plaintiffs, which are federally secured rights.

-80-

380.     As a proximate result of the conduct of the defendants, and each of them, as seat forth the plaintiff, JOHN DE JOHN, suffered mental, physical, and emotional pain, and suffering resulting in his physical symptoms and illness becoming elevated; and was deprived of his   constitutional rights of due process of law, life, liberty and due process of law,  at the behest of YACKOW and the INVESTORS,

381.     During the course of these actions, each of the  defendants conspired to and did in fact deprive the plaintiffs of their rights guaranteed by the Fourteenth Amendment of the United States Constitution  all rights of the plaintiffs decedent

382.     The conduct of the defendants, and each of them, was wilful, wanton, malicious, and one with an evil motive and intent and a reckless disregard for the rights and safety of the plaintiffs and therefore warrants the imposition of exemplary and punitive damages in the sum of TWO HUNDRED THOUSAND DOLLARS as to each of the defendants, in addition to the sum of TWENTY MILLION DOLLARS.

## AN ELEVENTH CAUSE OF ACTION AGAINST ALL THE DEFENDANTS

### (INJUNCTION PREVENTING FURTHER HARM)

383     Plaintiffs repeat and reiterate each and every allegation set forth within the above paragraphs designated as "1" though " 382 " of the Amended  Complaint with the same force and effect as if same has been set forth at length herein

384.     The subject premises is unique in nature as all property is within New York. The defendants and each of them have caused irreparable harm and damage to the plaintiffs in

the unlawful taking of the property and scheme that they have engaged in.

385.    The defendants' acts in ejecting the plaintiffs from the subject property as described and set forth in the Schedule  "A", is in detriment of and in disregard of the plaintiffs' property rights and in disregard of plaintiffs' right to the quiet use and enjoyment of their property.

386.    The defendants' illegal ejectment from the plaintiffs' property and obstruction of their use to conduct a catering hall as well as their ability to function within the community in accordance with the contracts for the upcoming events, constitutes a deprivation of and significant interference with their right, and entitlement to the use of the subject premise.

387.    The defendants and each of them have acted deliberately and have refused to provide the right of entry to the plaintiffs. Charles Goldburg, Esq., JUSTICE BUCARIA'S law secretary, admitted that the writ of assistance was "very specific" and not directed toward the plaintiffs.

388.    Unless the injunctive relief requested herein is granted, the plaintiffs' business will be destroyed and each day the community suffers the loss of the catering hall which served the community for past 50 years. They will be compelled to sue the defendants and each of them repeatedly for the losses which they will most certainly and foreseably sustain.

389.    Plaintiffs have no adequate remedy at law and seek a preliminary and permanent injunction.

390.    Plaintiffs are  informed and believe that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

391.    Beginning in or about 2013, the defendants, THE COUNTY OF NASSAU,

SPOSATO, the SHERIFF OF THE COUNTY OF NASSAU, LOCONSOLO, and MANGANO

and each of them, wrongfully executed a Writ of Assistance that resulted in the wrongful

dispossession and removal of the plaintiffs from the subject premises.

392.    As a result, the defendants and each of them, in conjunction with the non-municipal

defendants, wrongfully and unlawfully, refused and still refused to refrain from their wrongful

conduct and refused to restore the plaintiffs to their rightful possession and tenancy of the

subject premises.

393.    The plaintiffs have demanded that defendants stop their wrongful conduct described

above. Defendants, and each of them, have refused and still refuse to refrain from their wrongful

conduct.

394.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of

this court, will cause great and irreparable injury to plaintiffs in that the plaintiffs have not been

returned to the ir rightful tenancy.

395.    Plaintiffs have  no adequate remedy at law for the injuries currently being

suffered in that it  will be impossible for plaintiffs to determine the precise amount of damage

which they  will suffer if defendants' conduct is not restrained and plaintiffs will be forced to

institute a multiplicity of suits to obtain adequate compensation for its injuries.

396.    As a result of the defendants' wrongful conduct, the plaintiffs have been damaged

in a sum to be determined by at trial. and as a result plaintiffs will be further damaged in like

-83-

manner so long as defendants' conduct continues. The full amount of such damage is not now known to plaintiffs, and plaintiffs will amend this complaint to state such amount when the same becomes known to  or on proof thereof.

397.    Notice of the plaintiffs' claim, setting forth the nature of the claim, a description of the time, place and manner in which the injuries were sustained by the plaintiffs and the name and post office address of the plaintiffs, and of their attorney, was presented to the defendants, on or about July 2, 2013.

398.    The notice(s) of plaintiffs' claims which continue to date were served within 90 days after this cause of action accrued and prior to the addition and amendment of the instant cause of action as against the instant municipal officials.

399.    This action is a continuing cause of action, and has been commenced within the time limit for the commencement of such an action that is one year after the cause of action accrued as it relates back to the date of the filing of the original complaint which is July 2, 2013.

400.    This court has granted plaintiffs leave of court to file the instant amended complaint.  This cause of action was not originally plead against the various municipal defendants because at the time the action was commenced, the notice of claim was just filed and the County Municipal officials had to be provided with the requisite statutory time period allotted for a 50-h hearing.  The plaintiffs also required immediate relief via pending order to show cause (as there were pending booked affairs that plaintiffs vociferously argued in State court to complete  and then in this Court to complete) that was never satisfied despite the fact

that the FEDERAL BUREAU OF INVESTIGATION has confirmed that the plaintiffs have been deemed to be "victims" of the defendants.

401.    More than thirty (30) days have elapsed since the claims were presented and the officer or body having power to adjust or pay the claims against the defendants have refused and failed to pay or adjust the claim.

402.    The defendants have waived a hearing in this matter, and the plaintiffs have complied with General Municipal Law and all other applicable rules and laws.

403.    By reason of the foregoing, the amount of the damages sustained by the plaintiffs as a result of the aforesaid exceeds the jurisdictional limits of all the lower courts which would otherwise have jurisdiction of this action.

WHEREFORE, based upon the foregoing, plaintiffs request judgment as follows:

**A.  ON THE FIRST CAUSE OF ACTION:**

A  monetary judgment in favor of Plaintiffs and against the defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive damages, and reasonable attorneys fees, costs and disbursements together with interest from the date of the accrual of the cause of action; and against the municipal .

**B.  ON THE SECOND CAUSE OF ACTION:**

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive damages, and reasonable attorneys fees, costs and disbursements together with interest from the

date of the accrual of the cause of action.

**C.  ON THE THIRD CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive damages, and reasonable attorneys fees, costs and disbursements together with interest from the date of the accrual of the cause of action.

**D.  ON THE FOURTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive damages, and reasonable attorneys fees, costs and disbursements together with interest from the date of the accrual of the cause of action.

**E.  ON THE FIFTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive damages, and reasonable attorneys fees, costs and disbursements together with interest from the date of the accrual of the cause of action.

**F.  ON THE SIXTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive

damages, and reasonable attorneys fees, costs and disbursements together with interest from the date of the accrual of the cause of action.

      G.  **ON THE SEVENTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to

be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive

damages, and reasonable attorneys fees, costs and disbursements together with interest from the

date of the accrual of the cause of action.

      **H.  ON THE EIGHTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to

be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive

damages, an accounting as to the income received by the defendants, and to have the defendants

set forth copies of any and all leases or other instruments entered into by the defendants with

tenants or others, as affecting the premises and reasonable attorneys fees, costs and

disbursements together with interest from the date of the accrual of the cause of action.

      I.  **ON THE NINTH CAUSE OF ACTION**:

Plaintiffs demand judgment that they be immediately and ultimately restored to their

to their rightful tenancy of thirty (30 ) years and that the defendants and each of them during the

pendency of this action, be enjoined and restrained from selling, encumbering, or otherwise

disposing of their interest in the real property located at 201 Jerusalem Avenue Massapequa,

New York and ultimately restoring the tenancy back to the plaintiff, INC; and an immediate

reinstatement of the property at issue to the rightful owner, 201, as of the filing of the complaint,

as well as a monetary judgment in favor of Plaintiffs and against the defendants in a sum to

be determined at trial but in no event is it believed to be less than $20,000,000.00, plus punitive

damages, and reasonable attorneys fees, costs and disbursements together with interest from the

date of the accrual of the cause of action.

> **J.   ON THE TENTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs , exemplary and punitive damages in the sum

of TWO HUNDRED THOUSAND DOLLARS as to each of the defendants, in addition to the

sum of TWENTY MILLION DOLLARS.

> **K.        ON THE ELEVENTH CAUSE OF ACTION**:

A monetary judgment in favor of Plaintiffs and against the defendants in a sum to

be determined at trial , plus punitive damages, and reasonable attorneys fees, costs and

disbursements together with interest from the date of the accrual of the cause of action, together

with a temporary and permanent injunction preventing the defendants from dispossessing the

plaintiffs from the property at issue and immediately returning the plaintiffs to the property.

> L.   Granting the plaintiffs an award of treble damages against each and every

defendants, in an amount to be determined by the Court and/or after a trial in this matter,

together with costs, disbursements, attorneys fees, and such other and further and different relief

, legal and equitable as this court deems just and proper.

> **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated:  Massapequa, New York

October 9, 2014                    /S/GENEVIEVE LANE LOPRESTI

_____

GENEVIEVE LANE LOPRESTI, ESQ.

Attorney for Plaintiffs

3 Lake Shore Boulevard

Massapequa, New York 11758

(516) 795-8468


_____

IRWIN POPKIN, ESQ.

Attorney for Plaintiffs

445 Broadhollow Road, Suite 25

Melville, New York 11745

(631) 281-0030

-89-